UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

AXIOM WORLDWIDE, INC.,
a Florida Corporation,

    Plaintiff,

v.            Case No.:  8-11-CV-1468-T-33 TBM

HTRD GROUP HONG KONG LIMITED a/k/a
HTRD GROUP HONG KONG LIMITED, INC.;
RYZUR MEDICAL, INC.; RYZUR MEDICAL
GROUP;RYZUR MEDICAL INVESTMENT CO.,
LTD;EXCITE MEDICAL CORP; EXCITE
DIAGNOSTICS, LLC;ELTECH USA, LLC;
DAVID REN; SALEEM N. MUSALLAM;
ANDREW DEWEERD; HARLON PARCHMENT;
COREY BROWNWELL; ANHUI RYZUR AXIOM
MEDICAL DEVICES, LTD;

    Defendants.
_____ /

## DEFENDANTS' MOTION AND MEMORANDUM OF LAW
## FOR PARTIAL SUMMARY JUDGMENT ON THE ISSUE
## OF HTRD'S OWNERSHIP OF THE INTELLECTUAL PROPERTY

The Defendants, HTRD GROUP HONG KONG LIMITED a/k/a, HTRD GROUP

HONG KONG LIMITED, INC. ("HTRD"), RYZUR MEDICAL, INC., RYZUR MEDICAL

GROUP, RYZUR MEDICAL INVESTMENT CO., LTD, EXCITE MEDICAL CORP, EXCITE

DIAGNOSTICS, LLC, ELTECH USA, LLC, DAVID REN, SALEEM N. MUSALLAM and

ANDREW DEWEERD, (collectively the "Defendants") pursuant to Rule 56 of the Federal Rules

of Civil Procedure move for partial summary judgment on the issue of HTRD's ownership of the

intellectual property which is the subject matter of the Plaintiff's Verified Amended Complaint

(Dkt. 20) and HTRD's Counterclaim (Dkt. 5) because there is no genuine dispute as to any

material fact that HTRD owns said intellectual property, and HTRD is entitled to judgment as a matter of law on said issue.  The substaintial matters of law to be argued in support of this motion are as follows:

Plaintiff, Axiom Worldwide, Inc. ("Plaintiff" or "Axiom, Inc."), by its Verified Amended Complaint ("Ver. Am. Compl.) (Dkt. 20) and HTRD in its Counterclaim (Dkt. 5) each claim ownership of certain intellectual property consisting of trademarks related to the manufacture and sale of spinal decompression devices (the "Devices") used to treat back pain and neck pain. Also at issue are trade secrets, copyrights, and rights under certain confidentiality agreements related to the manufacture and sale of the Devices (the "Intellectual Property").  All issues in the case are governed by the threshold question of whether Axiom, Inc. or HTRD owns the Intellectual Property because all relief sought by each of the Parties is founded upon a claim of such ownership.

## UNDISPUTED FACTS

The following facts are undisputed:

a.      The Intellectual Property was originally owned by Axiom, Inc., a Florida Corporation (Dkt. 20, ¶¶ 16-18).  Axiom, Inc., was formed by James Gibson ("Gibson") and Nicholas Exarhos ("Exarhos") with each owning 50%.  (Notice of Filing, Exhibit 1).

b.      On December 29, 2005 by a bill of sale ("Axiom, Inc. Bill of Sale"), Axiom, Inc. transferred all of its tangible and intangible assets, including goodwill, to Axiom Worldwide, LLC (Dkt. 2, Ex. B).  Axiom Worldwide, LLC ("Axiom, LLC"), a Florida Limited Liability Company, is also owned fifty percent (50%) by Gibson and fifty percent (50%) by Exarhos.  (Notice of Filing, Exhibit 1).

c.      The transfer of Axiom, Inc. assets to Axiom, LLC, including goodwill, was reflected on the books of Axiom, Inc. and Axiom, LLC, respectively, including the certified audited financial statements of Axiom, LLC. (Declaration of Robert E. Long, Exhibit 2 to Defendants' Counterclaim) (Dkt. 5, Exhibit 2).   Gibson and Exarhos submitted a letter to Axiom, LLC's auditor valuing the goodwill transferred by Axiom, Inc. to Axiom, LLC at $1,920,300.00.  (Dkt. 5, Exhibit 2).

d.      Upon the transfer of its assets to Axiom, LLC, Axiom, Inc., ceased all business operations and ceased to employ any employees.   Thereafter, Axiom, LLC, employed all of Axiom, Inc.'s former employees and it continued Axiom, Inc.'s business of manufacturing and selling spinal decompression devices until the commencement of an assignment for benefit of creditors proceeding on March 25, 2010, as described in subparagraphs k and l, below.  (Notice of Filing, Exhibit 1).

e.      Between the sale of the assets on December 29, 2005, and the commencement of the Axiom, LLC ABC Case on March 25, 2010, Axiom, Inc. had no employees and engaged in no business activities.  (Notice of Filing, Exhibit 1).

f.      In 2006 Gibson, as President and CEO of Axiom, LLC, sought and obtained a Federal Food and Drug Administration Establishment Inspection and Report with respect to Axiom, LLC's ownership, manufacture and sale of the subject Devices pursuant to FDA 510(k) clearances to manufacture and distribute the Devices.  In May 2006, the FDA issued its official Establishment Inspection Report ("EIR"), determining that Axiom, LLC owned and operated the business of manufacturing and selling the Devices and that it was the owner of the related FDA 510(k) clearances to manufacture and distribute them.  (Notice of Filing, Exhibit 2).  Pursuant to the EIR requested and

3

obtained by Gibson, as the President/CEO of Axiom, LLC, Gibson represented to the FDA that Axiom, Inc. was fully converted into Axiom Worldwide, LLC on or about January 3, 2006. (EIR, p. 3).

g.      In September 2008, Axiom, LLC borrowed $4,000,000.00 from Progress Bank and secured said loan with all of its tangible and intangible assets, including general intangibles[1]. Gibson, who verified the Verified Amended Complaint, signed the Progress Bank financing statement as a managing member of Axiom, LLC.  (Dkt. 2, Ex. D). Gibson and Exarhos guaranteed the Progress Bank Loan.  (Dkt. 2, Ex. D).

h.      In December 2009, Progress Bank sued Axiom, LLC on the loan and it sued Gibson and Exarhos on their personal guarantees because the loan was not paid at maturity. (Dkt. 2, Ex. D).

i.      In the Progress Bank action against Axiom, LLC, Gibson and Exarhos, Gibson's deposition was taken by Progress Bank.  In his deposition, Gibson testified that Axiom, Inc. had transferred all of its assets to Axiom, LLC.  At p. 11 of the transcript (Notice of Filing, Ex. 3), Gibson testified as follows:

Q       What is the current business of Axiom Worldwide, Inc.?

---

[1]   "General intangible" is a residual category of personal property which, under the Uniform Commercial Code, §679.1021, includes things in action not otherwise included in defined types of collateral, including intellectual property rights.  "General intangibles" include, as a matter of law, intellectual property.  See Uniform Commercial Code Comment on Section 679.1021 Section 5(d):

> d."General Intangible": "Payment Intangible". "General intangible" is the residual category of personal property, including things in action, that is not included in the other defined types of collateral.  EXAMPLES ARE VARIOUS CATEGORIES OF INTELLECTUAL PROPERTY and the right to payment of a loan of funds that is not evidence by chattel paper or an instrument.  As used in the definition of "general intangible," "things in action" includes RIGHTS THAT ARISE UNDER A LICENSE OF INTELLECTUAL PROPERTY, INCLUDING THE RIGHT TO EXPLOIT THE INTELLECTUAL PROPERTY WITHOUT LIABILITY FOR INFRINGEMENT. (Emphasis supplied).

A        The Inc. really doesn't have a business, so to speak, it's involved in litigation.  And all of the assets of the Inc. were sold to the LLC.

He further testified at page 13 as follows:

Q        Why did you sell the assets from Axiom Worldwide, Inc. to Axiom Worldwide, LLC?

A        Because the buyers of the company, the investors into the company, wanted to put it into an LLC for a pass-through of the capitalization.

Q        Pass-through of the capitalization.  What does that mean?

A        Well, they were buying it and putting it into an LLC.

It was in Gibson's monetary interest to confirm that Axiom, LLC, owned all of the assets formerly owned by Axiom, Inc., including the Intellectual Property, because the sale or disposition by Progress Bank of those assets reduced his potential liability on his personal guarantee.

j.        Gibson, Axiom, Inc., Axiom, LLC, and others were also sued by a Chapter 13 debtor in an adversary proceeding pending in the United States Bankruptcy Court for the Southern District of Texas (the "Adversary Proceeding").  Gibson was deposed by the Plaintiff's counsel on August 19, 2009, and asked if Axiom, Inc., had transferred all of its assets to Axiom, LLC.  Gibson unequivocally testified that Axiom, Inc., had indeed transferred all of its assets to Axiom, LLC:

BY MR. ROSENSTEIN:

Q        I'm handing you what's been marked Exhibit P39.  It's also marked confidential.  Did you sign this document?

A.        Yes.

5

> Q. And did Axiom Worldwide, Inc. transfer all of its assets to Axiom Worldwide, L.L.C. pursuant to this Bill of Sale?
>
> A. Yes.

See portion of transcript attached as Exhibit 4 to the Notice of Filing.

k. On March 25, 2010, Gibson on behalf of Axiom, LLC, filed a petition commencing an action for an Assignment for Benefit of Creditors ("Axiom, LLC ABC Case"). (Dkt. 20, ¶¶ 33 and 34).

l. The Axiom, LLC ABC Case was commenced by an assignment and petition (the "Assignment"), a copy of which is attached as Exhibit 5 to the Notice of Filing.

m. The Assignment was executed and delivered by Gibson, under oath, as the President and CEO of Axiom, LLC (at p. 3 of the Assignment). Gibson also signed, as part of the Assignment, a Verification of Assignment to Assignee in which he, under oath, verified the assignment of all of Axiom, LLC's "rights, title and interest in and to all of its assets, as indicated on attached Schedules." Gibson also made an "Oath of Assignor" under oath and stated, "that the true intention of the Assignment is to place in the hands of its Assignee all of its property of every description except such property as is exempt by law from forced sale, to be divided among the creditors in proportion to their respective demands and legal right. Assignor asserts that it has obtained all necessary authority to file this Assignment." Gibson caused to be attached to the Assignment that certain Schedule B – List of Assets, which listed certain of the specific assets, without limitation, which were the subject of the Assignment. Said Schedule B included certain specific Intellectual Property, listing, without limitation, the trademarks which are the

subject of this litigation.  See the penultimate page of the Assignment at Exhibit 5 to the Notice of Filing.

n.      Gibson not only swore to the ownership of the Intellectual Property by Axiom, LLC, in connection with the ABC, he, through counsel, personally participated in the ABC proceeding and confirmed to the Court that Axiom, LLC, owned the Intellectual Property and he confirmed to the Court that he did not object to the sale or transfer of the Intellectual Property to Progress Bank.  Specifically, Gibson through his counsel, John F. Panzarella, appeared at the hearing upon the Assignee's Motion to Transfer Intellectual Property to Progress Bank.  The hearing on said Motion took place before the Honorable Martha J. Cook on July 1, 2010.  A copy of the transcript of said hearing is attached as Exhibit 6 to the Notice of Filing.  At said hearing, parties other than Gibson or Axiom, LLC, sought to challenge the transfer of the Intellectual Property on the same grounds now being asserted by Gibson on behalf of Axiom, Inc., namely, that said Intellectual Property was owned by Axiom, Inc., and that while Axiom, Inc., did transfer assets to Axiom, LLC, the transfer did not include a transfer by Axiom, Inc., of its Intellectual Property.

At the hearing, Mr. Panzarella, specifically stated:

> MR. PANZARELLA: **Your Honor, it is not an objection to the transfer**. It rises out of the regulatory issues.
>
> MR. SOLOMON:  He is concerned about the documents, like a lawyer's file.  He's concerned about downstream if there is a liability claim, will they have access to those documents.
>
> And what our answer to him was, if you want to make copies at your expense, go ahead.  We don't have any problem.  You can preserve whatever you want.  If you want to scan them, if you want to copy them. That's it.
>
> HONORABLE COOK: Is that satisfactory?

MR. PANZARELLA:  That's fine in regard to one portion of the objection.

HONORABLE COOK: What's the other portion?

MR. PANZARELLA: The other portion is this, Your Honor.  If all of the Axiom assets are sold to the bank or to any other person.

HONORABLE COOK:  Transferred.

MR. PANZARELLA:  **Transferred.  Then we have a situation where whoever the transferee is, maybe the ultimate transferee is not going to the the bank** –

HONORABLE COOK: Who every buys the products.

MR. PANZARELLA:  **May be out there marketing these products under the Axiom 510K**.  And the only thing I can find, Your Honor, is from the FDA website.  And the FDA –

HONORABLE COOK:  Wouldn't the FDA put an end to that if they did?  Isn't that an FDA problem?

MR. PANZARELLA:  Unfortunately what the FDA says is simply this.  **They don't monitor that, but the recommended procedure is that the purchaser or the transferee registers the 510Ks or the devices**.

HONORABLE COOK: **Well, the ultimate purchaser might have to do that**.

MR. PANZARELLA:  **Yes, Your Honor**.

HONORABLE COOK:  **That may not be the bank.  That may be the ultimate purchaser**.

MR. PANZARELLA:  **And that is what we are asking the Court to include in its order, because there are potential downstream problems**.

HONORABLE COOK:  Well, we don't have any evidence and we don't have any basis for that and that is a federal regulatory issue.  I'm not even sure it's appropriate for me to include that in the order.

Obviously anyone who buys this, buyer beware, that if they violate the FDA regulations, they're going to be held accountable to the FDA. It's as simple as that.

MR. PANZARELLA:  Your Honor, I understand the basis of your ruling.

8

HONORABLE COOK:  I haven't ruled.  I said let's find out.

MR. PANZARELLA:  Respectively, the issue is the potential liability to the individuals.  **And one of the things that the individuals could do, Your Honor, is to notify the FDA that Axiom Worldwide, LLC is no longer owns these devices and wishes to delete the device, but I don't want to be faced with a claim by Progress or an ultimate purchaser** –

HONORABLE COOK: **Aren't you actually transferring any interest you have in the 510K registration to the ultimate transferee, because they have been pledged as assets?  Isn't that really what's happening here**.

MR. PANZARELLA: **That is correct**.  (At pages 32 through 35).  (Emphasis added).

These statements made by Gibson's counsel to the Court in the ABC were an unequivocal claim by Gibson that Axiom, LLC, owned the Intellectual Property, specifically including the 510(k)'s, and that he expressly did not object to the transfer to Progress Bank, but merely voiced concerns that the transferee may face certain regulatory issues which might result in a claim against Axiom, LLC.

o.     These statements were relied upon by the Court in entering the order authorizing the transfer of the Intellectual Property to Progress Bank, including the 510(k)s.  See Order Authorizing the Transfer of Assets to Progress Bank entered on July 1, 2010 (the "Transfer Order"), a copy of which is attached as Exhibit E to the Complaint (Dkt. 2, Exhibit E).  The Transfer Order denied objections to the transfer based on the claim that Axiom, Inc., did not transfer the Intellectual Property to Axiom, LLC.  The Transfer Order was never appealed.  It became a final order on February 9, 2011, when Judge Cook in the ABC entered the Order on Assignee's Motion to Close Assignment Proceeding, to Approve Final Report, to Approve Fees of the Assignee and Assignee's Counsel, to Approve Final Distribution, and to Discharge Assignee and Release Assignee's Bond (the "Discharge Order"), a copy of which is attached as Exhibit 7 to the

Notice of Filing.  The Discharge Order was never appealed.  Accordingly, all matters adjudicated in the ABC are final and binding on all parties in interest, including the ABC Court's Order overruling the objections that Axiom, Inc., had failed to transfer the Intellectual Property to Axiom, LLC.

p.      Pursuant to the Transfer Order, the Assignee transferred all of Axiom, LLC's assets to Progress Bank.  See bill of sale ("Assignee's Bill of Sale") attached as Exhibit F to the Complaint (Dkt. 2, Exhibit F).  Progress Bank, in consideration of $400,000.00 paid to it by HTRD transferred all of Axiom, LLC's assets, including the Intellectual Property, to HTRD pursuant to the Progress Bank Bill of Sale, attached as Exhibit G to the Complaint (Dkt. 2, Exhibit G).  Accordingly, HTRD acquired valid ownership of and title to the subject Intellectual Property.

q.      The United States Patent and Postmark Office received documentary evidence of Axiom, LLC's ownership of the trademarks which are the subject matter of this litigation and it has recorded Axiom, LLC's ownership interest as shown on Exhibit 8 attached to the Notice of Filing.

r.      The United States Department of Health and Human Services, Food and Drug Administration, has certified to foreign governments that HTRD is the manufacture/specification developer of the DRX9000 and DRX5000 devices, that said product are subject to the jurisdiction of the FDA and that said products may be marketed in and legally exported from the United States.  A copy of said certification is attached as Exhibit 9 to the Notice of Filing.

## MEMORANDUM OF LAW

## THE SUMMARY JUDGMENT IN THE ATLANTA FEDERAL CASE HAS NO PRECLUSIVE EFFECT ON HTRD'S OWNERSHIP OF THE INTELLECTUAL PROPERTY

Plaintiff bets its entire claim to ownership of the Intellectual Property solely upon the finding in the summary judgment entered on Axiom, LLC's counterclaim against North American Medical Corporation in the Atlanta Federal Case that Axiom, Inc., did not convey the Intellectual Property to Axiom, LLC, because the Axiom Inc. Bill of Sale did not specifically refer to the Intellectual Property in its granting clause. (Dkt. 20, ¶¶ 32, 36). Plaintiff's bet is a lost cause. This is evident when the litigation posture of the parties in Atlanta Federal Case is understood. North American Medical Corporation ("NAM") initially commenced the action against Axiom, Inc., Gibson, Exarhos and others but did not sue Axiom, LLC.

Axiom, LLC, (the only Axiom entity then doing business) later intervened in the Atlanta Federal Case to assert a counterclaim against NAM for a trademark infringement and, without limitation, related false advertising claims. See Axiom, LLC counterclaim attached as Exhibit 10 to the Notice of Filing.

Axiom, LLC (not Axiom, Inc.) and NAM were the only two parties to the Axiom, LLC counterclaim litigation ("LLC Counterclaim Litigation"). Axiom, Inc. and Axiom, LLC, never litigated between themselves the ownership of the Intellectual Property. Indeed, until the commencement of litigation by HTRD in State Court (*HTRD v. Spinal Decompression Industries, et. al.*, 13th Judicial Cir. 10.024420, filed December 30, 2010), which included claims against Gibson and others for misappropriation of HTRD's intellectual property (and to which Axiom, Inc. is not a party), Axiom, Inc. and its principals, Gibson and Exarhos, have always and

11

everywhere maintained that Axiom, Inc., conveyed all of its Intellectual Property to Axiom, LLC. (Exarhos Declaration)  (Exhibit 1 to Notice of Filing)

Because Axiom, Inc. was not a party to the LLC Counterclaim Litigation, and because ownership of the Intellectual Property has never been litigated between Axiom, Inc. and Axiom, LLC, *inter se*, the partial summary judgment Order in the LLC Counterclaim Litigation (the "Counterclaim Order") can have no preclusive effect against HTRD.  Of equal import, Progress Bank from whom HTRD claims its title, was never a party in the Atlanta Federal Case.  As noted above, Progress Bank obtained its security interest in the Intellectual Property pursuant to its loan to Axiom, LLC, almost two years prior to the entry of the Counterclaim Order.

### THE COUNTERCLAIM ORDER IN THE ATLANTA FEDERAL CASE ORDER WAS NEVER REDUCED TO JUDGMENT AND CANNOT HAVE PRECLUSIVE EFFECT

For a judgment to have *res judicata* effect it must be a final judgment.  *Acha v. Beame*, 570 F.2d 57, 62-63 (2nd Cir. 1978).  Under the express terms of Rule 54(b) itself, an interlocutory judgment is "subject to revision at any time before the entry of judgment adjudicating all the claim, rights and liabilities of all the parties."  *Acha*, *Id*. at 63.

Rule 28 U.S.C. § 1291 and Rule 54(b) establish the certifiability and finality of an order or judgment.  In the instant case the Atlanta Court never entered a judgment on the Counterclaim Order and the Counterclaim Order is subject to revision at any time until a final judgment is entered disposing of all claims in the case.  Neither Axiom, LLC, nor NAM sought certification and, therefore, the Counterclaim Order is still appealable.

While case law generally discusses whether or not a particular order or judgment is certifiable under Rule 54(b), the standard for determining appealability as a final order and *res judicata* are the same.  *Acha*, *Id*. at 63, *see also Washington-El v. Digugliemo*, 365 Fed. App.

12

338, 339-340 (3rd Cir. 2010) (Order granting partial summary judgment is not final or appealable when final judgment has not been entered); *Bonner v. Perry*, 564 F.3d 424, 427 (6th Cir. 2009) (failure to certify actual summary judgment as opposed to order granting summary judgment generally precludes appeal).

Since the Counterclaim Order is not a final judgment and since it has not been certified as subject to appeal, it can have no preclusive effect in this litigation.

## THE COUNTERCLAIM ORDER CAN HAVE NO PRECLUSIVE EFFECT BECAUSE OWNERSHIP OF THE INTELLECTUAL PROPERTY WAS NEVER LITIGATED BETWEEN AXIOM, INC., AND AXIOM, LLC, AND AXIOM, INC., AND AXIOM, LLC, WERE NOT ADVERSARIES IN THE ATLANTA FEDERAL CASE

For a final order to have preclusive effect there must be an identity of parties. Since Axiom, Inc. and Progress Bank, through whom HTRD claims its title, were not parties to the LLC Counterclaim Litigation in which the Counterclaim Order was entered, the Counterclaim Order can have no preclusive effect as to the ownership rights as between Axiom, Inc. and HTRD.

The mere fact that Axiom, Inc., was a defendant in NAM's complaint did not make it a party to the LLC Counterclaim Litigation against NAM for the purpose of issue or claim preclusion. In order for an adjudication in prior litigation to have preclusive effect, the party asserting preclusion must have actually adversely litigated the claim or issue against the party against whom it would assert the preclusion claim. This is the fatal weakness in Plaintiff's preclusion argument. In the Atlanta Federal Case, Axiom, Inc., and Axiom, LLC, were co-defendants in NAM's action in chief. They had a unity of interest and asserted no cross claims against each other in the case. Furthermore, Axiom, Inc., was not a party in the LLC Counterclaim Litigation against NAM. Accordingly, the Counterclaim Order granting summary judgment in favor of NAM and against Axiom, LLC, adjudicated no claim between Axiom, Inc.,

(which now claims to own the Intellectual Property) and Axiom, LLC, (through whom HTRD

indirectly claims title via the Assignee's bill of sale to Progress Bank and Progress Bank's sale to

HTRD).

Under very similar circumstances courts have repeatedly held that the doctrines of res

judicata, collateral estoppel, claim preclusion and issue preclusion do not apply.  For example, in

*American Tritical, Inc. v. Nytco Services, Inc.*, 644 F.2d 1136 (9th Cir. 1981), there was prior

litigation between the leasor of a grain storage facility (Franz), the leasee (American) and the

sub-lessee (Nytco) for rent.  Id. at 1139-1140.  Both Nytco and American asserted claims against

Franz in the initial litigation, but asserted no claims against each other.  *Id.* at 1140.  The court

dismissed the American claims against Franz.  In the subsequent litigation between American

and Nytco, Nytco sought to assert collateral estoppel against American on the grounds that the

judgment against American on its claim against Franz in the prior litigation constituted an

adjudication of the same liability issues asserted by American against Nytco and, therefore,

established collateral estoppel.  *Id.* at 1146.  The court held that the doctrine did not apply

because to have preclusive effect the adjudication has to be between the same parties or their

privies.  *Id.* at 1146 and at 1148.  In rejecting the preclusion argument the court stated:

> [14] A review of the record demonstrates that although American
> and Nytco were parties to the Oklahoma suite, they were both
> defendants to the action filed by Howard and Dorothy Franz;
> neither American nor Nytco filed a cross-claim against the other.
> [FN21]   Accordingly, there was no adjudication of a cause of
> action between those parties.   Res judicata, therefore, is
> inapplicable to the present action because there was no
> adjudication between the same parties on any cause of action let
> alone the same cause of action.  See *Montana v. Unites States*,
> *supra*, 440 U.S. at 153, 99 S.Ct. at 973.

*Id.* at 1147.

In *Franklin Stainless Corp. v. Marlo Transportation Corp.*, 748 F.2d 865 (4th Cir. 1984) a plaintiff injured in a motor vehicle accident sued the shipper (Franklin) which loaded the cargo on the truck involved in the accident, as well as the trucker and the company (Marlo) that contracted to furnish the transportation for Franklin.  The court dismissed Marlo from the injured plaintiff's law suit on the grounds that it was merely a broker and not a principal for the trucker.  The court entered a judgment against the shipper (Franklin).  Franklin then brought suit against Marlo for indemnity.  Marlo maintained that its dismissal from the prior personal injury litigation was preclusive with respect to the claim asserted against it by Franklin.  Id. at 867.  In sustaining the lower court's rejection of the preclusion claim, the Circuit court noted:

> An element of collateral estoppel, or issue preclusion, is actual, full, and fair litigation between the parties, especially when they previously were aligned on the same side of an action.  See Restatement (Section) of Judgments §§ 27 Comment a, and 38 comment a; *see generally Otherson v Department of Justice*, 711 F.2d 267, 273 (D.C. Cir. 1983).  Franklin did not oppose Marlo's motion for dismissal at the conclusion of the victim's case, and according to the district judge, who presided over both the personal injury action and the present case, Franklin would not have been permitted to argue against Marlo on the issue of Marlo's liability to the victims of the accident.  Under these circumstances, it would be unfair to preclude Franklin.  We agree with the district court that Franklin is not collaterally estopped from pursing this action.

*Id.* at 867.

In *Penda Corp. v. United States and Cadillac Products, Inc.*, 44 F.3d 967, (Fed. Cir. 1994), a patent holder sued the United States for infringement.  The government brought Cadillac into the case as a third party defendant for contractual indemnity.  Judgment against the United States, but not against Cadillac, was entered.  The United States appealed and Cadillac joined in the appeal.  Thereafter the United States dismissed its appeal but Cadillac sought to maintain the appeal even though no judgment had been entered against it.  Cadillac argued that if it were not allowed to appeal, the judgment would have preclusive effect against it in subsequent

indemnity litigation with the United States.  The court rejected this argument saying that the judgment on appeal could have no preclusive effect because, even though Cadillac was a party in the case, Cadillac and the United States were not adversaries in the case and the issue was never actually litigated as between them in an adversarial context.  Specifically the court held:

> Under generally accepted principles, however, the Court of Federal Claims judgment cannot support the assertion of issue preclusion against Cadillac by either the Government or Penda. First, the Government and Cadillac were not adversarial parties before the Court of Federal Claims.
>
> Parties who are not adversaries to each other under the pleadings in an action involving them and a third party are bound by and entitled to the benefits of issue preclusion with respect to issues they actually litigate fully and fairly as adversaries to each other and which are essential to the judgment rendered.
>
> Restatement (Second) Judgments § 38 (1980).   The Government and Cadillac were allies, not adversaries, on all issues in suit before the Court of Federal Claims.  The judgment of that court thus cannot support an assertion of issue preclusion by the Government against Cadillac.

*Id.* at 972.

The court in *Davis & Cox v. Summa Corp.*, 751 F.2d 1507, 1518 (9th Cir. 1985) under similar circumstances cited *American Triticale*:

> [17] The district court improperly applied res judicata to preclude litigation of Summa's counterclaim.  Summa and the Davis Parties were not true adversarial parties in the Air West case.  None of the Davis Parties was a formal party to the motion to vacate. Significantly, even if the Davis Parties could be viewed as parties to the motion, neither Summa nor the Davis Parties filed a formal claim against each other.  *See American Tri9ticale, Inc. v Nytco Services, Inc.*, 644 F.2d 1136, 1147 (9th Cir. 1981) (codefendants not precluded from pursuing claims against each other where they did not file cross-claims in the original action).  Res judicata is inapplicable because there was no adjudication "between the same parties on any case of action let alone the same cause of action." *Id.* (citations omitted); see I(b J. Moore, J. Lucas & T. Currier, *Moore's Federal Practice* ¶ 0.411[2] at 399 (2d Ed.. 1984).

16

The sole issue in this case is whether Axiom, Inc. transferred all of its assets to Axiom, LLC., such that HTRD's title through Progress Bank and Axiom, LLC's Assignee for the Benefit of Creditors is valid.  Since Axiom, Inc., and Axiom, LLC, were aligned as co-defendants in the Atlanta Federal Case and never litigated the ownership issue between themselves, the Counterclaim Order can have no preclusive effect in this case.  The fact that Progress Bank was not named in the Atlanta Federal Case in any capacity even though it had a pre-existing security interest in the Intellectual Property is yet another independent nail in the coffin of Plaintiff's preclusion claim.

### THE COUNTERCLAIM ORDER HAS NO PRECLUSIVE EFFECT AGAINST HTRD BECAUSE NAM HAS WAIVED ANY RIGHTS AGAINST HTRD UNDER THE COUNTERCLAIM ORDER

NAM has expressly agreed with HTRD that it does not intend to assert ownership rights in the Intellectual Property that HTRD obtained from the Assignment for the Benefit of Creditors.  See Exhibit 11 to the Notice of Filing.  This agreement by NAM, which exclusively has the standing to assert a preclusion claim, completely vitiates any probative value of the Counterclaim Order on the ownership issues in this case.

### AXIOM, INC. IS JUDICIALLY ESTOPPED TO CLAIM OWNERSHIP OF THE INTELLECTUAL PROPERTY

Independent of Plaintiff's futile preclusion gambit, Plaintiff, acting through Gibson, is judicially estopped from asserting that Axiom, Inc., owns the Intellectual Property.  As noted above, in at least three prior legal proceedings, i.e., the Progress Bank foreclosure/guaranty litigation, the Axiom, LLC ABC Case and the Adversary Proceeding, Gibson has explicitly testified under oath that Axiom, Inc. conveyed all of its assets to Axiom, LLC.

The doctrine of judicial estoppel is "used to prevent litigants from taking totally inconsistent positions in separate judicial, including quasi-judicial, proceedings." *Blumberg v.*

*USAA Casualty Ins. Co.*, 790 So. 2d 1061, 1066 (Fla. 2001).  The doctrine of judicial estoppel thus "prevents parties from 'making a mockery of justice by inconsistent pleadings.'" *Blumberg*, 790 So. 2d at 1066. Under the doctrine of judicial estoppel, "a party is precluded from 'asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding.'" *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1285 (11th Cir. 2002); *see also Blumberg*, 790 So. 2d at 1066 (insured who had contended in prior suit that insurance coverage existed was judicially estopped from contending in later suit that coverage did not exist); *Simmons v. State*, 611 So. 2d 1250, 1253 (Fla. 2d DCA 1992)(criminal defendant who signed a plea form stating that there was no agreement as to the sentence he would receive was judicially estopped from contesting that statement); *Barger v. City of Cartersville, Ga.*, 348 F.3d 1289, (11th Cir. 2003) (holding debtor's failure to list employment discrimination claim in his bankruptcy schedules precluded her from asserting later monetary claims for employment discrimination); *Robinson v. Tyson Foods, Inc.*, 595 F.3d 1269, 1276-1277 (11th Cir. 2010) (chapter 13 debtor's failure to include employment discrimination on her bankruptcy schedules judicially estopped her from pursuing employment discrimination claims).

The purpose of the doctrine of judicial estoppel "is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *Burnes*, 291 F. 3d at 1285.  Pleadings and statements made by parties and counsel in open court "are equivalent to sworn statements for purposes of judicial estoppel." *In re Cummings*, 381 B.R. 810, 827 (S. D. Fla. 2007).

In the instant case, Gibson signed the Assignment for Benefit of Creditors under oath and indicated at the Hearing on the Motion to Transfer Assets to Progress Bank that Axiom, LLC owned the Intellectual Property.  Gibson testified in the Progress Bank foreclosure/guaranty

action that Axiom, Inc. transferred all of its assets to Axiom, LLC.  He also testified to the same effect in the Adversary Proceeding.  Gibson, on behalf of Axiom, Inc., cannot now take the inconsistent position on behalf of Axiom, Inc., that Axiom, LLC did not acquire the Intellectual Property.

Axiom, Inc., is also estopped to claim ownership of the Intellectual Property by Gibson's conduct in obtaining the issuance of the EIR from the FDA in the name of Axiom, LLC, in May 2006.  In *Holly Hill Citrus Growers Association v. Holly Hill Fruit Products, Inc.,* 75 F. 2d 13 (5th Cir. 1935) the plaintiff, pursuant to an oral agreement, purchased the business of the defendant. *Id.* at 13.  The Court held that the defendant's conduct after the transfer, which indicated an acknowledgment of the transfer, estopped it from claiming ownership of the trademark even though there was no written instrument of conveyance.  The Court held that such inconsistent conduct estopped the defendant from denying that a transfer had been made:

> There is a kind of evidential estoppel, which, though it may not amount to a complete estoppel in pais, is raised when persons who have spoken or acted one way under one set of circumstances, and with one objective in mind, undertake under other circumstances and when their objective has changed, to testimonially give a different color to what they formerly said and did.  We think that principle applies here.

*Id.* at 17.

As in *Holly Hill*, Gibson acting as president/CEO of Axiom, Inc., and Axiom, LLC, engaged in just such inconsistent conduct by representing to the U.S. Food and Drug Administration that Axiom, LLC, and not Axiom, Inc., owned the Intellectual Property.

## THE ABC DISCHARGE ORDER FINALLY ADJUDICATED AXIOM, LLC'S OWNERSHIP OF THE INTELLECTUAL PROPERTY

Gibson is further precluded from asserting ownership on behalf of Axiom, Inc., by virtue of the Discharge Order entered by the Court in the Axiom, LLC ABC Case.  That Order made final the Court's earlier Transfer Order in which it approved the transfer of the assets to Progress

Bank and overruled objections to the Transfer Order based on Axiom, Inc.'s alleged ownership of the Intellectual Property.

**EVEN IF THE PLAINTIFF WAS NOT ESTOPPED OR OTHERWISE BARRED FROM CHALLENGING HTRD'S TITLE, IT IS UNDISPUTED THAT AXIOM, INC., DID TRANSFER THE INTELLECTUAL PROPERTY TO AXIOM, LLC**

Even if Plaintiff was not judicially estopped from challenging the title of HTRD to the Intellectual Property, the undisputed evidence is that Axiom, Inc., did indeed transfer all of its assets to Axiom, LLC, including the Intellectual Property.  Such evidence includes:  (a) the Axiom, Inc. Bill of Sale to Axiom, LLC, (Dkt. 2, Ex. B), which expressly conveyed "good will" to Axiom, LLC; (b) a journal entry showing the transfer of "good will" to Axiom, LLC; and (c) the certified audit report for Axiom, LLC for the year 2006 showing its ownership of said good will. "Goodwill" is a catch all category which, as a matter of law, included all of Axiom, Inc.'s intangible property not otherwise described as a specific asset on its balance sheet. See journal entry, Goodwill Calculation, Audit Report and Declaration of Robert E. Long, C.P.A. attached as Exhibit 2 to HTRD's Counterclaim (Dkt. 5, Exhibit 2).

The jurisprudence on the transfer of trademarks has always and consistently held that a transfer of goodwill (which Axiom, Inc. undisputedly transferred to Axiom, LLC) transfers, as a matter of law, all of the transferor's trademarks without the need to make specific reference to trademarks.  This is so because trademarks have no existence independent of goodwill. As the court held in *Holly Hill*, *supra* at 14:

> Briefly summed up as applied to this case, they are: The law of trade-marks is a part of the law of unfair competition; trade-marks follow; they are incidents and appurtenances to businesses and trades. They have no independent existence; they may not be sold in gross.  They attach to and pass with the good will of a business, and, as appurtenant to it, they are freely and easily sold.  **No particular form of words is necessary to transfer them; they inhere in and pass with good will.** (Emphasis added).

The Eleventh Circuit also adheres to this basic principle, namely, that the purchase of goodwill presumptively transfers all trademarks and trade names without further need of description. *See, Ferrellgas Partners, L.P., et. al. v. Barrow*, 143 Fed. Appx. 180, 187 2005 WL 1736276 (C.A.11 (Ga.)), which reviewed salient case law on the issue:

> *Oklahoma Beverage Co. v. Dr. Pepper Love Bottling Co.,* 506 F.2d 629, 632 (10th Cir. 1977) (concluding that trademark transferred with sale of entire business even though it was not mentioned in the sale contract and stating that "[n]o particular words are necessary for the assignment when the business and the goodwill are transferred to another who continued the operation under the same trademark"); *Holly Hill Citrus Growers' Assn; v. Holly Hill Fruit Products, Inc.*, 75 F.2d 13, 15 (5th Cir. 1935) ("[Trademarks] attach to and pass with the good will of a business, and, as appurtenant to it, they freely and easily sold.  No particular form of words is necessary to transfer them; they inhere in and pass with good will."); *J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition §18.37 (4th ed. 2005) ("When a business is sold as going concern the intent to transfer good will and trademarks are transferred even though not specifically mentioned in the contract of sale.  That is trademarks are and the good will they symbolize are presumed to pass with the sale of a business.").*

*See also, Pepsico, Inc., v. Grapette Company*, 416 F.3d 285 (8th Cir. 1969) and *Visa, U.S.A., Inc., v. Birmingham Trust National Bank*, 696 F.2d 216 (Fed. Cir. 1982) (goodwill and trademarks are inseparable).

Since Axiom, Inc., unquestionably conveyed goodwill to Axiom, Inc., pursuant to the Axiom, Inc. Bill of Sale on December 29, 2005, it cannot be disputed that Axiom, LLC, acquired all of the Intellectual Property, including the trademarks and trade names.

### THE UNDISPUTED EVIDENCE SHOWS THAT AXIOM, INC. ABANDONED THE INTELLECTUAL PROPERTY

15 U.S.C.A.§ 1127 provides in pertinent part as follows:

> A mark shall be deemed to be "abandoned" if either of the following occurs:
>
> (1) When its use has been discontinued with intent not to resume such use.   Intent   not   to   resume   may   be   inferred   from

> circumstances.  Nonuse for 3 consecutive years shall be prima
> facie evidence of abandonment.  "Use" of a mark means the bona
> fide use of such mark made in the ordinary course of trade, not
> made merely to reserve a right in a mark.

The undisputable evidence is that Axiom, Inc., after it executed and delivered the Axiom, Inc. Bill of Sale to Axiom, LLC, ceased all business operations, ceased to have any employees, Gibson, its President/CEO, obtained the issuance of the EIR from the FDA in the name of Axiom, LLC, and Gibson repeatedly testified that all of Axiom, Inc.'s assets had been transferred to Axiom, LLC.

Such facts establish beyond peradventure that Axiom, Inc., discontinued its use of the subject trademarks with an intent not to resume such use.  In *Ambrit, Inc. v. Kraft, Inc.* 812 F.2d 1531 (11th Cir. 1983), the Eleventh Circuit reversed the lower court and held that the lower court should have found that the defendant had abandoned its trademark for the requisite period of time under the statute (two years under the then applicable law).  The court noted that there was no evidence that the defendant or its predecessor used the mark at any time between 1932 and 1980.  *Id.* at 1550.  However, the defendant argued that the mark was used commencing in late 1979 or early 1980 and was used extensively before the issue was raised in litigation.  The defendant further contended that it never intended to abandon the mark by showing that it had renewed the registration of the mark in 1949 and 1969.  *Id.* at 1550.  The court held that all of the defendant's evidence was insufficient to rebut the evidence of abandonment.  *Id.* at 1550-1551. In rejecting all of the defendant's claims, the court, citing *Mission Dry Corp. v. 7-Up Co.*, 193 F.2d 201, (C.C.P.A. 1951) and *Conwood Corp. v. Loews Theaters, Inc.*, 173 U.S.P.Q. 829 (T.T.A.B. 1972) held that once a holder's initial discontinuance of use results in an abandonment, the registrant's claim cannot be revived by subsequent use.  *Id.* at 1551. Furthermore, continued renewal of the registration during the nonuse period does not rebut the

*prima facie* case for abandonment.  *Id.* at 1551.  Also see *Major League Baseball Properties v. SED Non Olet Denarius, Ltd.*, 817 F. Supp. 1103 (S.D. N.Y. 1993).  Which also held, citing *Ambrit*, that resumption of use by the registrant after the statutory period of abandonment does not retroactively cure the past abandonment.  *Id.* at 1132.

It is indisputable that Axiom, Inc. did not use the mark in any way for more than three years subsequent to the Axiom, Inc. Bill of Sale in December 29, 2005.  Axiom, Inc.'s cessation of business, loss of all employees, the issuance of the FDA EIR in the name of Axiom, LLC, and Gibson's repeated testimony in legal proceedings that Axiom, Inc., transferred all of its assets to Axiom, LLC, all irrebutably show an intent by Axiom, Inc. not to resume use of the Intellectual Property subsequent to December 29, 2005.  Accordingly, Axiom, Inc., cannot prevail in this action.

## THE UNITED STATES PATENT AND TRADEMARK OFFICE HAS RECOGNIZED HTRD'S TITLE TO THE INTELLECTUAL PROPERTY

The United States Patent and Trademark Office received documentary evidence of HTRD's ownership of the trademarks and it has recorded HTRD's ownership as shown on Exhibit 8 to the Notice of Filing.  Furthermore, the Department of Health and Human Services, Food and Drug Administration has certified to foreign governments that HTRD is the manufacturer/specification developer of the intellectual property as reflected in the certificate, a copy of which is Exhibit 9 to the Notice of Filing.

## CONCLUSION

The pivotal question in this Case is whether Axiom, Inc. or HTRD owns the Intellectual Property.  That question is resolved by answering four questions:

    (a)     did Axiom, Inc., convey the intellectual property to Axiom, LLC, pursuant to the Axiom, Inc. Bill of Sale, which included an assignment of its goodwill?

(b)    did Axiom, Inc., abandon the Intellectual Property for a three (3) year period after it assigned its assets, including goodwill, to Axiom, LLC?

(c)    is Axiom, Inc., judicially estopped to challenge the title of HTRD by its attempt to disavow the transfer of its assets, including goodwill, to Axiom, LLC, (through whom HTRD indirectly claims title)?

(d)    does the Counterclaim Order have any preclusive effect?

Based upon the undisputed evidence and controlling law cited above, the answers to the questions are: (a) yes, (b) yes, (c) yes, (d), no.

Wherefore, the Defendants pray for the entry of a Partial Summary Judgment finding that HTRD is the owner of the intellectual property, dismissing the Plaintiff's Verified Amended Complaint, and granting such other further relief to HTRD on its Counterclaim as may be just and proper.

## CERTIFICATE OF SERVICE

I, the undersigned, do hereby certify that on October 21st, 2011, I electronically filed the foregoing document with the Clerk of Court using CM/ECF and served a copy on counsel of record identified below via transmission of Notice of Electronic Filing generated by CM/ECF: Scott A. Frick, Esq., Kass, Shuler, Solomon, Spector, Foyle & Singer, P.A., P.O. Box 800,Tampa, FL  33601, sfrick@kasslaw.com.

**FORIZS & DOGALI, P.A.**

*/s/Lee Wm. Atkinson*
Lee Wm. Atkinson, Esquire
Fla. Bar No.:  340375
Zala L. Forizs, Esquire
Fla. Bar No.:  0151150
4301 Anchor Plaza Parkway, Suite 300
Tampa, FL  33634
Telephone:  (813) 289-0700
Facsimile:  (813) 289-9435