**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**AXIOM WORLDWIDE, INC.,**

    **Plaintiff,**

v.                                      **Case No. 8:11-cv-1468-T-33TBM**

**HTRD GROUP HONG KONG LIMITED**
**a/k/a HTRD GROUP HONG KONG**
**LIMITED, INC., et al.,**

    **Defendants.**
_____/

### REPORT AND RECOMMENDATION

THIS MATTER is before the court on referral for a Report and Recommendation on **HTRD Group Hong Kong Limited a/k/a HTRD Group Hong Kong Limited, Inc.'s Motion for Preliminary Injunction and Incorporated Memorandum of Law** (Doc. 45) and Axiom Worldwide, Inc.'s Memorandum of Law in Opposition to HTRD's Motion for Preliminary Injunction (Doc. 51).[1] Oral argument on the motion was conducted May 7, 2012. Because I conclude that HTRD is unable to demonstrate a substantial likelihood of success on the merits, I recommend the motion for preliminary injunction be denied.

I.

In July 2011, Plaintiff, Axiom Worldwide, Inc., (Axiom) filed its Verified Complaint seeking declaratory and injunctive relief as well as damages as against Defendants, HTRD

---

[1]Additionally, the parties filed affidavits, legal authority, and other documentary evidence. *See* (Docs. 46, 56, 61-63, 68, 69, 72, 73).

Group Hong Kong Limited a/k/a HTRD Group Hong Kong Limited, Inc. (HTRD); Ryzur Medical, Inc., Ryzur Medical Group; Ryzur Medical Investment Co., Ltd.; Excite Medical Corp. (Excite); Excite Diagnostics, LLC; Eltech USA, LLC; David Ren: Saleem N. Musallam; and Andrew Deweerd (collectively "Defendants") for alleged trademark and copyright misappropriation and infringement, unfair competition, breach of confidentiality agreements, providing false information to the USPTO, and interference with business relationships. (Doc. 1). In answer to the original complaint, Defendants generally denied the allegations, asserted certain affirmative defenses and filed a counterclaim for declaratory and injunctive relief as well as damages against Axiom, on allegations which essentially mirror those brought by Axiom. (Doc. 5).[2] In essence, the dispute is over the ownership and rights to certain intellectual property including trademarks and trade names including Axiom Worldwide™; the Axiom Worldwide (design logo)™; DRX™; DRX9000™; and Better Technology, Better Health™; the copyrights to the designs and drawings of the products marketed under these trademarks and component parts thereof; as well as the content appearing on the Defendants' internet website, www.axiomworldwide.co; the rights associated with ownership of these trademarks, copyrights and trade secrets; and the rights of the parties under certain restrictive covenants running in favor of Axiom.

By its motion for injunctive relief, HTRD seeks issuance of a preliminary injunction precluding Axiom and its officers, agents, employees, and all others acting in concert with them from participating in acts of trademark infringement and unfair and misleading trade

---

[2]In August 2011, Plaintiff filed an Amended Verified Complaint which added certain defendants. (Doc. 20). Defendants answered the amended complaint. (Doc. 23).

2

practices which are causing confusion in the marketplace and lessening the capacity of HTRD's trademark to serve as source indicators and damaging its business reputation and goodwill. In short, HTRD claims that its ownership of the trademarks and other intellectual property at issue is indisputable as a matter of fact and law and that Axiom and its affiliates must be enjoined from further unauthorized use of the intellectual property lest there be further confusion in the marketplace.[3] *See* (Doc. 45).

In factual support of the motion, HTRD asserts that Axiom was a corporation building and distributing spinal compression tables worldwide from 2001 until December 2005. During its time in business, Axiom registered certain trademarks, obtained certain 501K authorizations from the United States Food and Drug Administration (FDA) and created its own intellectual property. In February 2007, Axiom executed a bill of sale effective January 3, 2006, in which Axiom transferred all of its assets, specifically including its "goodwill," to Axiom Worldwide, LLC (the LLC).[4] Although disputed by Axiom, by HTRD's account, thereafter, from 2006 through 2010, the LLC was the entity that solely ran

---

[3] Prior to filing this motion, Defendants filed a motion for partial summary judgment (Doc. 29) on the issue of HTRD's ownership of the intellectual property at issue in this suit. A review of that motion reveals additional factual assertions and legal arguments which are intended to be incorporated into the instant motion. The court denied that motion without prejudice as premature. (Doc. 52).

[4] In large part, these historical facts recited by HTRD are not disputed. However, beyond these historical facts, the parties agree on very little. The crux of the dispute legally centers on ownership of the intellectual property. Factually, the dispute centers on just what property was transferred by Axiom to the LLC in or about 2007 and thereafter to Progress Bank and then HTRD. On this motion, HTRD relies on a number of other factual assertions set out in its motion for partial summary judgment (Doc. 29). Suffice it to say that what property was transferred to the LLC and ultimately to HTRD is highly disputed.

the spinal decompression business using Axiom's employees, and in so doing, relied upon and used the goodwill it had acquired from Axiom, including the trademarks, 510K's, and other intellectual property. In March 2010, after running into financial difficulty, the LLC filed an assignment for the benefit of its creditors (ABC), including Progress Bank, and thereafter, the LLC ceased doing business. At the conclusion of the ABC proceeding, secured creditor Progress Bank was awarded all of the assets of the LLC. On July 1, 2010, Progress Bank sold those assets to HTRD for $400,000.

HTRD then undertook to transfer the trademarks, obtain its own 501K rights and to conduct business with the help of its agent, Excite Medical, and others.[5] According to HTRD, Axiom (and others) began to compete with HTRD in the national and international marketplace using trademarks now registered to HTRD and misrepresenting its rights to said trademarks.[6]

On this motion, HTRD's argument that it is likely to succeed on the merits of its claims of infringement, deception, and dilution is founded on its contention that it is the indisputable owner of the intellectual property at issue and that Axiom's continued use of the

---

[5] As set forth in its response, Axiom contends that HTRD fraudulently induced the USPTO in order to obtain an assignment of the trademarks. Thereafter, HTRD proceeded to use the trademarks in the marketplace without Axiom's approval.

[6] HTRD first brought suit in the Hillsborough County Circuit Court seeking injunctive and other relief against a number of parties, including James Gibson, but not Axiom or the LLC. A review of the state court documents reveals that HTRD there made similar allegations of trademark infringement. (Doc. 47-3, 47-7). When the instant suit was then filed by Axiom in this court, the state court proceeding was stayed. While the state judge indicated he was "not going to be able to do an injunction in this case" (Doc. 47-7 at 6), it appears there was no final ruling on the motion prior to the stay.

marks and copyrights is undeniably causing confusion and deception in the marketplace and dilution of its marks. In legal support, it contends that Axiom's transfer of its "goodwill," as reflected in the bill of sale, resulted in the transfer of its intellectual property as a matter of law. In factual support of its claim of confusion in the marketplace, it offers the declaration of Saleem Musallam (Musallam) (Doc. 46 at 3-9) who is the president of Excite Medical Corp. ("Excite"), a Florida corporation in the medical technology field. According to Mr. Musallam, in August 2010 Excite was chosen by HTRD to be its exclusive contract manufacturer and distributor of the DRX9000®, and all devices previously manufactured by Axiom. Musallam details instances in Russia, Dubai, Jordan, Italy, Ecuador, Mexico, Florida, New Jersey, and Texas, wherein Jim Gibson, Axiom's principal, and his agents have purportedly interfered with Excite's exclusive right to manufacture the DRX9000®, thereby resulting in confusion in the marketplace and loss of business. HTRD contends that Axiom's willful and blatant infringement has resulted in and will continue to result in harm and damage to its reputation and goodwill. It asserts that the injury to its business relationships and loss of public confidence in its brand is irreparable and cannot be remedied by money damages. Further, the harm suffered by HTRD by Axiom's continued use of its marks and intellectual property far outweighs any harm which might be suffered by Plaintiff were an injunction to issue. Finally, it argues that the public interest is always served by preventing consumer confusion in the market place.

By its response, Axiom asserts that, contrary to HTRD's argument, it owns the trademarks and other intellectual property at issue and that it has been in continuous operation since 2001. In late 2005, it entered into a "complex transaction" to transfer raw materials

5

inventory, finished goods inventory, computer equipment, leasehold improvements, machinery, equipment, furniture, and fixtures to the LLC to facilitate transfer to a third party. Axiom urges that the LLC acquired only the assets specifically listed in the 2007 Warranty Bill of Sale.  In furtherance of this transaction, Axiom was supposed to transfer its remaining assets, including the intellectual property rights, to the third party.  However, the transaction failed, and therefore the intellectual property was never transferred.  According to Axiom, it continued business operations, including licensing its trademarks to the LLC and foreign distributors, until eventually Axiom terminated the LLC's license to use its intellectual property.  However, Axiom continued to license its trademarks to its foreign distributors who had been authorized to use its intellectual property in China, Russia, Korea, and other parts of the world.  While it agrees that in satisfaction of its debts, the LLC transferred the assets it received from Axiom to Progress Bank, Axiom urges that this transfer could not have included Axiom's intellectual property because such was never been transferred to the LLC in the first instance.  When Progress Bank sold to HTRD those assets it received by way of the ABC proceeding, it transferred only that tangible property received from the LLC – which did not include Axiom's intellectual property.  Thereafter, HTRD filed documents with the USPTO, in an attempt to fraudulently assign Axiom's trademarks to itself.

In addition to the factual record which demonstrates that HTRD does not own any of the trademarks or other intellectual property at issue, Axiom cites to a ruling entered in a prior proceeding before the United States District Court for the Northern District of Georgia.[7]  On

---

[7] In that matter, *North American Medical Corp. v. Axiom Worldwide, Inc.*, Case No. 1:06-cv-1678-JEC, District Judge Carnes granted summary judgment in favor of plaintiff

the basis of that decision, which found that the LLC did not own the Axiom trademarks, Axiom argues as a matter of law that HTRD is without standing to raise the issue of ownership of the intellectual property in dispute. Thus, Axiom urges that under the doctrine of issue preclusion, HTRD is barred from relitigating an issue of fact as to ownership of the intellectual property already decided in these earlier proceedings. Furthermore, HTRD, as a successor in interest to the LLC, may not make a claim of ownership that the LLC could no longer make in these circumstances.

## II.

Rule 65 of the Federal Rules of Civil Procedure governs the entry of a preliminary injunction. The purpose of a preliminary injunction is to maintain the *status quo* until the court can enter a final decision on the merits of the case. *Bloedorn v. Grube*, 631 F.3d 1218, 1229 (11th Cir. 2011). A party seeking entry of a preliminary injunction must establish (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction is not granted; (3) the threatened injury to the moving party outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest. *Forsyth Cnty. v. U.S. Army Corps of Eng'rs*, 633 F.3d 1032, 1039 (11th Cir. 2011).

---

NAM on defendant/counter-plaintiff Axiom LLC's counterclaims for trademark infringement. *See* (Doc. 1-3). Pertinent to the issues in this action, Judge Carnes held in that case that the LLC did not have standing to assert its trademark infringement counterclaim because the LLC did not own the trademarks at issue (the same that are at issue in this suit). The court's ruling was based on the fact that "[t]he records of the United States Patent and Trademark Office indicate that Axiom Inc. still owns the trademarks at issue" and because "the 2007 Warranty Bill of Sale did not, by its terms, transfer Axiom Inc.'s trademarks, or any intellectual property rights, to Axiom LLC." *Id.* at 8.

"A preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishes the burden of persuasion as to the four requisites." *Id.* (quoting *Am. Civil Liberties Union of Fla., Inc. v. Miami-Dade County Sch. Bd.*, 557 F.3d 1177, 1198 (11th Cir. 2009)). The entry of a preliminary injunction is "the exception rather than the rule, and plaintiff must clearly carry the burden of persuasion." *Siegel v. LePore*, 234 F.3d 1163, 1179 (11th Cir. 2000) (citations omitted). A plaintiff may support its motion for a preliminary injunction by setting forth allegations of specific facts in affidavits. M.D. Fla. R. 4.06(b)(2), 4.06(b)(3). In considering a motion for preliminary injunctive relief, a district court may rely on affidavits and hearsay materials that would not be admissible as evidence for entry of a permanent injunction. *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995).

### III.

The parties each assert a legal argument which they urge dictates a favorable, even dispositive, ruling in their behalf. First, HTRD contends that Axiom's transfer of its "goodwill" to LLC under the 2007 Warranty Bill of Sale included, as a matter of law, the transfer of Axiom's intellectual property including its trademarks. The second legal issue arises from Axiom's contention that the decision from the Northern District of Georgia has preclusive effect on the issue of ownership of the intellectual property in dispute in this suit. As set forth below, I conclude that HTRD's contention cannot be resolved on this motion on the proffered facts. As for Axiom's claim of issue preclusion, it appears that the argument fails where, as here, Axiom was not a party to the actual dispute litigated before Judge Carnes. At a minimum, I conclude that the ruling in the Northern District of Georgia, even if not

binding on HTRD, strongly supports the conclusion that HTRD is not likely to succeed on the merits of its claim. A discussion of each of these contentions follows.

A.

HTRD argues that, as a matter of law, Axiom's transfer to the LLC of "goodwill" necessarily included a transfer of intellectual property. As a consequence, it argues that such intellectual property ultimately passed to it when it purchased the assets from Progress Bank (which had obtained the assets at the conclusion of the ABC proceeding). HTRD argues that case law conclusively supports that a transfer of goodwill transfers all the transferor's trademarks without the need to make specific reference to the trademarks. This is so because trademarks have no existence independent of goodwill. In support, it cites the Fifth Circuit decision in *Holly Hill Citrus Growers' Ass'n v. Holly Hills Fruit Prods., Inc.,* 75 F.2d 13, 14 (5th Cir. 1935), and an unpublished opinion by the Eleventh Circuit in *Ferrellgas Partners, L.P. v. Barrow*, No. 03-00107-CV-2-WDO, 2005 WL 1736276 (11th Cir. July 26, 2005).

In response, Axiom does not directly respond to the argument that sale of the goodwill as a matter of law necessarily included sale of the trademarks. It does argue based on Judge Carnes' ruling and by its version of the facts surrounding the transfer of these assets to the LLC[8] that such evidence supports that the LLC never purchased the intellectual property from Axiom and thus HTRD can claim no legitimate ownership interest in the same. That is, as a successor in interest to the LLC, HTRD can have no greater ownership right than

---

[8] Axiom's recitation of the events surrounding the sale to HTRD is set forth in its response. *See* (Doc. 51 at 2-10).

that held by the LLC and since the LLC did not own the trademarks, neither can HTRD.[9] Under the doctrine of issue preclusion, it here asserts that the ruling from the Northern District of Georgia that the LLC lacked standing to assert its trademark infringement counterclaim because it did not own the intellectual property at issue precludes HTRD from relitigating the issue here because a party claiming under a predecessor in interest who is precluded from re-litigating an issue would likewise be precluded from re-litigating the same issue.[10]

HTRD's legal argument concerning the sale of goodwill and thus the trademarks is not without some support. As Professor McCarthy has written, "[g]ood will and its symbol, a trademark, are inseparable. A trademark has no independent significance apart from the good will it symbolizes. If there is no business and no good will, a trademark symbolizes nothing. For this reason, a trademark cannot be sold or assigned apart from the good will it symbolizes." J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 2:20 (4th Ed. 1998). As HTRD points out, such is the law in both the Fifth and Eleventh Circuits. Thus, in *Holly Hill Citrus Growers*, the former Fifth Circuit stated,

> The law of trade-marks is part of the law of unfair competition;
> trade-marks follow; they are incidents and appurtenances to busi-

---

[9] Plaintiff cites *Key West Wharf & Coal Co. v. Porter*, 58 So. 599 (Fla. 1912); *Smith v. Urquhart*, 176 So. 787 (Fla. 1937); *Evans v. Hillsborough County*, 186 So. 193 (Fla. 1938); and *Silver Waters Corp. v. Murphy*, 177 So. 2d 897 (Fla. Dist. Ct. App. 1965).

[10] Plaintiff cites *Allen v. McCurry*, 449 U.S. 90 (1980), for the proposition that under the doctrine of issue preclusion, "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Id.* at 94. Plaintiff also relies on the court's holding in *Lewis v. Seneff*, 654 F. Supp. 2d 1349, 1357 (M.D. Fla. 2009), that applies issue preclusion to a standing issue such as is present here.

> nesses and trades. They have no independent existence; they may
> not be sold in gross. They attach to and pass with the good will
> of a business, and, as appurtenant to it, they are freely and easily
> sold. No particular form of words is necessary to transfer them;
> they inhere in and pass with the goodwill.

*Holly Hill Citrus Growers' Ass'n*, 75 F.2d at 15; *see also Ferrellgas Partners*, 2005 WL 1736276, at *4-6. And, it is clear that "[w]here the entire stock of a business is purchased and the business continued under its original name, it must be presumed that the purchaser acquired the goodwill of the business together with the commercial symbols of that goodwill, the business' trademarks and trade names." *Ferrellgas Partners,* 2005 WL 1736276, at *4 (citations omitted). "Thus even if the word 'trademark' or similar terms are not mentioned in the contract for sale of the business, the trademarks of the business are presumed to pass to the buyer as an important part of the business and its good will." MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 18:37 (4th ed. 2011). Here, although the sale of assets from Axiom to the LLC specified only certain assets to be transferred rather than the whole of the business, it also purported to transfer Axiom's "goodwill" and from this HTRD extrapolates that the trademarks followed the goodwill. HTRD urges that such can also be gleaned from the fact that after the transfer, the business of Axiom was actually carried on by the LLC, which used and employed the intellectual property of Axiom as its own. Both the legal argument and these factual assertions are in dispute as Axiom maintains that the bill of sale reveals that the trademarks were never transferred. Rather than a transfer of the entire business, the bill of sale reflects a different type "as is" and "where is" transaction, involving the transfer of only certain specified assets, including goodwill, but not the trademarks and other intellectual property. By its account, the trademarks were held by Axiom and intended

to be sold or assigned in a second transfer. Furthermore, Axiom counters that it remained in business after the transfer to the LLC and licensed to the LLC (and others) the use of the trademarks.

By my consideration, in the facts of this case it is not as clear as HTRD contends that the transfer of goodwill necessarily transferred the trademarks and other intellectual property of Axiom. There is case law to support that "[a] trademark may be retained by its owner even though the existing assets are sold." *Berni v. Internat'l Gourmet Rests. of Am., Inc.*, 838 F.2d 642, 646 (2d Cir. 1988) (citing *Defiance Button Mach. Co. v. C & C Metal Prods. Corp.*, 759 F.2d 1053, 1061 (2d Cir.), *cert denied*, 474 U.S. 844 (1985)). Even "[w]here the owner has sold its equipment, inventory and other assets, discharged its work force and announced it has discontinued manufacturing its products, it may nonetheless retain a protectable interest in its mark, if it evidences an intention not to abandon the mark." *Id*. While "it is well-settled law that the 'transfer of a trademark or trade name without the attendant [goodwill] of the business which it represents is, in general, an invalid 'in gross' transfer of rights,'" it does not appear that the same is always true in reverse. *Int'l Cosmetics Exch., Inc. v. Gapardis Health & Beauty, Inc.*, 303 F.3d 1242, 1246 (11th Cir. 2002) (quoting *Berni*, 838 F.2d at 646). By Axiom's version, it never intended to nor did it transfer its intellectual property to the LLC. Other case law suggests that if the transfer is short of the entire business and its assets, such that the transferor can continue operating within the same line of business, the trademarks do not pass inherently with transferred goodwill. *See Merry Hull & Co. v. Hi-Line Co.*, 243 F. Supp. 45, 51 (S.D.N.Y. 1965) (holding that the test applied when less than all of a business' assets are transferred in determining whether goodwill and its related trademarks are also

12

transferred is whether the assets purchased enable the purchaser to "go on in real continuity with [the] past"). Such a question is a factual determination, which essentially examines the importance of the assets to the continuance of the transferor's business. *Id.*

As all of this relates to this motion, I find that it to dictate the conclusion that HTRD cannot demonstrate that it is likely to succeed on the merits of its claims and thus injunctive relief is not warranted. *See R. Miller Architecture, Inc. v. Edgington Enters., Inc.*, No. 6:06-cv-871-Orl-19DAB, 2006 WL 2226297, at *4 (M.D. Fla. Aug. 3, 2006) (establishing that in the context of a copyright claim, a preliminary injunction should not be granted where central factual disputes remain because such disputes cast doubt on whether the moving party has a likelihood of success on the merits).

B.

On the matter of the preclusive effect of Judge Carnes' Order in the Northern District of Georgia litigation, Axiom urges that the issue of the LLC's ownership of the subject trademarks was determined by that court and the ruling precludes HTRD, as a successor in interest to the LLC, from relitigating the issue in this case. A brief review of the pertinent aspects of that case is in order.

In that litigation, plaintiff, North American Medical Corporation (NAM), sought summary judgment on Count I of Axiom LLC's counterclaim for trademark infringement. As the court described the counterclaim, the LLC contended that NAM used Axiom Inc's registered trademarks as meta-tags to its website and as a consequence, potential customers were misled as to plaintiff's identity and misdirected to plaintiff's website. In ruling on the matter, the court noted, "[i]n order to have standing to assert a trademark infringement claim,

13

a party must show that it owns the trademark in question. Axiom LLC cannot meet this requirement. The records of the [USPTO] indicate that Axiom Inc. still owns the trademark at issue. Moreover, the 2007 Warranty Bill of Sale did not, by its terms, transfer Axiom Inc.'s trademarks, or any intellectual property rights, to Axiom LLC." (Doc. 1-3 at 8) (internal citations omitted). Absent ownership of the trademarks, the LLC was found to be without standing to pursue the claim, and summary judgment was granted in favor of NAM on that count. *Id.* at 7-9. Axiom contends that this ruling unequivocally demonstrates that the LLC did not own the trademarks, and as a consequence, the LLC and any party claiming through the LLC, such as HTRD, are bound by that decision.[11]

In opposition,[12] HTRD contends that "in order for an adjudication in prior litigation to have preclusive effect, the party asserting preclusion must have actually litigated the claim or issue against the party against whom it would asset the preclusion claim." (Doc. 29 at 13). By HTRD's argument, such was not the case in that litigation where Axiom and the LLC were co-defendants with a unity of interests. Thus Axiom and the LLC asserted no cross-claims against each other and in fact, neither was Axiom a party to the counterclaim litigation brought by the LLC in that suit. As a consequence, HTRD urges that the Order on the LLC's

---

[11]Plaintiff cites *Lewis*, 654 F. Supp. 2d at 1357-60; *Key West Wharf & Coal Co.*, 58 So. 599; *Smith*, 176 So. 787; *Evans*, 186 So. at 196; *Silver Waters Corp.*, 177 So. 2d at 901.

[12]HTRD's argument is formally set forth in its motion for partial summary judgment. (Doc. 29) which HTRD has incorporated by reference in the instant motion (Doc. 45 at 7). There, it initially argued in its motion for partial summary judgment that the Northern District of Georgia ruling did not have preclusive effect because it was never reduced to judgment. That argument is now unavailing as the Georgia federal case was resolved and reduced to judgment. *See* (Doc. 56-2). In dismissing that action, the court specifically noted that the summary judgment rendered against the LLC as to its counterclaims survives the dismissal and remains binding on the parties. (Doc. 56-1).

counterclaim can have no preclusive effect as to the ownership rights of Axiom or HTRD.[13] In any event, HTRD claims that Axiom is judicially estopped to claim ownership of the intellectual property where its principal, Mr. Gibson, has testified in other judicial proceedings that Axiom indeed conveyed all of its assets to the LLC. Thus, it urges that in the Progress Bank/foreclosure guaranty action that Gibson testified that Axiom transferred all of its assets to the LLC. And, in the ABC pleadings and at the hearing on the motion to transfer assets to Progress Bank, Gibson indicated that the LLC owned the intellectual property. On the basis of these assertions, Axiom is estopped to deny that it transferred its intellectual property to the LLC.[14]

"Issue preclusion generally refers to the effect of a prior judgment in foreclosing successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, whether or not the issue arises on the same or a different claim." *New Hampshire v. Maine*, 532 U.S. 742, 748-49 (2001). Thus, issue preclusion forecloses relitigation of an issue of fact or law that has been litigated and decided in a prior suit. The following are the prerequisites to the application of collateral estoppel: "(1) the issue at stake must be identical to the one involved in the prior litigation; (2) the issue

---

[13]HTRD cites *American Tritical, Inc. v. Nytco Services, Inc.*, 644 F.2d 1132 (9th Cir. 1981); *Franklin Stainless Corp. v. Marlo Transport Corp.*, 748 F.2d 865 (4th Cir. 1984); *Penda Corp. v. United States & Cadillac Products, Inc.*, 44 F.3d 967 (Fed. Cir. 1994); and *Davis & Cox v. Summa Corp.*, 751 F.2d 1507 (9th Cir. 1985).

[14]In legal support, HTRD cites *Blumberg v. USAA Casualty Insurance Co.*, 790 So. 2d 1061, 1066 (Fla. 2001); *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1285 (11th Cir. 2002); *Simmons v. State*, 611 So. 2d 1250, 1253 (Fla. Dist. Ct. App. 1992); *Barger v. City of Cartersville, Georgia*, 348 F.3d 1289 (11th Cir. 2003); *Robinson v. Tyson Foods, Inc.*, 595 F.3d 1269, 1276-77 (11th Cir. 2010).

must have been actually litigated in the prior suit; (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in that action; and (4) the party against whom the earlier decision is asserted must have had a full and fair opportunity to litigate the issue in the earlier proceeding." *I.A. Durbin, Inc. v. Jefferson Nat'l Bank*, 793 F.2d 1541, 1549 (11th Cir. 1986); *see also Christo v. Padgett*, 223 F.3d 1324, 1339-40 (11th Cir. 2000); *Pleming v. Universal-Rundle Corp.*, 142 F.3d 1354, 1359 (11th Cir. 1998).

The application of issue preclusion may depend on whether the parties were aligned on the same side of the litigation or not. Thus, the Restatement (Second) of Judgments provides in pertinent part that,

> Parties who are not adversaries to each other under the pleadings in an action involving them and a third party are bound by and entitled to the benefits of issue preclusion with respect to issues they actually litigate fully and fairly as adversaries to each other and which are essential to the judgment rendered.

Restatement (Second) of Judgments, § 38 (1980). "An element of collateral estoppel, or issue preclusion, is actual, full, and fair litigation between the parties, especially when they previously were aligned on the same side of an action." *Franklin Stainless Corp.*, 748 F.2d at 867 (citing Restatement (Second) of Judgments §§ 27 comment a, and 38 comment a); *see also Penda Corp.*, 44 F.3d at 972 (citing the Restatement (Second) of Judgments, § 38 and declining to impose issue preclusion against a third-party defendant where the government defendant and the third-party defendant were allies, not adversaries, on all the issues before

16

the court).  Here, Axiom and the LLC were similarly situated as allies in the litigation brought by NAM.  Under this rule, absent an actual adversarial relationship in the litigation, the decision by Judge Carnes lacks preclusive effect in this litigation.  While I can find no Eleventh Circuit decision on point specifically applying § 38 of the Restatement (Second) of Judgments, given that the Eleventh Circuit has cited the Second Restatement of Judgments with approval in other matters, I find the rule persuasive.  *See, e.g., CSX Transp., Inc. v. Bhd. of Maint. of Way Employees*, 327 F.3d 1309, 1316 n.7 (11th Cir. 2003) (citing with approval Restatement (Second) of Judgments § 28); *David Vincent, Inc. v. Broward Cnty.*, 200 F.3d 1325 (11th Cir. 2000) (citing Restatement (Second) of Judgments § 27); *Aquatherm Indus., Inc. v. Fla. Power & Light Co.*, 84 F.3d 1388, 1392-95 (11th Cir. 1996) (relying on the Restatement (Second) of Judgments §§ 24-26); *In re Justice Oaks II, Ltd.*, 898 F.2d 1544, 1550 n.3 (11th Cir. 1990) (positively citing the Restatement (Second) of Judgments § 17 comment c).

Nonetheless, Judge Carnes' factual finding that the LLC did not own the trademarks significantly undermines HTRD's argument.  As a successor in interest to the LLC, it cannot claim any greater interest in the trademarks than that actually possessed by Progress Bank and before it, the LLC.  By Judge Carnes' ruling, the evidence revealed that the LLC did not own the trademarks and if such is the case, neither does HTRD.  Given that the proffered evidence on ownership of the trademarks before Judge Carnes appears essentially the same as that proffered to this court, the outcome will likely be the same.

HTRD also asserts that Axiom, through its principal, Gibson, has taken inconsistent positions in different proceedings on the matter of ownership of the trademarks and other

intellectual property[15] and thus is judicially estopped to take an inconsistent position in this matter.[16]  In contrast, Axiom contends that the argument is legally deficient as the doctrine of judicial estoppel does not elevate prior inconsistent statements to an equitable defense.[17]  By my consideration, even assuming HTRD may litigate the matter of ownership of the trademarks, its claim of judicial estoppel is so disputed and fact-intensive as to make its resolution on this motion wholly inappropriate.

In sum, HTRD's claim that the transfer by Axiom of its goodwill to the LLC necessarily transferred the trademarks and other intellectual property appears the subject of factual disputes which may not be resolved on this motion.  While HTRD appears correct that issue preclusion does not bar it from litigating the ownership of the trademarks and

---

[15]HTRD proffers several excerpts of Gibson's testimony wherein he testifies that all of the assets of Axiom were transferred or sold to the LLC. (Doc. 5-4, at 1; Doc. 30-1 at 38).  In response to the claim that its principal, James Gibson, has taken inconsistent positions, Axiom contends that the argument is materially misleading at best.  Axiom submits that when testifying regarding the 2007 Warranty Bill of Sale, Gibson has consistently testified that only certain tangible assets were transferred.  The significant factual dispute on this issue as well underscores the propriety of the conclusion reached herein that HTRD cannot demonstrate a substantial likelihood of success on the merits.

[16]Judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *New Hampshire*, 532 U.S. at 749 (quoting *Pegram v. Herdrich*, 530 U.S. 211, 227 n.8 (2000)).  The Court noted several factors which inform the decision to apply the doctrine.  First, a party's later position must be 'clearly inconsistent' with its earlier position.  Second, whether the court's acceptance of a later position would create the perception that either first or the second court was mislead.  A third consideration is whether the party asserting an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.  Additional factors may also inform the decision.  *Id*.

[17]Axiom cites to *Grau v. Provident Life & Accident Insurance Co.*, 899 So. 2d 396, 401 (Fla. Dist. Ct. App. 2005), and *Sunbelt Cranes Construction & Hauling, Inc. v. Gulf Coast Erectors, Inc.*, 189 F. Supp. 2d 1341, 1345-46 (M.D. Fla. 2002).

18

intellectual property at issue here, the ruling in the Northern District of Georgia litigation militates strongly against HTRD's claim of ownership of the trademarks and other intellectual property. HTRD's proffered evidence does nothing to strengthen its position or alter the conclusion that it fails to demonstrate a likelihood of success on the merits and as a consequence, denial of the preliminary injunction is appropriate.

IV.

For the foregoing reasons, it is recommended that HTRD Group Hong Kong Limited a/k/a HTRD Group Hong Kong Limited, Inc.'s Motion for Preliminary Injunction and Incorporated Memorandum of Law (Doc. 45) be **denied**.

> Respectfully submitted on this
> 18th day of July 2012.
>
> THOMAS B. McCOUN III
> UNITED STATES MAGISTRATE JUDGE

### NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal and a *de novo* determination by a district judge. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; M.D. Fla. R. 6.02; *see also* Fed. R. Civ. P. 6.

Copies to:
Honorable Virginia M. Hernandez Covington, United States District Judge
Counsel of Record