UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

AXIOM WORLDWIDE, INC.,

    **Plaintiff,**

v.                                         Case No.  8:11-cv-1468-T-33TBM

**HTRD GROUP HONG KONG LIMITED, et al.,**

    **Defendants.**

_____/

## REPORT AND RECOMMENDATION

        Presently before the Court is **Axiom's Motion for Sanctions** (Doc. 162).  As the record reflects, the Court has conducted numerous hearings since November 27, 2012, related to the Defendants' failure to timely and fully participate in discovery.  Axiom's Motion, filed December 27, 2012, seeks sanctions against all the Defendants for their purported failure to comply with document requests and interrogatories and particularly, the Court's Order of November 30, 2012.  For the reasons which follow, the Motion should be **granted in part**.

        A review of the lengthy procedural history related to discovery in this case is helpful to understanding the proposed sanctions.  Axiom initiated discovery in February 2012.  On November 30, 2012, the Court granted in part Axiom's motion to compel on a finding that "[o]n the whole, it appears that Defendant's document production has been woefully inadequate and untimely." (Doc. 143 at 5).  The Order directed that the Defendants produce documents in ten broad categories, made relevant by the claims and defenses, within twenty-five days from the date of the Order.  The Order also permitted Plaintiff access to any Axiom

Inc. or Axiom LLC computer server obtained by HTRD from Progress Bank. (Doc. 143 at 5-7). As noted above, on December 27, 2012, Axiom filed the instant Motion for Sanctions complaining of a complete failure by the Defendants to comply with the Order. The Motion particularly focused on the failure of Defendants David Ren, HTRD and the Ryzur entities[1] to provide discovery. As sanctions, Axiom sought an Order striking Defendants' pleadings and default judgment against each on the matter of liability. On January 8, 2013, Axiom filed a motion requesting oral argument on its motion wherein counsel conceded that on the day following its filing of the Motion for Sanctions, Defendant Excite Medical Corp. (Excite) had delivered approximately 27,000 pages of documents to his office. Nonetheless, counsel urged that upon his review, no documents related to Excite, HTRD, or the Ryzur Defendants, apart from forty pages of highly redacted Excite records, ordered by the Court, were within this production. (Doc. 165). Defendants filed their response to the Motion for Sanctions on January 10, 2013. (Doc. 166). They noted that contrary to Plaintiff's allegations, 20,000 documents were previously provided by Excite on their behalf and, in compliance with the Court's November 30, 2012 Order, an additional 27,000 pages of documents were delivered to Plaintiff on December 28, 2012. Several additional pages of financial statements from the Chinese Defendants were delivered on December 30, 2012. That response was then supplemented by an affidavit from Mr. Marder of Eltech, two medical certificates and a copy of the supplemental answers to interrogatories by Mr. Ren. (Doc. 179). On January 17, 2013,

---

[1] On May 17, 2013, the Court granted the parties' Joint Motion for Order Amending Pleadings to Designate Correct Legal Names of the Ryzur Defendants (Doc. 292). *See* (Doc. 293). The docket was amended accordingly.

after a hearing on the Motion for Sanctions (Doc. 162), the Court denied the Motion against Mr. Ren, HTRD and the Ryzur companies, noting, however, that should it become apparent that those Defendants had withheld disclosures required by the discovery in this case, Plaintiff was permitted to revisit the matter of sanctions on a subsequent motion. (Doc. 183 at 3).[2] As for the remaining Defendants, Excite, its principal, Saleem Musallam (Musallam), Eltech USA, LLC (Eltech), and Andrew Deweerd (Deweerd),[3] the Court deferred the motion pending a response from Excite and Musallam. (Doc. 183 at 3).

On January 31, 2013, Excite and Musallam filed their response to the Motion for Sanctions. (Doc. 186). The response is supported by affidavits from Musallam, Mr. Meyers, the counsel of Excite, and an affidavit from Ilya Marder, a principal in Eltech. *See* (Doc. 187). In sum, Excite and Musallam urged that they responded appropriately to the Court's November 30, 2012 Order and accumulated some 27,000 pages of responsive documents which were delivered to Axiom's counsel on December 28, 2012. They argued that there was little evidence of their actual bad faith or wilful disregard for the Court's Order and they blamed a serious "miscommunication" as the cause for Axiom's counsel not being given a

---

[2] As the case developed, subsequent to Mr. Ren's deposition, Axiom filed a renewed motion (Doc. 212) as against Mr. Ren, HTRD and the Ryzur entities, now delineated by counsel as the "Chinese Defendants" or "Chinese Entities" which the Court ultimately granted in part and entered sanctions against those Defendants. (Docs. 268, 287).

[3] Two named Defendants have not made an appearance in this suit. Harlon Parchment was served on December 12, 2011, but never appeared in person or through counsel, and it appears that Cory Brownell has never been served. As for these two gentlemen, the Motion is denied.

disc with pertinent documents at the time of Ms. Fernandes' second deposition.[4]  Finally, they noted that Musallam made another production of more than 170 gigabytes of (unspecified) information that would be delivered to Plaintiff's counsel by February 1, 2013, which would then exceed what had been previously requested.  As such, they denied wilful disregard of the Court's Order.  *See* (Doc. 186).

In its reply, Axiom contended that these Defendants had still failed to comply with the Court's November 30, 2012 Order as the production of more than 27,000 documents was "worthless."  It accused Musallam and/or his counsel, Mr. Meyers, of making false statements about the existence, contents and creation date of the disc supposedly provided to counsel before Ms. Fernandes's deposition in January 2013.[5]  Axiom similarly accused Mr. Marder of Eltech of false statements in his declaration regarding the sales of DRX9000 machines in Russia and for failing to provide responsive documents. (Doc. 205).  The reply was supported by a lengthy affidavit of James Gibson, Axiom's principal, which in substance accused these Defendants of wilfully ignoring the Court's Order concerning discovery and of intentionally perpetrating a fraud upon the Court through the submission of false statements. (Doc. 204).

In response to Plaintiff's renewed motion for sanctions (Doc. 212) as against the Chinese Defendants, Defendants also made arguments in the response related to Musallam

---

[4]Supposedly, Ms. Fernandes carried a disc with her to her deposition intended for delivery to Axiom's counsel. She purportedly gave it to her counsel who then failed to turn it over to Axiom's counsel.  They suggest that the disc, which contained about 95% of the paper documents that had already been produced prior to her deposition, evidenced their intention to cooperate in discovery.

[5]The allegation against Mr. Meyers was withdrawn by Plaintiff at the hearing on April 19, 2013.

and Excite's compliance with the Court's Orders. (Doc. 215). Defendants continued to assert that Excite and Musallam had produced everything that was in their possession. In support of this response (Doc. 215) and in opposition to Gibson's affidavit (Doc. 204), Musallam filed a sworn declaration.[6] (Doc. 217-1). Submissions by Axiom were then filed (Docs. 216, 218), along with an additional affidavit from Gibson (Doc. 219) in rebuttal to Musallam.

The Court then conducted another hearing on the discovery disputes on March 25, 2013. At the conclusion of the hearing and based on complaints about the lack of financial records, the Court directed Excite and Musallam to turn over the company's Quickbooks for Axiom's review. (Doc. 221). Thereafter, Gibson filed affidavits concerning his review of the Quickbooks. He contended that his review revealed that the books had been altered and suggested that Excite must keep two sets of books. (Docs. 225, 227, 232, 238). Ostensibly in support of its response to the renewed motion for sanctions against the Chinese entities, Defendants then filed the affidavits of Deweerd and Musallam, along with supporting documents to rebut Gibson's assertions. (Docs. 241, 242). In reply, Axiom next filed deposition transcripts of Deweerd and Musallam from state court proceedings in support of its Motions for Sanctions. (Doc. 258).

The Court conducted another hearing on April 19, 2013. The Court took testimony from Defendants Deweerd; Musallam, individually and on behalf of Excite; Ilya Marder, on

---

[6]Musallam offered particular explanations for the lack of FDA-related documents, the lack of quality-control, shipping, and customs records which he contended simply did not exist, and he denied a number of other allegations made by Axiom concerning their purported non-production. (Doc. 217-1). Musallam also contradicted certain claims of Axiom concerning Excite's non-production of financial records, invoices, records related to its dealings with HTRD, and matters related to access to information on Axiom's servers.

behalf of Eltech; and Livia Fernandes, on behalf of Excite. Due to the continued disagreement over what was produced in the December 28, 2012 production, the Court directed that Musallam review the 27,000 page production to confirm his and Excite's claims that they had complied fully with the Court's Orders since November 2012. (Doc. 261). On May 3, 2013, Musallam filed a report indicating that he had not located pertinent documents supposedly within the 27,000 page document production. (Doc. 273). He stated that prior to his deposition in October 2012, he had provided copies of distribution agreements for the DRX9000 machines and that he had brought financial documents and sales reports for the DRX9000 to his deposition. He then stated his belief that some of the requested documents might have been produced in the initial production of 20,000 documents and he requested to see if any such documents were in this earlier 20,000 document production. Musallam's report also attached copies of a few purchase orders to HTRD, apparently not previously provided, and sixteen copies of a Production Work Order-Device History Record ("cards"), never previously provided.[7]  *See* (Doc. 273). In response, Axiom filed its report and

---

[7]This response helps illustrate the difficulties experienced with discovery in this case from Excite and Musallam and why sanctions are appropriate. At the April 19, 2013 hearing, Musallam asserted that these work order cards had been previously provided in the 27,000 document production in December 2012. In his report following his review of the records, Musallam made no mention that such were actually not in the 27,000 production. Instead, he stated, "I have located the 'cards' discussed at the hearing as being created when orders were complete and ready for delivery," and subsequently attached them. (Doc. 273 at 2). In the Court's view, these "cards" are highly relevant to the issues in this case and should have been produced by Excite/Musallam much earlier, even without court intervention.

These are not the only documents responsive to the Court's November 30, 2012 Order which Musallam claimed were in the 27,000 document production or about which he gave misleading if not outright false statements. The production of purchase orders is another example. In his March 2013 declaration, Musallam stated that "Excite has provided . . . purchase orders issued by Excite to HTRD and confirmations of those payments."

supplemental report (Docs. 276, 280) again complaining that Excite and Musallam have wholly failed to comply with the Court's Orders leaving Plaintiff without records of their activities with the Chinese entities, and records related to assembly, manufacture, sales, distribution, and tracking of machines, which incorporate Axiom's proprietary designs and software. As such, Axiom has been left without a clear understanding of their operations in the United States and abroad. In support, Axiom filed the Affidavit of Sabri Fattah, a former employee of Excite, which on its face, substantially undermined the credibility of representations made by Musallam and Excite's vice-president, Ms. Fernandes. (Doc. 279).

In response, Excite and Musallam filed the Sworn Declaration of Anthony Conrad, an IT specialist that worked with Excite on behalf of IntelliTechs, and another Declaration of Musallam, accompanied by exhibits. *See* (Doc. 297). In essence, Mr. Conrad refuted paragraphs twenty-three to twenty-five of Fattah's affidavit. (Doc. 297-1). As for Musallam, in his affidavit, he characterized Fattah as a disgruntled former employee and he attempted to contradict his credibility on certain matters. He again asserted that he had only one set of Quickbooks, which accurately reflect the full extent of Excite's financial dealings. *See* (Doc. 297-2).

---

(Doc. 217-1 at 3). At the April 19, 2013 hearing, Musallam testified that the purchase orders were in the 27,000 documents previously produced. He continually asserted during that hearing that he had already produced the purchase orders in hard copy. However, after that hearing, his report of his review of the 27,000 documents did not reveal such to be within the earlier production and he appended at least some of those purchase orders to the report, ostensibly the first production of the same. (Doc. 273 at 2).
  Similarly, shipping records, once said by Musallam not to exist at all, but now admitted to exist, have still not been produced. At a minimum, Musallam has been reckless, if not outright fraudulent, in addressing Excite's production with the Court.

Another hearing on these matters was conducted May 24, 2013. On the eve of the hearing, Axiom filed the supplemental affidavits of Golovina Tatiana and Sabri Fattah in rebuttal to Defendants' response. (Doc. 303). At the hearing, testimony was again taken from Musallam and Deweerd. Musallam did not refute many of the allegations made by Fattah. In many instances, he acknowledged untimely and outright noncompliance with the November 30, 2012 Order. He acknowledged that Excite kept individual customer files reflecting the sales and distribution of DRX machines and that such were not produced by Excite.[8] He did not dispute that emails with vendors and customers, undoubtedly relevant to the suit, had not been produced. Despite Musallam's previous denials of Excite having any shipping records, it was revealed during the last hearing that such was incorrect. He acknowledged that those records also had not been provided. He offered no good excuse for the recent disclosure of the "cards," which as noted above are highly relevant to the issues in this case, and should have been produced without court intervention many, many months ago.

Excite and Musallam have wilfully failed to produce a good deal of information directed by the Court, leaving certain issues regarding discovery from these Defendants disputed and "cloudy." In particular, production related to Excite's business dealings with its Russian distributor, Eltech, and Excite's financial records are fully disputed. As a matter of discovery, Excite/Musallam have contended that what exists has been provided and that the full extent of Excite's financial dealings in the DRX machines may be gleaned from the

---

[8]These files had been revealed earlier by Ms. Fernandes during her deposition, but the contents, obviously relevant to the disputes in this case, were not produced. As the record reflects, Excite refused the Court's earlier recommendation that the depositions be conducted at Excite's facility so as to facilitate the production of relevant records.

invoices provided and the Quickbooks, which also had to be compelled by the Court. Mr. Marder, on behalf of Eltech, testified that what his company has, has been produced, and in any event, all the sales to date were of used or refurbished machines. By his account, about twenty-five used machines, not relevant to this suit as he understands the matter, have been sold.[9] Axiom disputes the fact that the sales involved used machines. On the eve of the hearing, Axiom filed a second affidavit from Golovina Tatiana, its distributor in Russia. (Doc. 303). Therein, she included an email from a purported business manager of Eltech, Mr. Denis Fuks, which lists twenty hospitals or clinics in Russia using the DRX machines. (Doc. 303 at 18-21). By her account, these government entities can only accept new machines. (Doc. 303 at 9-10). Thus, Plaintiff contends that Eltech has provided no useful documentary proof of its dealings with Excite. At April 19, 2013 hearing, Marder invited Axiom to visit the sites where Eltech had sold DRX machines in Russia to verify his testimony. This apparently did not occur.

---

[9] In an earlier affidavit on behalf of Eltech, Ilya Marder stated that he had not responded to interrogatories because he had no personal knowledge of the facts at issue in this suit, and that he and Eltech have relied on Mr. Musallam and counsel for the answer and defenses. (Doc. 187-1). Of the categories of documents listed by the Court, he denied having any documents responsive to categories 1-3, 5, 8-10. He claimed that Eltech began doing business with Excite in September 2010, and through the end of 2012, Eltech had not ordered or sold a single *new* DRX9000 machine. He stated that a computer disc with other documents reflecting on the company's business efforts in Russia, its advertising and marketing materials, and financial documents would be forwarded to defense counsel. In a later pleading, Eltech and Marder again urged that neither could produce matters that did not exist with regards to its alleged sale of a new DRX 9000 machine, but that should such occur, the discovery would be supplemented. (Doc. 215 at 4). Axiom filed an affidavit from Golovina Tatiana, President of OOO Axioma in Moscow, Russia, purportedly the only authorized dealer of DRX machines in Russia, to contradict this claim. (Doc. 223).

9

Axiom has continued to urge that Excite's Quickbooks are not complete and reveal tampering, thus not accurately divulging dealings between Eltech and Excite; that is, Axiom believes that the records do not show the sale of new machines to Eltech as they should. Excite responded with a contrary declaration from its own expert, Mr. Bartley Herrington, concerning the Quickbooks. (Doc. 260). By his account, there was no tampering with these records. In opposition, Plaintiff parlays its view of the Quickbooks, the latest affidavit from Tatiana (Doc. 303) and Marder's testimony about sales into an opinion that Excite's dealings with Eltech in Russia have involved the sale of as many as forty plus DRX machines, twenty of which were new. Excite/Musallam have adamantly contended that such is simply not the case as all of the sales that have occurred to date have been for used machines, as supported by the Quickbooks, which sales are irrelevant to the claims in this suit.

While I recognize that this is not an insignificant dispute as such matters relate to Plaintiff's claim for damages if measured by Excite's sales of the DRX machines, I find no basis to resolve this dispute on this Motion. However, it is abundantly clear that at this stage of these proceedings, both the Plaintiff and the Court should have a clearer picture related to Excite's sales and distribution of the DRX machine in foreign countries than they currently have. The blame for these circumstances lies predominantly at the feet of Excite and Musallam. That is, matters within their custody and control were not produced by Excite and Musallam as they should have been.

There also remains a dispute over ownership of Axiom's computer server. Musallam has acknowledged that at one time during the pendency of this suit the server was stored at Excite, along with other computers and related devices picked up from Progress

10

Bank.  However, Axiom has denied that this is how the Defendants obtained the server.  In any event, when the server developed problems, Musallam had the data transferred to new equipment and the old server was given away, thrown out or destroyed.  As this relates to discovery, Musallam has contended that the data taken from that server has all been provided to Axiom and thus, there has been no prejudice.  This has not been entirely disputed by Axiom, which has acknowledged that it has received data from the former server.  But, Axiom still claims that other matters are missing.  It now asks the Court to find spoliation.  That motion and this dispute are for another day.

Courts are given broad discretion in fashioning appropriate sanctions for violations of discovery orders.  *Malautea v. Suzuki Motor Co.*, 987 F.2d 1536, 1542 (11th Cir. 1993).  Federal Rule of Civil Procedure 37(b)(2)(A) authorizes a court to render default judgment against a party that fails to obey an order to provide or permit discovery.  Fed. R. Civ. P. 37(b)(2)(A).  However, violation of a discovery order which is due to a party's negligence, misunderstanding or inability to comply will not justify a Rule 37 default judgment or dismissal.  *See In re Chase & Sanborn Corp.*, 872 F.2d 397, 400 (11th Cir. 1989).  Instead, "[t]he severe sanction of dismissal or default judgment is to be used only as a last resort and when less drastic sanctions would not be able to ensure a party's compliance with the court's order." *Sussman v. Saleem, Saxon & Nielsen, P.A.*, 154 F.R.D. 294, 298 (M.D. Fla. 1994) (citing *Navarro v. Cohan*, 856 F.2d 141, 142 (11th Cir. 1988)).  Thus, in order to impose such extreme sanctions, the party's noncompliance must be "due to willful or bad faith disregard of court orders which cannot reasonably be expected to be remedied by lesser but equally effective sanctions." *EEOC v. Jacksonville Shipyards, Inc.*, 690 F. Supp. 995, 998 (M.D. Fla.

1988) (citing *Adolph Coors Co. v. Movement Against Racism & the Klan*, 777 F.2d 1538, 1542-43 (11th Cir. 1985)).

The allegations that Excite and Musallam have wilfully failed to timely comply with the Court's November 30, 2012 Order, and supplemental Orders, as well as evidence of reckless if not wilful misrepresentations by Musallam and Fernandes raise the spectra of significant sanctions, including default. At the May 24, 2013 hearing, Axiom's counsel suggested as an alternative sanction against Excite, Musallam and Eltech that the Court could impose certain factual findings as established facts to govern further proceedings in this cause. In particular, Axiom requested as established facts a finding that Excite sold new DRX machines to Eltech and that of the more than forty machines sold to Eltech, twenty were new machines. In connection with the computer server, Axiom requested a finding of spoliation of evidence and an evidentiary finding that the Defendants did not obtain the server from Progress Bank. Additionally, it sought monetary sanctions.

Upon consideration, I find this case every bit the egregious case which merits striking the pleadings of Excite and Musallam and the entry of default against each. Their conduct related to discovery matters evidenced bad faith and was wilful, highly obstructive and seriously prejudicial to Plaintiff. In my view, they have forfeited the right to defend the suit further. As an appropriate and additional sanction, Axiom is awarded its costs and expenses in litigating discovery disputes against Excite and Musallam since the entry of the November 30, 2012 Order. An affidavit setting forth the claim shall be filed within fourteen (14) days from the date of this Order. On the record presented, I cannot reach the conclusion that Eltech has wilfully abused the discovery process as alleged. At present, there is inconclusive and thus

insufficient proof that it purchased new machines, as suspected by Axiom, such that it also has abused and defrauded Plaintiff or the processes of this Court through its discovery responses. Nor do I find such wilful violation by Mr. Deweerd that he should be defaulted or otherwise sanctioned.

Accordingly, it is recommended that Axiom's **Motion for Sanctions** (Doc. 162) be **granted** as against Excite and Musallam, and **denied** as against Eltech and Deweerd.

> Respectfully submitted this
> 25th day of May 2013.
>
> _____
> THOMAS B. McCOUN III
> UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES OF EXPEDITED OBJECTION PERIOD**

Failure to file written objections to the proposed findings and recommendations contained in this report by **5:00 p.m. on Wednesday, May 29, 2013** shall bar an aggrieved party from attacking the factual findings on appeal and a *de novo* determination by a district judge. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; M.D. Fla. R. 6.02; *see also* Fed. R. Civ. P. 6.

Copies furnished to:
The Honorable Virginia H. Covington, District Judge
Counsel of Record