UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

AXIOM WORLDWIDE, INC.,

        Plaintiff,

                         Case No.: 8:11-cv-1468-T-33TBM

v.

HTRD GROUP HONG KONG LIMITED
a/k/a HTRD GROUP HONG KONG
LIMITED, INC., ET AL.,

        Defendants.

_____/

## ORDER

This cause comes before the Court pursuant to Plaintiff/Counter-Defendant Axiom Worldwide, Inc.'s Motion for Judgment on the Pleadings (Doc. # 92), filed on September 24, 2012, and Axiom Inc.'s Motion for Summary Judgment (Doc. # 146), filed on December 1, 2012.  Also before the Court are the Motions for Summary Judgment filed on December 3, 2012, by Defendant/Counter-Plaintiff HTRD Group Hong Kong Limited (Doc. # 147), Defendant Eltech USA, LLC (Doc. # 148), Defendant Andrew Deweerd (Doc. # 149), Defendant Excite Diagnostics, LLC (Doc. # 150), and Defendants David Ren, Ryzur Medical, Inc., Ryzur Medical Group, Ryzur Medical Investment Co., Ltd., and Anhui Ryzur Axiom Medical Devices, Ltd.[1] (Doc. #  152).

---

[1]     By agreement of the parties, the names of these
(continued...)

The parties have filed timely responses to the respective motions (Doc. ## 95, 156, 224, 226, 228-29, 231), and with leave of the Court, Axiom Inc. filed a reply in support of its Motion for Judgment on the Pleadings (Doc. # 101) and in support of its Motion for Summary Judgment (Doc. # 160). Likewise, with the Court's permission, the Defendants filed a joint reply in support of their Motions for Summary Judgment (Doc. # 243).

Also before the Court is Axiom Inc.'s Motion for Permission to Formally Designate Expert Witness Previously Identified and Expert Opinion That Was Filed With The Court On April 26, 2012 (Doc. # 249), filed on April 14, 2013. The Defendants have not filed a response in opposition to this Motion, but rather, filed their own Motion in Limine (Doc. # 247) requesting the Court to exclude the expert testimony for which Axiom Inc. seeks permission in its Motion. However, the Defendants subsequently withdrew their Motion in Limine (Doc. # 263), reporting that the parties had reached an agreement

---

[1](...continued)
Defendants have since been amended on the record to Beijing Rong Da Shun Da Trading Co. Ltd d/b/a Ryzur Medical, Beijing Ryzur Axiom Medical Investment Co. Ltd., and Anhui Ryzur Axiom Medical Equipment Co. Ltd. (the "Ryzur Defendants") and Defendant Ryzur Medical, Inc. was terminated from the case. (Doc. # 293).

concerning the testimony of their experts. Thus, the Court considers Axiom Inc.'s Motion for Permission to Formally Designate Expert Witness to be unopposed.

Defendants Excite Medical Corp. and Saleem Musallam also filed a Motion for Summary Judgment on December 3, 2012. (Doc. # 151). However, on June 1, 2013, the Court adopted the Report and Recommendation of The Honorable Thomas B. McCoun III, United States Magistrate Judge (Doc. # 305), struck Excite Medical and Musallam's pleadings, and directed the entry of default against them due to their egregious, prejudicial, and willful abuse of the discovery process. (Doc. # 316). Thus, as Excite Medical and Musallam "have forfeited the right to defend the suit," Id. at 6, and their pleadings have been stricken, the Court will not consider their Motion for Summary Judgment herein. However, the Court will still analyze Axiom Inc.'s Motion for Summary as it applies to these Defendants.

After careful consideration and being fully advised in the premises, Axiom Inc.'s Motion for Summary Judgment (Doc. # 146) is granted in part and denied in part as detailed herein; HTRD's Motion for Summary Judgment (Doc. # 147) is denied; Eltech USA, LLC's Motion for Summary Judgment (Doc. # 148), Andrew Deweerd's Motion for Summary Judgment (Doc. #

149), and Excite Diagnostics, LLC's Motion for Summary Judgment (Doc. # 150) are denied in part as to ownership of the intellectual property but otherwise granted; and David Ren and the Ryzur Defendants' Motion for Summary Judgment (Doc. # 152) is granted in part and denied in part as detailed herein.

Furthermore, Axiom Inc.'s Motion for Judgment on the Pleadings (Doc. # 92) is denied as moot and Axiom Inc.'s Motion for Permission to Formally Designate Expert Witness Previously Identified and Expert Opinion That Was Filed With The Court On April 26, 2012 (Doc. # 249) is granted as unopposed.

## I.   <u>Background</u>

According to the parties' joint pretrial statement, Plaintiff "Axiom Inc. developed, manufactured, and sold medical products all over the world." (Doc. # 250 at 24). Its flagship product was the DRX9000, a device that treats back pain. <u>Id.</u> "Later Axiom Inc. developed a similar appliance for the treatment of neck pain and it was either marketed or sold as the DRX9000C or DRX9500." <u>Id.</u>

The parties agree that "Axiom Inc. expended significant resources in developing and distributing machines worldwide in the medical community marketplace" including the costs of

registering five trademarks with the U.S. Patent and Trademark Office (USPTO):

- "Axiom Worldwide Logo" (Serial No. 76533071, filed June 28, 2003);
- "DRX 9000" (Serial No. 76533070, filed July 28, 2003);
- "Better Technology..." (Serial No. 76536333, filed August 11, 2003);
- "Axiom Worldwide" (Serial No. 76595705, filed June 4, 2004); and
- "DRX" (Serial No. 78583889, filed March 9, 2005).

Id. Between 2001 and 2006, Axiom Inc. also obtained several 510(k) clearances from the U.S. Food and Drug Administration (FDA) authorizing Axiom Inc. to market its devices in the United States. (Doc. # 1-1 at 7-9, 14-17).

Non-party Axiom Worldwide LLC ("Axiom LLC") was established on December 29, 2005, "in connection with a proposed sale to a group of investors." (Doc. # 250 at 25). James Gibson, who is and was at all material times the president and CEO of Axiom Inc., executed a Warranty Bill of Sale on February 19, 2007, with a retroactive effective date of January 3, 2006, transferring certain assets of Axiom Inc. to Axiom LLC. Id. at 23, 25; (Doc. # 1-2). Pursuant to the Warranty Bill of Sale, Axiom Inc. transferred to Axiom LLC its "right, title and interest in and to all of [Axiom Inc.'s] raw materials inventory, finished goods inventory, computer

equipment, leasehold improvements, machinery, equipment, furniture, fixtures and goodwill." (Doc. # 1-2).

On July 14, 2006, Axiom Inc. and Axiom LLC were sued by a non-party, North American Medical Corporation, in the U.S. District Court for the Northern District of Georgia, North American Medical Corp. v. Axiom Worldwide, Inc., et al., No. 1:06-cv-1678-CCH (the "Atlanta Federal Case").[2] (Doc. # 250 at 25). Axiom LLC filed a counterclaim for trademark infringement against North American on January 27, 2009. Id. On June 25, 2010, the court in the Atlanta Federal Case granted summary judgment in favor of North American on Axiom LLC's counterclaim. Id. at 26. The court ruled that Axiom LLC lacked standing to bring the trademark infringement counterclaim because it did not own the trademarks at issue. (Doc. # 1-3 at 8-9). Specifically, the court ruled that "the 2007 Warranty Bill of Sale did not, by its terms, transfer Axiom Inc.'s trademarks, or any intellectual property rights, to Axiom LLC." Id. at 8.

Meanwhile, in September of 2008, Axiom LLC borrowed money from Progress Bank, N.A. (Doc. # 250 at 26). Pursuant to the loan documents, Progress Bank acquired a security interest in

---

[2]   The Court has previously taken judicial notice of the Atlanta Federal Case and its record. (Doc. # 90 at 6 n.1).

all of Axiom LLC's assets.  Id.  Axiom Inc. was not a party to the loan agreement between Progress Bank and Axiom LLC.  Id. In December of 2009, Progress Bank withdrew its agreement to renew the loan and filed suit against Axiom LLC.  Id.

On March 25, 2010, Axiom LLC filed a petition commencing an action for the Assignment for Benefit of Creditors in the Thirteenth Judicial Circuit Court in and for Hillsborough County, Florida, In re: Axiom Worldwide, LLC, Assignor to Michael Luetgert, Assignee, No. 10-CA-006801 (the "ABC Case"), pursuant to which Axiom LLC assigned all of its assets to an assignee, Michael Luetgert.  Id. at 26-27; (Doc. # 5-5). Following a hearing on July 1, 2010, the court entered an order authorizing the transfer of Axiom LLC's assets from the assignee to Progress Bank. (Doc. # 250 at 27; Doc. # 1-5).  On July 2, 2010, the assignee executed a bill of sale to Progress Bank of all of Axiom LLC's assets in his possession. (Doc. # 250 at 27; Doc. # 1-6).

Thereafter, on July 16, 2010, Progress Bank sold the assets it had acquired from Axiom LLC to Defendant HTRD "on an additional 'as is' and 'where is' basis without any warranties or representations of any kind pursuant to a document titled 'Quit Claim Bill of Sale and Assignment.'" (Doc. # 250 at 27; Doc. # 1-7).  HTRD entered into the Quit Claim Bill of Sale

and Assignment "with actual knowledge of the June 25, 2010 Order entered in the Atlanta Federal Case." (Doc. # 250 at 28).

Subsequently, "HTRD and Excite Medical filed paperwork with the FDA to become contract manufacturers for Axiom 510(k) products." Id. Additionally, "HTRD has filed paperwork with the USPTO seeking to transfer to itself trademarks that were initially registered to Axiom Inc. and which were never formally transferred to Axiom LLC on the USPTO records." Id.

Axiom Inc. initiated this trademark ownership and infringement declaratory judgment action on July 1, 2011. (Doc. # 1). Axiom Inc. filed a verified amended complaint on August 26, 2011, in which it alleges that it is the owner of the relevant intellectual property, including trademarks, registered marks, trade secrets, trade names, copyrights of the designs and drawings of products marketed under the trademarks, and 510(k) authorizations from the FDA. (Doc. # 20). Axiom Inc. seeks declaratory and injunctive relief as well as damages for alleged trademark and copyright infringement, unfair competition, fraud on the USPTO, misappropriation of trade secrets, interference with its business relationships, and breach of confidentiality agreements. Id.

On July 25, 2011, in response to the original complaint, HTRD filed a counterclaim against Axiom Inc. (Doc. # 5). HTRD contends that its purchase of assets from Progress Bank included "the goodwill carried on the books of Axiom LLC and therefore, the intellectual property and trademarks that [Axiom] LLC had been using for the last four years." Id. at 22. Accordingly, HTRD seeks a declaratory judgment that it is the rightful owner of the intellectual property and that Axiom Inc. has infringed HTRD's trademarks and copyrights, intentionally interfered with HTRD's business relationships, engaged in unfair competition, and misappropriated HTRD's trade secrets. Id. at 24. HTRD filed a motion for preliminary injunction on February 20, 2012 (Doc. # 45), which this Court denied on September 17, 2012 (Doc. # 90).

Defendant David Ren, a citizen of the People's Republic of China, is the owner of HTRD and the Ryzur Defendants, which are all foreign companies. (Doc. # 250 at 23-24); (Doc. # 23 at ¶¶ 4-7). Ren was a former sales agent for a Chinese company that was a licensed distributor for Axiom Inc. (Doc. # 250 at 24).

Defendant Excite Medical Corp. is a Florida corporation that is owned and controlled by Defendant Saleem Musallam. Id. at 23-24. Musallam is a former Axiom Inc. and Axiom LLC

employee who now serves as the U.S. agent for HTRD.  <u>Id.</u> at 24.

Axiom Inc. alleges that Musallam executed a standard confidentiality agreement while employed by Axiom Inc.  (Doc. # 20 at ¶ 10).   Musallam also owned Defendant Excite Diagnostics, LLC, which claims to be "a company created to do testing . . . [that] did not and does not sell or service spinal decompression tables." (Doc. # 150 at 11).

Defendant Eltech USA, LLC is a foreign limited liability company with headquarters in New York City. (Doc. # 250 at 24).  Eltech claims that it endeavored "to become a Russian distributor for new HTRD machines sent it by Excite." (Doc. # 148 at 14).

Defendants Andrew DeWeerd, Harlon Parchment, and Corey Brownell are former Axiom Inc. and/or Axiom LLC employees. (Doc. # 20 at ¶¶ 12, 14, 15). Axiom Inc. alleges that each of these Defendants executed a confidentiality agreement while employed by Axiom Inc. <u>Id.</u>

This case is set for a non-jury trial on the June 2013 trial term.  The parties' motions for summary judgment, as well as the various other motions described above, are now before the Court.

## II.  <u>Legal Standard</u>

-10-

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996)(citing Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993)).  A fact is material if it may affect the outcome of the suit under the governing law. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997).  The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial.  Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions,

answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." <u>Jeffery v. Sarasota White Sox, Inc.</u>, 64 F.3d 590, 593-94 (11th Cir. 1995)(citing <u>Celotex</u>, 477 U.S. at 324).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor. <u>Shotz v. City of Plantation, Fla.</u>, 344 F.3d 1161, 1164 (11th Cir. 2003). If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the court should not grant summary judgment. <u>Samples ex rel. Samples v. City of Atlanta</u>, 846 F.2d 1328, 1330 (11th Cir. 1988)(citing <u>Augusta Iron & Steel Works, Inc. v. Employers Ins. of Wausau</u>, 835 F.2d 855, 856 (11th Cir. 1988)).

### III. <u>Analysis</u>

#### A.   <u>Defendants Brownell and Parchment</u>

As an initial matter, the Court notes that Axiom Inc. moves for summary judgment against all the Defendants, including Brownell and Parchment. However, neither of these Defendants have filed an answer or otherwise appeared in this

-12-

case.[3]   Furthermore, Axiom Inc. has not filed a proof of service as to Brownell as required by Rule 4(l), Fed. R. Civ. P.; thus, it appears that Brownell was not in fact served in this case.

As to Parchment, Axiom Inc. filed a return of service on January 18, 2012, reflecting a service date of December 12, 2011. (Doc. # 42).  However, the return of service reflects that service may not have been properly executed on Parchment in compliance with Rule 4, Fed. R. Civ. P.[4]   Rather, the return of service states that the process server attempted service at Parchment's given address but was informed by a person at the home that she was renting the home from Parchment, that Parchment did not live there, and that

---

[3]   The Court acknowledges that the docket reflects that these two Defendants are represented by the same counsel as that of the other Defendants.  However, the answers and affirmative defenses filed in this case on behalf of the other Defendants do not reflect that they were filed on behalf of either Brownell or Parchment. (Doc. ## 5, 23).

[4]   Rule 4(e) provides that an individual may be served by: "(1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or (2) doing any of the following: (A) delivering a copy of the summons and of the complaint to the individual personally; (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process."

Parchment was currently in China. Id. at 42. Thus, it does not appear that the address would constitute Parchment's "dwelling or usual place of abode" in order for service upon the individual residing there to be proper under Rule 4(e).

A plaintiff generally must effect service of process within 120 days after filing the complaint. Rule 4(m), Fed.R.Civ.P., provides:

> If a defendant is not served within 120 days after the complaint is filed, the court -- on motion or on its own after notice to the plaintiff -- must dismiss the action without prejudice against that defendant or order that service be made within a specified time.

Id.

Based on the Court's review of the record, it appears that Axiom Inc. has failed to properly serve the summons and amended complaint upon these two Defendants within 120 days after the filing of the amended complaint. Accordingly, pursuant to Rule 4(m)'s requirement that a plaintiff be provided notice before a court may dismiss a defendant on its own initiative, Axiom Inc. is directed to **show cause, in writing, on or before June 5, 2013,** why this case should not be dismissed without prejudice as to Defendants Brownell and Parchment for failure to effect service of process in the time prescribed by Rule 4(m), Fed. R. Civ. P.

-14-

B.    **Intellectual Property Ownership**

Turning to the parties' motions for summary judgment, Axiom Inc. contends that under the doctrine of issue preclusion, HTRD, as a successor in interest to Axiom LLC, is barred from asserting a claim to the intellectual property by the prior ruling in the Atlanta Federal Case which held that the 2007 Warranty Bill of Sale did not transfer the relevant intellectual property from Axiom Inc. to Axiom LLC.  The Court agrees.

The doctrine of issue preclusion "bars relitigation of issues actually determined and necessary to the ultimate outcome of a prior proceeding." Bobby v. Bies, 556 U.S. 825, 826 (2009).  The doctrine applies when (1) the issue at stake is identical to the one alleged in the prior litigation; (2) the issue was actually litigated in the prior proceeding; (3) the determination of the issue was a critical and necessary part of the judgment in the earlier action; and (4) the party against whom the earlier decision was asserted had a full and fair opportunity to litigate the issue in the prior proceeding. Miller's Ale House, Inc. v. Boynton Caroline Ale House, Inc., 702 F.3d 1312, 1318 (11th Cir. 2012); Greenblatt v. Drexel Burnham Lambert, Inc., 763 F.2d 1352, 1360 (11th Cir. 1985).

The identical issue that is central to this case -- whether Axiom Inc. transferred the intellectual property to Axiom LLC via the 2007 Warranty Bill of Sale -- was actually litigated in the Atlanta Federal Case when Axiom LLC attempted to assert a trademark infringement counterclaim against the plaintiff in that case. "When an issue is properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined, the issue is actually litigated." Travieso v. Fed. Bureau of Prisons, Warden, 217 F. App'x 933, 936 (11th Cir. 2007)(citations omitted).

Granting summary judgment in favor of North American, the court in the Atlanta Federal Case ruled that Axiom LLC lacked standing to assert the counterclaim because it did not in fact own the trademarks. In its summary judgment ruling, the court expressly found that the Warranty Bill of Sale "did not, by its terms, transfer Axiom Inc.'s trademarks, or any intellectual property rights, to Axiom LLC." (Doc. # 1-3 at 8). "An order entered based on summary judgment does . . . satisfy the actually litigated element of collateral estoppel." In Re Bullock, No. 09-84300, 2010 WL 2202826, at *8 (Bankr. N.D. Ala. May 27, 2010). Accordingly, the Court finds that the first and second requirements for issue preclusion have been satisfied here.

-16-

Next, the Judgment entered on April 13, 2012, in the Atlanta Federal Case states: "[I]t is Ordered and Adjudged that the summary judgment rendered against Axiom LLC as to some of its prior counterclaims shall survive the dismissal of the above captioned case and shall remain binding on the parties." (Doc. # 56-2).  Based on this clear and express language, the Court finds that the determination of this issue was also a critical and necessary part of the judgment rendered in the Atlanta Federal Case, in satisfaction of the third element.

Regarding the fourth element, HTRD raises the same argument which this Court previously considered and rejected in denying HTRD's Motion for Preliminary Injuction, to wit: HTRD contends that the fourth factor, a full and fair opportunity to litigate the issue, has not been satisfied in this case, because, according to HTRD, the doctrine of issue preclusion cannot apply where the parties (or in the case of HTRD, its predecessor in interest) were not adversaries in the prior proceeding.  HTRD argues that "[t]he exception applies to issue preclusion when issue preclusion is raised as to a former co-defendant by a former co-defendant when the interests of the co-defendants in the previous case were aligned and they did not litigate the issues amongst

themselves when they had an opportunity to do so." (Doc. # 147 at 14). Thus, because Axiom Inc. was not a party to the counterclaim in the Atlanta Federal Case and because Axiom Inc. and Axiom LLC did not assert any cross-claims against one another, HTRD contends that Axiom Inc. cannot assert issue preclusion here.

As in its preliminary injunction motion, HTRD again cites the same four cases from other circuits that purportedly support its contention. Id. at 14-16 (citing Penda Corp. v. United States & Cadillac Prods., Inc., 44 F.3d 967 (Fed. Cir. 1994); Franklin Stainless Corp. v. Marlo Transp. Corp., 748 F.2d 865 (4th Cir. 1984); Davis & Cox v. Summa Corp., 751 F.2d 1507 (9th Cir. 1985); and Am. Tritical, Inc. v. Nytco Svcs., Inc., 644 F.2d 1136 (9th Cir. 1981)). However, the Court has previously considered these cases and found them unpersuasive in light of the abundant binding case law from the Supreme Court.

The Supreme Court has established that, unlike for the related doctrine of claim preclusion (also called res judicata), the doctrine of issue preclusion (also called collateral estoppel) does not require mutuality of parties in the prior and instant cases. Indeed, as explained in Allen v. McCurry, 449 U.S. 90, 94-95 (1980), "the Court has eliminated

-18-

the requirement of mutuality in applying collateral estoppel to bar relitigation of issues decided earlier in federal-court suits, and has allowed a litigant who was not a party to a federal case to use collateral estoppel 'offensively' in a new federal suit against the party who lost on the decided issue in the first case." Id. (citing Blonder-Tongue Labs, Inc. v. Univ. of Ill. Found., 402 U.S. 313 (1971), and Parklane Hosiery Co. v. Shore, 439 U.S. 322 (1979)).  In regards to its own Motion for Summary Judgment, Axiom Inc. seeks to invoke collateral estoppel offensively.

Likewise, defensive collateral estoppel, which occurs when "a defendant seeks to prevent a plaintiff from asserting a claim that the plaintiff has previously litigated and lost against another defendant," Parklane Hosiery Co., 439 U.S. at 322, necessarily anticipates that the defendant in the second claim will be different from the defendant in the prior claim. Axiom Inc. seeks to invoke issue preclusion defensively as it relates to HTRD's counterclaim.

Pursuant to the Supreme Court's directive prescribed above, the Court finds that it is not in fact a requirement that the parties have been adversaries in the prior suit and to have fully litigated the issue between each other in order to invoke issue preclusion.  Given that issue preclusion may

-19-

be properly relied upon by someone who was not even a party to the prior suit, <u>Allen</u>, 449 U.S. at 94-95, it necessarily follows that the parties need not have been, and certainly are not required to be, adversaries in the prior proceeding in order to invoke the doctrine.  To hold otherwise would be tantamount to requiring mutuality of parties in the prior and present proceedings in order to invoke issue preclusion, a requirement that the Supreme Court has expressly eliminated. <u>See</u> <u>Allen</u>, 449 U.S. at 94-95.

It is undisputed that Axiom Inc. was not a party to the counterclaim in the Atlanta Federal Case.  Thus, Axiom Inc. was in essence as much of a stranger to the counterclaim as any non-party to the case.  Again, it is well-settled law that a litigant who was not a party to a prior case may use collateral estoppel in a new federal suit against the party who lost on the decided issue in the first case.  <u>Id.</u>  The Court fails to see why Axiom Inc. should be denied the ability to rely on the doctrine of issue preclusion regarding a counterclaim to which it was not a party merely because it happened to be joined as a party to a separate claim brought by the plaintiff in the prior case.

Rather, the pertinent consideration is only whether the party against whom issue preclusion is now asserted -- here,

Axiom LLC as the predecessor in interest to HTRD -- had a full and fair opportunity to litigate the issue of trademark ownership against North American in the Atlanta Federal Case. Indeed, "[t]he most significant safeguard in applying estoppel is the requirement of determining whether the party against whom an estoppel is asserted had a full and fair opportunity to litigate." United States Golf Learning Inst., LLC v. Club Managers Ass'n of Am., No. 8:11-cv-2184, 2012 WL 768201, at *5 (M.D. Fla. Mar. 9, 2012)(internal quotations and citations omitted). Relevant to this determination is whether newly discovered evidence has been provided but "only if the party against whom the doctrine is asserted was deprived of that evidence in the prior litigation through no fault of his own." Id. (citing In re Ga. Granite Co., Inc., 86 B.R. 733, 739 (Bankr. N.D. Ga. 1988)).

The Court finds that Axiom LLC had a full and fair opportunity to litigate the issue of trademark ownership in the Atlanta Federal Case. Again, Axiom LLC filed a counterclaim against North American for infringement of the trademarks now at issue in this case. Accordingly, to prevail on its counterclaim, Axiom LLC would have had to own, and prove that it owned, the trademarks at issue in this case. Thus, Axiom LLC had every incentive to fully litigate the

issue of whether it owned the trademarks at issue here.  HTRD has not presented any evidence to show that Axiom LLC was denied by the court or any other party the opportunity to fully litigate this issue.  There is no evidence indicating that Axiom LLC was deprived of any necessary discovery or evidence on the issue or was denied an opportunity to be fully heard on the issue by the court.  Nor has HTRD presented any newly-discovered evidence of which Axiom LLC was deprived in the Atlanta Federal Case.  Although HTRD correctly notes that collusion between parties in a prior case may prevent a subsequent party from invoking issue preclusion, HTRD has not in fact provided any evidence of collusion between North American and Axiom LLC in the Atlanta Federal Case.  Rather, the Atlanta Federal Case record shows that the identical central issue in this case was properly raised, fully and fairly argued to the court, and decided by the court on summary judgment. (Doc. # 1-3).  Thus, the Court finds that the final element for issue preclusion is satisfied.

Therefore, pursuant to the doctrine of issue preclusion, the Court determines that the parties are barred from re-litigating the issue of intellectual property ownership in light of the Atlanta Federal court's prior determination, which was expressly incorporated into its final judgment, that

Axiom LLC did not ever own the relevant intellectual property because the 2007 Warranty Bill of Sale "did not, by its terms, transfer Axiom Inc.'s trademarks, or any intellectual property rights, to Axiom LLC." (Doc. # 1-3 at 8).  Accordingly, the Court need not further address HTRD's arguments that go to the merits of the dispute (*i.e.,* relitigate the issue) -- including whether the term "goodwill" in the Warranty Bill of Sale necessarily transferred the intellectual property at issue, whether judicial estoppel applies to acts and statements by Axiom Inc.'s representative James Gibson, and whether Axiom Inc. abandoned the disputed intellectual property.  Because the Atlanta Federal Case preclusively determined that Axiom LLC did not own the disputed intellectual property, and the parties agree that HTRD acquired only those assets that Axiom LLC actually owned, the Court concludes that Axiom Inc. is entitled to a summary judgment declaration as to its claim of ownership in the amended complaint, as well as to HTRD's counterclaim, that Axiom Inc. is the owner of the disputed intellectual property. Accordingly, Axiom Inc.'s Motion for Summary Judgment is granted as to its claim of intellectual property ownership and as to HTRD's counterclaim, and HTRD's Motion for Summary Judgment is denied.

Additionally, the parties agree that "HTRD has filed paper work with the USPTO seeking to transfer to itself trademarks that were initially registered to Axiom Inc. and which were never formally transferred to Axiom LLC on the USPTO records." (Doc. # 250 at 28).   In light of the foregoing determination that Axiom Inc. is the owner of the trademarks in dispute and pursuant to 15 U.S.C. § 1119,[5] the Court finds that Axiom Inc. is entitled to a declaratory judgment cancelling HTRD's registration of the relevant trademarks in its name and ordering the USPTO to amend its records to show that Axiom Inc. is the owner of the trademarks at issue in this case.

C.   **Fraud on the USPTO**

Under the Lanham Act, 15 U.S.C. § 1120, "Any person who shall procure registration in the Patent and Trademark Office of a mark by a false or fraudulent declaration or representation, oral or in writing, or by any false means,

---

[5]    15 U.S.C. § 1119 provides: "In any action involving a registered mark the court may determine the right to registration, order the cancelation of registrations, in whole or in part, restore canceled registrations, and otherwise rectify the register with respect to the registrations of any party to the action.  Decrees and orders shall be certified by the court to the Director, who shall make appropriate entry upon the records of the Patent and Trademark Office, and shall be controlled thereby."

shall be liable in a civil action by any person injured thereby for any damages sustained in consequence thereof."

"An applicant commits fraud when he 'knowingly makes false, material representations of fact in connection with an application for a registered mark.'" Sovereign Military Hospitaller Order of Saint John of Jerusalem of Rhodes and of Malta v. Fla. Priory of the Knights Hospitallers of the Sovereign Order of Saint John of Jerusalem, Knights of Malta, 702 F.3d 1279, 1289 (11th Cir. 2012)(quoting Angel Flight of Ga., Inc. v. Angel Flight Am., Inc., 522 F.3d 1200, 1209 (11th Cir. 2008)). "Fraud further requires a purpose or intent to deceive the PTO in the application for the mark." Id. (citing In re Bose Corp., 580 F.3d 1240, 1245 (Fed. Cir. 2009)).

Thus, to establish a prima facie case of fraud in procuring a trademark registration, a party must show that: "(1) the challenged statement was a false representation regarding a material fact; (2) the registrant knew the representation was false (scienter); (3) the registrant intended to deceive the [USPTO]; (4) the [USPTO] reasonably relied on the misrepresentation; and (5) the party suffered damages proximately resulting from such reliance." Pandora Jewelers 1995, Inc. v. Pandora Jewelry, LLC, No. 09-61490-Civ,

2011 WL 2174012, at *14 (S.D. Fla. June 2, 2011)(citations omitted).

Furthermore, the party attempting to prove fraud must do so "by clear and convincing evidence. This is necessarily a heavy burden." Sovereign Military Hospitaller, 702 F.3d at 1289 (citing Angel Flight, 522 F.3d at 1209; Bose, 580 F.3d at 1243). "[T]he very nature of the charge of fraud requires that it be proven 'to the hilt' with clear and convincing evidence. There is no room for speculation, inference or surmise and, obviously, any doubt must be resolved against the charging party." Bose, 580 F.3d at 1243 (citations omitted).

Although Axiom Inc. requests in the amended complaint's prayer for relief that the Court "hold[] that the Defendants have provided false information to the USPTO regarding Axiom Inc.'s Trademarks" (Doc. # 20 at 20), and Defendants Eltech, Excite Diagnostics, Deweerd, Ren and the Ryzur Defendants move for summary judgment on the issue, the amended complaint actually alleges that only HTRD and Musallam committed the alleged fraud on the USPTO by providing false and misleading information to the USPTO. Id. at ¶ 4 ("HTRD . . . together with its US Agent, Mr. Saleem Musallam, has committed fraud on the [USTPTO]. HTRD has provided false and misleading information to the USPTO . . . ."); ¶ 10 ("Musallam provided

-26-

verified and signed false and misleading information to the [USPTO]. . .”); ¶ 54 (“HTRD has manipulated its acquisition of the assets of Axiom, LLC to improperly induce the USPTO to reflect that HTRD is now a listed owner of these trademarks.”).  Regarding Excite Medical, Ren, and the Ryzur Defendants, Axiom Inc. does not allege that these Defendants provided false information to or committed fraud upon the USPTO; rather, these Defendants are alleged only to have “benefitted through HTRD and Musallam’s fraud on the USPTO.” Id. at ¶¶ 6, 7, 13 (the Ryzur Defendants); ¶ 8 (Excite Medical); ¶ 9 (Ren).  The amended complaint does not allege that the remaining Defendants who have appeared in this case, Eltech, Excite Diagnostics, and Deweerd, provided false information to the USPTO or committed or benefitted from any fraud upon the USPTO.  See id.

The Court will analyze this issue as to each of the Defendants below.

1.  **Eltech, Excite Diagnostics, Deweerd, Ren and the Ryzur Defendants**

Defendants Eltech, Excite Diagnostics, Deweerd, Ren and the Ryzur Defendants move for summary judgment in their favor on Axiom Inc.’s claim of fraud on the USPTO.  The Court finds that these Defendants are entitled to summary judgment

because, as explained above, these Defendants are not actually alleged in the amended complaint to have submitted any of the false information to the USPTO or to have otherwise committed fraud upon the USPTO.  In other words, Axiom Inc. does not actually allege a claim of fraud upon the USPTO against these Defendants.  To the extent that Axiom Inc. now seeks to assert such a claim, Axiom Inc. cannot raise on summary judgment a new claim which Axiom Inc. did not include, nor seek leave to include, in its amended complaint. See Newman v. Ormand, 396 F. App'x 636, 639 (11th Cir. 2010)(holding that the district court was not required to address new claims raised in summary judgment motion, despite liberal pleading standard for civil complaints, since standard did not afford plaintiffs opportunity to raise new claims at summary judgment stage).

However, even if the Court were to consider such a claim as to these Defendants, the evidence shows that these Defendants did not "procure registration in the Patent and Trademark Office of [Axiom Inc.'s] mark" -- by fraudulent means or otherwise -- and, thus, were not applicants or registrants of the relevant trademarks as required to establish a claim against them under 15 U.S.C. § 1120. Indeed, the parties agree and admit in their Joint Pretrial Statement that it was HTRD who "filed paper work with the

-28-

USPTO seeking to transfer to itself trademarks that were initially registered to Axiom Inc. and which were never formally transferred to Axiom LLC on the USPTO records." (Doc. # 250 at 28).  Likewise, HTRD's attorney, Kevin Madden, who filed HTRD's applications with the USPTO, confirmed in his sworn affidavit that he was retained by HTRD "solely to file documents with the [USPTO] to transfer certain trademarks to HTRD on the USPTO records." (Madden Aff. Doc. # 153-12). Copies of the USPTO's records also reflect HTRD as the only "assignee" of the relevant trademarks, with Musallam listed as HTRD's only "domestic representative." (Doc. # 1-8 at 1-10).

Additionally, Eltech's representative, Ilya Marder, swore in his affidavit that "neither [he] nor Eltech had any knowledge of or part in HTRD's registration of Trademarks with any agency anywhere." (Marder Aff. Doc. # 187-1 at 2).  On behalf of Excite Diagnostics, Musallam stated in his sworn declaration that "Excite Diagnostics . . . was not involved in any of the transactions in affiliation with this case at any period of time." (Musallam Dec. Doc. # 242 at 6, ¶ 23). Similarly, Deweerd swore in his answers to Axiom Inc.'s Interrogatories that "[his] sole work for either [HTRD or Excite Medical] is related to [his] degree in electrical

engineering and the design of circuit boards and related electronics and equipment." (Doc. # 153-1 at 2).

Accordingly, on this issue, the Court finds that summary judgment is due to be granted in favor of these Defendants and against Axiom Inc. because the amended complaint does not allege a claim of fraud on the USPTO against these Defendants, but even if it did, the evidence establishes that these Defendants were not the parties that "procure[d] registration in the Patent and Trademark Office of [Axiom Inc.'s] mark" as required for liability to be possible under the plain terms of 15 U.S.C. § 1120.

## 2. HTRD

As to HTRD, the Court finds that Axiom Inc. cannot meet its heavy burden of proving on summary judgment that HTRD knew that its claim of ownership of the trademarks was false at the time it registered the trademarks in its name with the USPTO. Again, "[t]he question is not whether the statement is factually false, but whether the applicant subjectively believed it was false at the time he or she made the representation." Ricks v. BMEzine.com, 727 F. Supp. 2d 936, 967 (D. Nev. 2010). Indeed, "if the declarant subjectively believes the applicant has a superior right to use the mark, there is no fraud, even if the declarant was mistaken."

-30-

Sovereign Military Hospitaller, 702 F.3d at 1292. Thus, "[t]here is no fraud if a false misrepresentation is occasioned by an honest misunderstanding or inadvertence without a willful intent to deceive." Bose, 580 F.3d at 1246.

Here, although HTRD admittedly knew about the ruling in the Atlanta Federal Case prior to its registration of the trademarks, the evidence, as well as HTRD's counterclaim and consistent position in this case, show that HTRD subjectively believed that the asset purchase from Progress Bank did include the relevant trademarks and that the holding in the Atlanta Federal Case would not have a preclusive effect on the issue.

Indeed, HTRD's application to the USPTO was based on a detailed legal opinion letter authored by its counsel, Lee Wm. Atkinson, in which Mr. Atkinson discusses the facts and law supporting HTRD's claim of ownership and his conclusion that, in his opinion, HTRD did acquire the relevant trademarks and issue preclusion would not apply.  (Doc. # 113-3 at 9-19).[6]

---

[6]      The opinion letter sets out the grounds for HTRD's claim of ownership which it has relied on throughout this case, including the use of the term "goodwill" in the 2007 Warranty Bill of Sale from Axiom Inc. to Axiom LLC, the inclusion of intellectual property on the schedule attached to Axiom LLC's Assignment for Benefit of Creditors, and the denial by the court in the ABC Case of an objection premised
(continued...)

Notably, in his deposition, Mr. Atkinson testified that at the time he wrote his opinion letter, he believed that the ruling in the Atlanta Federal Case would not have a preclusive effect because a final judgment had not yet been entered in the case, which is one of the required elements for invoking issue preclusion. (Atkinson Dep. Doc. # 275-1 at 20).  Thus, while this Court ultimately disagrees with Mr. Atkinson's and HTRD's position on the preclusive effect of the judgment in the Atlanta Federal Case, the Court cannot say that HTRD's position on the issue was so farfetched or legally unsupportable at the time it submitted its application to the USPTO as to constitute a knowingly false misrepresentation to the USPTO.

Therefore, the Court finds that Axiom Inc. has failed to establish on summary judgment that HTRD committed fraud upon the USPTO and accordingly denies Axiom Inc.'s Motion for Summary Judgment on this issue as to HTRD.  However, HTRD has not moved for summary judgment on this issue, and, thus, the issue remains for determination at trial.

### 3.  **Excite Medical and Musallam**

---

[6](...continued)
on the ruling in the Atlanta Federal Case. (Doc. # 113-3 at 9).

-32-

Although the entry of default against Excite Medical and Musallam has the effect of establishing as fact Axiom's well-pled allegations of fact and bars Excite Medical and Musallam from contesting those facts on appeal, <u>see</u> <u>Tyco Fire & Sec. LLC v. Alcocer</u>, 218 F. App'x 860, 863 (11th Cir. 2007), the Court will reserve determination of this issue as to Excite Medical and Musallam upon Axiom Inc.'s Motion for Default Judgment and the bench trial in this proceeding.

### D.   <u>Trademark Infringement and Unfair Competition</u>

A defendant is liable for trademark infringement under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), if, without the trademark owner's consent, he "use[s] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1); <u>see</u> <u>John H. Harland Co. v. Clarke Checks, Inc.</u>, 711 F.2d 966, 972 (11th Cir. 1983).  Thus, to establish trademark infringement under § 1114, Axiom Inc. must show that (1) its trademarks had priority and (2) the Defendants' use of the trademarks was likely to cause consumer confusion.  <u>Monsanto Co. v. Campuzano</u>, 206 F. Supp. 2d 1252, 1261 (S.D. Fla.

2002)(citations omitted).  "[A] mark shall be deemed to be in use in commerce (1) on goods when -- (A) it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto, or if the nature of the goods makes such placement impracticable, then on documents associated with the goods or their sale, and (B) the goods are sold or transported in commerce."  15 U.S.C. § 1127.

Axiom Inc. also claims that the Defendants have "engaged in unfair competition including falsely designating the origin of the products they have sold in the stream of commerce." (Doc. # 20 at 27).  "Section 43(a) of the Lanham Act creates a federal cause of action for unfair competition . . ." Univ. of Fla. v. KPB, Inc., 89 F.3d 773, 775 (11th Cir. 1996). Pursuant to Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1):

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which --
>
>> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods,

services, or commercial activities by another
person, or

(B) in commercial advertising or promotion,
misrepresents the nature, characteristics,
qualities, or geographic origin of his or her
or another person's goods, services or
commercial activities,

shall be liable in a civil action by any person who
believes that he or she is likely to be damaged by
such act.

Id.

Thus, "[i]n order to prevail on [a] federal claim of
trademark infringement and unfair competition, a trademark
owner 'must show (1) that it had trademark rights in the mark
or name at issue and (2) that the other party had adopted a
mark or name that was the same, or confusingly similar to its
mark, such that consumers were likely to confuse the two.'"
Suntree Techs., Inc. v. Ecosense Int'l, Inc., 693 F.3d 1338,
1346 (11th Cir. 2012)(quoting Tana v. Dantanna's, 611 F.3d
767, 773 (11th Cir. 2006)).

"[A]n unfair competition claim based only upon alleged
trademark infringement is practically identical to an
infringement claim." Tally-Ho, Inc. v. Coast Cmty. Coll.
Dist., 889 F.2d 1018, 1026 n.14 (11th Cir. 1989).
Accordingly, the Court will analyze Axiom Inc.'s trademark
infringement and unfair competition claims together as to each

-35-

Defendant below.   Furthermore, to the extent that Axiom Inc. also seeks relief under Florida trademark and unfair competition statutes, "[c]ourts may use an analysis of federal infringement claims as a 'measuring stick' in evaluating the merits of state law claims of unfair competition." <u>Suntree Techs., Inc.</u>, 693 F.3d at 1345 (quoting <u>Planetary Motion, Inc. v. Techsplosion, Inc.</u>, 261 F.3d 1188, 1193 n.4 (11th Cir. 2001)).   Thus, the Court's analysis below applies to Axiom Inc.'s state law claims as well.

   1. <u>**HTRD**</u>

As discussed above, the Court has determined that Axiom Inc. owns the trademarks at issue.   The parties do not dispute that Axiom Inc. was the original owner of the disputed trademarks and that Axiom Inc. registered the trademarks between 2003 and 2005.   (Doc. # 250 at 24).   It is further undisputed that HTRD began using the trademarks on its products sometime in or after 2010.   <u>Id.</u> at 28.   Thus, the Court finds that Axiom Inc. has trademark rights in the marks at issue and that Axiom Inc.'s trademark usage has priority.

As to the second prong of the Court's analysis, "[i]n determining whether a likelihood of [consumer] confusion exists, the fact finder evaluates a number of elements including: the strength of the trade[mark], the similarity of

-36-

[the marks], the similarity of the product[s], the similarity of retail outlets and purchasers, the similarity of advertising media used, the defendant's intent, and actual confusion." Suntree Techs., Inc., 693 F.3d at 1346 (quoting AmBrit, Inc. v. Kraft, Inc., 812 F.2d 1531, 1538 (11th Cir. 1986)).

"The issue of likelihood of confusion is not determined by merely analyzing whether a majority of the subsidiary factors indicates that such a likelihood exists.  Rather, a court must evaluate the weight to be accorded the individual factors and then make its ultimate decision."  The appropriate weight to be given to each of these factors varies with the circumstances of the case."  Id. (quoting AmBrit, 812 F.2d at 1538).  Accordingly, "[t]here is no need to analyze each of these factors in every case . . ., because consideration of fewer than all seven factors can support a finding of likelihood of confusion." Monsanto Co., 206 F. Supp. 2d at 1262 (citing Univ. of Ga. Athletic Ass'n v. Laite, 756 F.2d 1535, 1543 (11th Cir. 1985)).  Furthermore, "if a plaintiff can show that a defendant adopted a mark with the intent of deriving benefit from the reputation of the plaintiff, that fact alone may be sufficient to justify the inference that there is confusing similarity." John H. Harland Co., 711 F.2d

at 977 (quoting Exxon Corp. v. Tex. Motor Exch., Inc., 628 F.2d 500, 506 (5th Cir. 1980)).

Here, even a cursory examination of these factors leads to the inescapable conclusion that there is a likelihood of confusion.  It is undisputed that the trademarks used by HTRD were the same as Axiom Inc.'s trademarks, as were the products upon which the trademarks were used.  Indeed, HTRD agrees that it has "used the trademarks, Axiom's designs and other items, contract rights, trade secrets and the other property at issue in [this] case . . ." (Doc. # 250 at 28).  "The greater the similarity between the products and services, the greater the likelihood of confusion."  John H. Harland Co., 711 F.2d at 977 (quoting Exxon Corp., 628 F.2d at 505).

The evidence further shows that HTRD used the trademarks and sold its products in several of the same markets as Axiom Inc., China in particular. (Doc. # 227 at 27-30).  Finally, by using Axiom Inc.'s trademarks, as well as its designs and other intellectual property, it is apparent that HTRD intended to "derive benefit from the reputation" of Axiom Inc.  Accordingly, the Court finds that a sufficient likelihood of confusion exists, such that Axiom Inc. has established trademark infringement by HTRD under 15 U.S.C. §§ 1114 and

1125.  Axiom Inc. is, thus, entitled to a declaratory judgment finding that HTRD has infringed its trademarks.

> ## 2.  **Excite Medical Corp., Musallam, Ren, and the Ryzur Defendants**

The Court also finds that Excite Medical Corp., Musallam, Ren, and the Ryzur Defendants have infringed Axiom Inc.'s trademarks.[7]  Again, the Lanham Act prohibits the use of a plaintiff's mark "in connection with the sale, offering for sale, distribution, or advertising of any goods or services" in a manner "likely to cause confusion, to cause mistake, or to deceive."  15 U.S.C. § 1114.

The record reflects ample evidence that Excite Medical and Musallam have used the relevant trademarks -- which include the term "Axiom Worldwide" and its logo and the terms "DRX" and "DRX 9000" -- in connection with the sale, offering for sale, distribution and advertising of HTRD's goods.  According to Musallam, he is the president of Excite Medical

---

[7]    As noted above, the Court has stricken Excite Medical and Musallam's pleadings and directed the entry of default against them, which has the effect of establishing as fact Axiom Inc.'s well-pled allegations of fact. See Tyco Fire & Sec. LLC, 218 F. App'x at 863.  However, even without considering the entry of default, the Court finds that Axiom Inc. has established trademark infringement and copyright infringement by Excite Medical and Musallam, and, thus, takes this opportunity to address the merits of Axiom Inc.'s Motion for Summary Judgment as to Excite Medical and Musallam on these issues.

(Musallam Aff. Doc. # 46 at 3) and is HTRD's agent in the United States (Musallam Dep. Doc. # 131 at 19). Musallam states that Excite Medical is "registered with the FDA as a distributor of the spinal decompression table, formerly known as the DRX9000 and DRX9000(C), and cleared for marketing by the FDA upon 510K application originally made by Axiom." (Musallam Aff. Doc. # 1-9 at 10). As its distributor, Excite Medical sells "the DRX family of devices" through HTRD. (Musallam Dep. Doc. # 131 at 17).

According to Musallam's deposition testimony, along with being a distributor, Excite Medical is also a "contract manufacturer" for HTRD. Id. at 17, 19. Musallam testified that such designation means that when a machine is ordered through Excite Medical, HTRD sends the component parts of the machine to Excite Medical, and Excite Medical constructs the parts into the finished DRX9000 or DRX9000(C) product and then ships the finished machine to the purchaser. Id. at 20-21, 70-72.

Additionally, Axiom Inc. has filed copies of several press releases from Excite Medical's website as well as advertisements published by Excite Medical, which bear both Excite Medical's name and the relevant trademarks. See (Doc. # 132-3)(press release titled "DRX9000™ Now Exclusively

Available Through Excite Medical"); (Doc. # 132-6)(press release titled "Excite Medical Corporation Announces Their Servicing of the DRX Machines!"); (Doc. # 132-9)(press release stating "Excite Medical is the new manufacturer of the DRX9000."); (Doc. # 132-16 at 1-4)(advertisement titled "Making Life Better -- One Treatment at a Time; DRX; Axiom Worldwide"); (Doc. # 137-4)(advertisement stating "We created the DRX9000™ to assist healthcare providers in their effort to treat lumbar pain."). Accordingly, based on this undisputed evidence, it is apparent that Excite Medical and Musallam have used Axiom Inc.'s trademarks in commerce through the manufacturing, selling, offering for sale, distributing, and advertising of HTRD's products.

Regarding Ren and the Ryzur Defendants, these Defendants argue that "[t]here is no record evidence that [they] have used marks belonging to Axiom [Inc.] in commerce affecting the United States. In fact, James Gibson doesn't have any evidence of [Ren and the Ryzur Defendants] doing anything outside of China." (Doc. # 152 at 13). Thus, these Defendants argue that their conduct, even if it is infringing, is outside the purview of the Lanham Act's protections and this Court's jurisdiction.

However, as stated in United States Magistrate Judge Thomas B. McCoun III's Report and Recommendation (Doc. # 268), which the Court accepted and adopted in ruling on Axiom Inc.'s Renewed Motion for Sanctions (Doc. # 287), "even assuming such assertions are accurate, the purported lack of evidence is a direct product of the [Ryzur] Defendants' failure to participate fully in discovery and they cannot be permitted to benefit from their non-disclosure in this way." (Doc. # 268 at 8).

Thus, as a sanction for Ren and the Ryzur Defendants' willful failure to fully participate in discovery, the Court will "interpose an evidentiary presumption that [Ren and the Ryzur Defendants] do conduct relevant business with entities in the United States and have used the disputed marks and copyright matters in commerce affecting the United States sufficiently to bring them within the reach of the Lanham Act." (Doc. # 287 at 7). "Further, the [Ryzur] Defendants may not rely on any matter to rebut this presumption apart from that which they have produced in discovery." Id. Ren and the Ryzur Defendants have not directed the Court to any evidence they have produced in discovery to rebut this evidentiary presumption. Accordingly, the Court determines that Ren and the Ryzur Defendants have used Axiom Inc.'s

trademarks in commerce affecting the United States, such that their conduct is actionable under the Lanham Act.

For the reasons explained above, the Court has determined that Axiom Inc.'s use of the trademarks has priority and that the marks used by these Defendants are identical and, thus, confusingly similar. Therefore, the Court determines that Axiom Inc. has established its claim of direct trademark infringement by Excite Medical, Musallam, Ren, and the Ryzur Defendants.

Rather than focusing on Axiom Inc.'s claims of direct trademark infringement, these Defendants instead argue that Axiom Inc. cannot prove a cause of action against them for contributory trademark infringement because such a claim requires willful, knowing, and intentional acts on behalf of the Defendants. (Doc. ## 148-152). However, nowhere in the amended complaint does Axiom Inc. allege a claim of contributory trademark infringement against the Defendants; rather, Axiom Inc. alleges direct trademark infringement only. (Doc. # 20).

In Optimum Technologies, Inc. v. Henkel Consumer Adhesives, Inc., 496 F.3d 1231, 1245 (11th Cir. 2007), the Eleventh Circuit expressly held that a claim for direct trademark infringement should not be construed as one for

contributory trademark infringement "where the elements in support of such a claim have not been pled."  The Eleventh Circuit concluded that "absent some allegation of a 'contribution' to a direct trademark infringement or of a 'knowing participation' in a direct trademark infringement, we will not construe a claim for direct trademark infringement under 15 U.S.C. § 1114(1) as being one for contributory trademark infringement." Id.  This Court likewise declines to do so here.

Therefore, for the reasons explained above, the Court determines that Axiom Inc. has established its claim of direct trademark infringement by Excite Medical, Musallam, Ren, and the Ryzur Defendants and is entitled to a declaratory judgment ruling accordingly.

### 3.   Eltech USA

Regarding Eltech, which is a foreign limited liability company headquartered in New York City (Doc. # 250 at 24), Musallam testified that Eltech is "[his] distributor for Russia" which distributes "[t]he DRX9000 new and used." (Doc. # 131 at 13).  However, the evidence shows that Eltech has not yet sold a new DRX machine in Russia.  Indeed, Eltech's owner, Ilya Marder, stated in his affidavit that he had "not yet . . . actually order[ed] a new DRX9000, receive[d] it and

distribute[d] it to a buyer." (Marder Aff. Doc. # 187-1 at ¶ 6). Additionally, Axiom Inc. has filed copies of screenshots from Eltech's website which Axiom Inc. contends show that Eltech has used Axiom Inc.'s trademarks in its website advertisements. (Doc. # 190-2 at 2). However, the provided webpages show only a use of the term "DRX9500," which is not one of the five trademarks at issue in this case.

The Court finds this evidence insufficient to establish trademark infringement by Eltech. The Court acknowledges that evidence of Eltech's sales has been the subject of a prolonged discovery dispute between the parties, with Axiom Inc. claiming that Eltech, Excite Medical, and Musallam have withheld evidence that would show that Eltech has sold new DRX9000 machines. See (Doc. # 305 at 8-10). In support of its contention, Axiom Inc. has filed the affidavit of its Russian distributor's president, Golovina Tatiana. In her affidavit, Tatiana states that she has reviewed an email from an Eltech representative containing a list of hospitals and clinics in Russia in which a DRX machine was installed. (Tatiana Aff. Doc. # 303 at 10). By Tatiana's account, nearly all of the facilities are government facilities which can only accept new equipment. Id.

The Court finds this unsubstantiated conjecture insufficient to create a question of material fact regarding whether Eltech sold new machines in Russia. First, the email from Eltech's representative attaching the list of hospitals and clinics with a DRX machine is written in Russian. (Doc. # 303 at 17). Thus, the Court cannot determine whether the list is comprised of only those hospitals that purchased machines from Eltech or whether it includes all facilities that have a DRX machine, regardless of whether they were purchased from Eltech or another company. Even if the list were limited to Eltech's sales, Axiom Inc. has not provided any evidence that corroborates or verifies Tatiana's assertion that most of these facilities can only accept new equipment. Furthermore, even if such a rule were in place, Axiom Inc. has not provided evidence establishing that exceptions to such a rule are not given or were not given here.

Rather, the evidence filed in this case -- including sworn testimony by Eltech's owner that all of Eltech's sales to date were of used or refurbished machines (Marder Aff. Doc. # 187-1 at ¶ 6), as well as Excite Medical's "QuickBooks" sales records (Doc. # 227) -- reflect that Excite has not furnished any new machines to Eltech nor has Eltech sold any new DRX machines in Russia, in violation of Axiom Inc.'s

trademark rights.  Furthermore, Axiom Inc. has not provided any evidence showing that Eltech placed, or was responsible for placing, Axiom Inc.'s trademarks on any of HTRD's goods, their containers, displays, tags, labels, or associated documents.  Moreover, Axiom Inc. has not supplied evidence proving that Eltech used Axiom Inc.'s trademarks in its advertisements.  Accordingly, the Court determines that Axiom Inc. has failed to prove trademark infringement by Eltech, and Eltech is entitled to summary judgment on this issue.

### 4.  **Deweerd**

Deweerd argues that, as to him, "[t]here is no evidence of infringing activity." (Doc. # 149).  The Court agrees. According to his deposition testimony, Deweerd worked as a design engineer at Axiom until December 2009. (Deweerd Dep. Doc. # 258-1 at 19).  He subsequently became a consultant, but not an employee, of HTRD. Id. at 21.  According to Deweerd, his role as a consultant for HTRD included answering technical questions, but was primarily limited to procuring certain parts requested by HTRD and shipping the parts to HTRD in China. Id. at 36-37, 82, 84, 105, 118, 128, 147, 180.  Some of the parts supplied to HTRD by Deweerd included foam headrests, nuts and bolts, and motors.  Id. at 113, 115, 118.  Deweerd testified that he did not make anything for HTRD, never

-47-

visited HTRD's facilities in China, and did not do any work for Excite Medical.  Id. at 22, 25, 38, 118.  Deweerd further testified that he did not even know the nature of the relationship between Excite Medical and HTRD, stating "[Y]ou may overestimate my involvement in all of this.  I buy parts.  This is a little contract job I do.  It's not my main job, so I'm not as intrinsically involved . . . ." Id. at 127-128.

The Court finds Deweerd's actions in supplying parts to HTRD for use in HTRD's manufacturing of DRX machines insufficient to constitute trademark infringement.  Again, for a party to "use" a trademark, the party must place the trademark "in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto, or if the nature of the goods makes such placement impracticable, then on documents associated with the goods or their sale" and the goods must be "sold or transported in commerce."  15 U.S.C. § 1127.  There is no evidence in the record that Deweerd placed Axiom Inc.'s trademarks on anything, in connection with HTRD's finished goods or otherwise.  Axiom Inc. has not supplied any evidence showing that Deweerd placed, or was responsible for placing, Axiom Inc.'s trademarks on any of HTRD's goods, their containers, displays, tags, labels, or associated documents.

-48-

Further, Axiom Inc. has not provided any evidence indicating that Deweerd used Axiom Inc.'s trademarks on any goods or documents Deweerd produced himself.  In short, the evidence shows only that Deweerd procured and supplied parts to HTRD, which HTRD then used in constructing its DRX machines. Such conduct is insufficient to constitute infringing activity by Deweerd.  Deweerd is entitled to summary judgment on this issue accordingly.

### 5.   Excite Diagnostics, LLC

According to Excite Diagnostics's summary judgment motion, "Saleem Musallam testified that [Excite] Diagnostics was a company created to do testing.  It did not and does not sell or service spinal decompression tables, and there is no record evidence it is involved in any infringing activity or had anything to do with the filings by HTRD with the USPTO or HTRD." (Doc. # 150 at 11)(citing Musallam Dep. Doc. # 153-5 at 10-13).  Further, according to Musallam's testimony, Excite Diagnostics did not have access to any information regarding the DRX9000 because such information was "complete, separate and distinct." (Musallam Dep. Doc. # 153-5 at 9).

In response, "Axiom Inc. concedes that it does not have evidence to support a legal claim for damages against [Excite] Diagnostics at this time" but argues that Excite Diagnostics's

summary judgment motion should be denied because "Axiom Inc. has not had a reasonable opportunity to obtain discovery from [Excite] Diagnostics due to its refusal to comply with the Court's discovery orders." (Doc. # 229 at 5).

The Court finds that Excite Diagnostics's motion for summary judgment is due to be granted in light of Axiom Inc.'s acknowledgment that it does not have sufficient evidence to hold Excite Diagnostics liable.  First, the Court notes that Axiom Inc. has not made any request for relief under Rule 56(d), Fed.R.Civ.P.,[8] on this or any other issue.  Second, the Court notes that there are no pending motions for any outstanding discovery as to Excite Diagnostics and the November 1, 2012, deadline for conducting and compelling discovery in this case has long since passed.  Further, Axiom Inc. has not shown what evidence, if any, it would hope to obtain through additional discovery to refute the sworn testimony that Excite Diagnostics had nothing to do with the infringing activities. Therefore, the Court determines that an

---

[8]     Rule 56(d), Fed.R.Civ.P., provides that "If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order."

additional discovery period is not warranted on this issue and grants summary judgment in favor of Excite Diagnostics, LLC accordingly.

### E.   Copyright Infringement

Axiom Inc. also seeks a declaratory judgment that the Defendants have infringed "Axiom Inc.'s copyrights because Axiom Inc. owns valid copyrights in the content appearing on the internet website www.axiomworldwide.co . . . and in the design drawings and other items related to the products protected by Axiom Inc.'s Trademarks and copyrights, and because the Defendants have copied and are using the constituent elements of work that are original and which belong [to] Axiom Inc." (Doc. # 20 at ¶ 70).

To establish copyright infringement, a plaintiff must prove "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." Baby Buddies, Inc. v. Toys "R" Us, Inc., 611 F.3d 1308, 1315 (11th Cir. 2010) (internal quotations and citation omitted). "If the plaintiff does not have direct proof of copying, the plaintiff may show copying by demonstrating that the defendants had access to the copyrighted work and that the works are substantially similar." Herzog v. Castle Rock

-51-

<u>Entm't</u>, 193 F.3d 1241, 1248 (11th Cir. 1999)(citations omitted).

As discussed above, the Court has determined that Axiom Inc. is the owner of the intellectual property at issue, including the pertinent copyrights thereto. The Defendants do not dispute the validity of the copyrights. Thus, the first prong of the cause of action is satisfied.

As to the second prong, Axiom Inc. has provided direct proof of copying by HTRD, Excite Medical, and Musallam. For example, Axiom Inc. has supplied copies of screenshots from HTRD's website, www.axiomworldwide.co, which bear the phrase "Copyright 2010 Axiom Worldwide, Inc. All rights reserved." (Doc. # 1-10; Doc. # 132-17 at 2). In his deposition, Musallam testified that he was involved in creating the website and that he hired a graphic designer to set it up. (Musallam Dep. Doc. # 131 at 78-79). In response to the prompt, "Take a look, again, down here it says, 'Property of' -- it says, 'Copyright Axiom Worldwide, Inc., all rights reserved.' So your man, Mr. Powers duplicated the Axiom Worldwide website right down to the copyright, right?" <u>Id.</u> at 82, Musallam responded, "That's [the] way it looks, yes." <u>Id.</u> at 83. Furthermore, regarding Axiom Inc.'s design drawings, these Defendants admit that they "have used . . . Axiom's

-52-

designs and other items . . . and the other property at issue in [this] case." (Doc. # 250 at 28).

Regarding Ren and the Ryzur Defendants, as explained above, the Court will interpose as a sanction for discovery violations "an evidentiary presumption that Ren and his [Ryzur] entities . . . have used the disputed . . . copyright matters in commerce affecting the United States." (Doc. # 287 at 7). Again, Ren and the Ryzur Defendants have not supplied the Court with any evidence they have produced in discovery to rebut this presumption.

Accordingly, based on this undisputed evidence, the Court finds that Axiom Inc. has established that HTRD, Excite Medical, Musallam, Ren, and the Ryzur Defendants have infringed Axiom Inc.'s copyrights and is entitled to a declaratory judgment accordingly. However, Axiom Inc. has not supplied any evidence demonstrating that Defendants Eltech, Excite Diagnostics, or Deweerd infringed Axiom Inc.'s copyrighted website content or design drawings in any way; thus, these Defendants are entitled to summary judgment in their favor on this issue.

### F.  Misappropriation of Trade Secrets

Axiom Inc. next seeks a declaratory judgment ruling that the Defendants have misappropriated its trade secrets in

violation of Florida's Uniform Trade Secrets Act, Florida Statute Section 688.001, <u>et seq</u>. Under the Uniform Trade Secrets Act, a "trade secret" is information that: (1) "[d]erives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use;" and (2) "is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." § 688.002(4), Fla. Stat.

Thus, the elements of a trade secrets misappropriation claim are: "(1) the plaintiff possessed secret information and took reasonable steps to protect its secrecy and (2) the secret was misappropriated, either by one who knew or had reason to know that the secret was improperly obtained or by one who used improper means to obtain it." <u>Sterpetti v. E-Brands Acquisition, LLC</u>, No. 6:04-cv-1843, 2006 WL 1046949, at *8 (M.D. Fla. Apr. 20, 2006)(citations omitted).

### 1.   <u>HTRD, Eltech, Excite Diagnostics, Deweerd, Ren and the Ryzur Defendants</u>

Presuming for purposes of the Court's analysis that Axiom Inc. can satisfy the first prong,[9] the Court finds that Axiom

---

[9]   Although the Court need not determine Axiom Inc.'s satisfaction of this first prong in light of its failure to
(continued...)

Inc. is not entitled to summary judgment on this claim because it has not established misappropriation under the second prong.

Section § 688.002(2), Fla. Stat., defines "Misappropriation" as follows:

> (a) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
>
> (b) Disclosure or use of a trade secret of another without express or implied consent by a person who:

---

[9](...continued)
satisfy the second prong, the Court acknowledges that the Defendants dispute whether Axiom Inc. took reasonable steps to maintain the secrecy of its trade secrets. (Doc. # 156 at 6). Furthermore, Axiom Inc. does not go beyond the pleadings to establish exactly what its claimed trade secrets are and their entitlement to protection under Florida law.  The amended complaint alleges only that the trade secrets "includ[e] but [are] not limited to the content of the Axiom Worldwide website, design drawings for the Axiom products and related components." (Doc. # 20 at ¶ 65).  However, the Court doubts whether the contents of an internet website would constitute a trade secret given that "[i]nformation that is generally known or readily available to third parties generally cannot qualify for trade secret protection under Florida law." Jadael, Inc. v. Elliott, No. 6:05-cv-1623, 2007 WL 2480387, at *7 (M.D. Fla. Aug. 29, 2007)(citing Am. Red Cross v. Palm Beach Blood Bank, Inc., 143 F.3d 1407, 1410 (11th Cir. 1995)). See also § 688.002(4), Fla. Stat. (defining term "trade secret"). Nevertheless, the Court will presume for argument's sake that Axiom Inc.'s design drawings are entitled to trade secret protection and need not determine the reasonableness of Axiom Inc.'s measures to protect the trade secrets, in light of the Court's determination that Axiom Inc. has failed to establish misappropriation of its trade secrets.

1.  Used improper means to acquire knowledge of the trade secret; or

2.  At the time of disclosure or use, knew or had reason to know that her or his knowledge of the trade secret was:

   a.  Derived from or through a person who had utilized improper means to acquire it;
   b.  Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or
   c.  Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or

3.  Before a material change of her or his position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

§ 688.002(2), Fla. Stat.

"Improper means" includes "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means." § 688.002(1), Fla. Stat.

The parties dispute how Axiom Inc.'s trade secrets were acquired by HTRD. However, neither these Defendants' asserted factual scenario, nor Axiom Inc.'s counter contention supports a finding of misappropriation.

These Defendants maintain that, following the assignment of Axiom LLC's assets to Progress Bank in the ABC Case and the

subsequent sale of the assets to HTRD, HTRD obtained physical possession of the subject intellectual property from the assignee as part of the physical transfer of the assets HTRD purchased. (Doc. # 156 at 6). Indeed, Musallam testified that he helped physically load boxes of the assets and things HTRD purchased from Progress Bank and that documents and a computer server were included in the inventory he retrieved. (Musallam Dep. Doc. # 131 at 53-54). Ren also testified that the computer server "was included in the big pile of inventory that we purchased." (Ren Dep. Doc. # 191-1 at 60). These Defendants argue that "Gibson knew that the design schematics, computers and software were in the physical possession of the assignee and he made no effort to prevent the transfer or re-obtain possession of the property." (Doc. # 156 at 6).

However, Axiom Inc. attempts to refute these Defendants' version of the facts by pointing the Court to the affidavit filed by Cara Davis, Progress Bank's Senior Vice President, in which she states that "Progress Bank's sale to HTRD was limited to the sale of the physical, tangible inventory that was part of the collateral for the Axiom Loan" and that "Progress Bank did not sell or otherwise transfer Axiom's business name, designs, logos, slogans, trademarks, service marks, or any other intellectual property or intangible

-57-

property to HTRD." (Davis Aff. Doc. # 51-3 at ¶¶ 10, 12).
Axiom Inc. characterizes this testimony as a statement "that
HTRD was never provided with those items."  (Doc. # 160 at 3
n.4).

However, Axiom Inc. mischaracterizes, or at the least,
draws unwarranted inferences from, Davis's testimony.   In
fact, Davis's testimony describes only Progress Bank's
position that the asset sale to HTRD did not legally transfer
any of Axiom Inc.'s intellectual property to HTRD.  However,
Davis's affidavit does not speak to the question of what
property was actually physically transferred to the Defendants
following the sale and whether such inventory may have
inadvertently included Axiom Inc.'s server and copies of Axiom
Inc.'s product designs.  Accordingly, the Court determines
that this evidence is insufficient to raise a genuine dispute
of material fact as to whether these Defendants acquired
physical possession of the trade secrets from Progress Bank
and Axiom LLC's assignee.

In sum, Axiom Inc. has not supplied any evidence
indicating that HTRD obtained physical possession of the
intellectual property from Progress Bank or the assignee by
any "improper means" including "theft, bribery,
misrepresentation, breach or inducement of a breach of a duty

to maintain secrecy, or espionage through electronic or other means." § 688.002(1), Fla. Stat. Rather, based on the record evidence, it appears that physical possession of the intellectual property was inadvertently transferred to HTRD by the assignee, either by mistake, misunderstanding, or negligence. Such is insufficient to constitute misappropriation by improper means as those terms are defined under § 688.002, Fla. Stat., such that Axiom Inc. cannot establish its trade secrets misappropriation claim on summary judgment.

However, even if Axiom Inc. were able to refute these Defendants' assertion that HTRD acquired physical possession of the trade secrets from the assignee, Axiom Inc.'s alternative theory of misappropriation also fails. As stated in Axiom Inc.'s reply in support of its summary judgment motion, "Axiom Inc. continues to believe that HTRD, Excite Medical, David Ren, Saleem Musallam and the other [Ryzur] Defendants obtained those items directly from Defendants Andrew Deweerd, Harlon Parchment, Corey Brownell, who were all former Axiom Inc. employees and engineers, or directly from co-conspirator, Nicholas Exarhos, who was a 50% co-owner of both Axiom Inc. and Axiom LLC." (Doc. # 160 at 3-4 n.4).

Axiom Inc. does not argue that these individuals themselves obtained Axiom Inc.'s trade secrets by any improper means as it is undisputed that they had access to the trade secrets as part of their employment. Thus, in order to prove a trade secrets misappropriation claim under this factual scenario, Axiom Inc. must establish that, at the time of disclosure or use, HTRD, Eltech, Excite Diagnostics, Deweerd, Ren and the Ryzur Defendants knew that the trade secrets were "derived from or through a person who owed a duty to [Axiom Inc.] to maintain its secrecy or limit its use." § 688.002(2)(b)2.c., Fla. Stat. Axiom Inc. has failed to establish such requirement.

The Court will presume for purposes of its analysis that Deweerd, Parchment, Brownell, and Exarhos, as former Axiom Inc. employees, had a duty to maintain Axiom Inc.'s trade secrets. See S.E. Mech. Servs., Inc. v. Brody, No. 8:08-cv-1151, 2008 WL 4613046, at *10 (M.D. Fla. Oct. 15, 2008)("Florida law imposes upon every employee a duty not to use the employer's trade secrets for his own benefit, if the secret was acquired by the employee in the course of his employment.").

However, HTRD, Eltech, Excite Diagnostics, Deweerd, Ren and the Ryzur Defendants have steadfastly maintained

-60-

throughout this proceeding that they believed HTRD's asset purchase from Progress Bank included all of the intellectual property at issue in this case including the relevant trade secrets.  The individual Defendants have also testified as to this belief. <u>See</u>, <u>e.g.</u>, (Deweerd Dec. Doc. # 241 at ¶ 7)("I truly thought that HTRD had acquired all assets, everything, in the sale from the bank.");(Ren Dep. Doc. # 199-1 at 60)("From my understanding, Progress Bank said that we had purchased all the assets and all the assets included [the computer server].").

Thus, even if HTRD acquired the trade secrets from a former Axiom Inc. employee instead of from the assignee, the evidence shows that these Defendants did not know that the former Axiom Inc. employees had any duty to Axiom Inc. to maintain the secrecy of the trade secrets, given their belief that HTRD had in fact purchased the trade secrets from Progress Bank.  Axiom Inc. has not supplied evidence to refute the sworn testimony of Deweerd and Ren on this issue. Therefore, the Court finds that Axiom Inc. has failed to establish its claim of trade secrets misappropriation as to HTRD, Eltech, Excite Diagnostics, Deweerd, Ren and the Ryzur Defendants, and its Motion for Summary Judgment on this issue is denied accordingly.  Furthermore, for the reasons explained

above, the Court finds that Defendants Eltech, Excite
Diagnostics, Deweerd, Ren and the Ryzur Defendants are
entitled to summary judgment in their favor on this claim.
However, HTRD has not moved for summary judgment on this
issue, and, thus, Axiom Inc.'s trade secrets misappropriation
claim as to HTRD remains for resolution at trial.

### 2.   <u>Excite Medical and Musallam</u>

Although the entry of default against Excite Medical and
Musallam establishes as fact Axiom's well-pled allegations as
to its trade secrets misappropriation claim, the Court will
reserve determining whether Axiom Inc. is entitled to a
judgment against Excite Medical and Musallam on this claim
upon Axiom Inc.'s Motion for Default Judgment and the bench
trial in this case.

### G.   <u>Interference with Business Relationships</u>

Axiom Inc. seeks a declaration that the Defendants have
intentionally interfered with Axiom Inc.'s business
relationship with two non-party companies. (Doc. # 20 at 27).

"Tortious interference with a business relationship
requires a plaintiff to allege (1) the existence of a business
relationship, (2) knowledge of the relationship on the part of
the defendant, (3) an intentional and unjustified interference
with the relationship, and (4) damage to the plaintiff as a

result of the relationship." <u>Cherry v. D.B. Zwirn Special Opportunities Fund</u>, No. 8:09-cv-33, 2010 WL 415313, at *8 (M.D. Fla. Jan. 27, 2010). "The Eleventh Circuit has stated that '[a] business relationship need not be evidenced by a contract, but it generally requires an understanding between the parties that would have been completed had the defendant not interfered.'" <u>E-Z Pack Mfg., LLC v. RDK Truck Sales & Serv., Inc.</u>, No. 8:10-cv-1870, 2011 WL 4343790, at *10 (M.D. Fla. Aug. 10, 2011) (quoting <u>Int'l Sales & Serv., Inc. v. Austral Insulated Prods., Inc.</u>, 262 F.3d 1152, 1154 (11th Cir. 2001)). Furthermore, a plaintiff must allege a business relationship with "identifiable customers" versus the "community at large." <u>Id.</u> at *8.

### 1.  HTRD, Eltech, Excite Diagnostics, Deweerd, Ren and the Ryzur Defendants

Axiom Inc. has failed to establish its tortious interference claim on summary judgment as to HTRD, Eltech, Excite Diagnostics, Deweerd, Ren and the Ryzur Defendants. In the amended complaint, Axiom Inc. alleges that these Defendants interfered with Axiom Inc.'s business relationship with two companies -- a "Chinese partner company" owned by Ms. Li Jing "that continues to have the exclusive rights to Axiom Inc.'s products in China" (Doc. # 20 at ¶ 9) and "OOO Axioma

. . .[a] Russian company with the legal rights to Axiom Inc.'s 510(k)s, Trademarks, Intellectual Property and products related to same." Id. at ¶ 11.

However, at the summary judgment stage, Axiom Inc. has not presented any arguments or directed the Court to any evidence supporting these allegations. Axiom Inc. has not provided any evidence establishing how, to what extent, or by what means these Defendants intentionally interfered with Axiom Inc.'s relationship with these two companies, nor how Axiom Inc. was damaged by any interference. In fact, it does not appear that Axiom Inc.'s relationship with these companies was actually terminated, but rather, that these companies may have suffered decreased sales, allegedly as a result of these Defendants' conduct. Simply, Axiom Inc. has failed to present sufficient evidence necessary to prove a claim against these Defendants for tortious interference with its business relationships.

Therefore, the Court determines that Axiom Inc. has failed to go beyond the pleadings to establish the required elements of its tortious interference claim and, accordingly, its Motion for Summary Judgment is denied on this claim. Furthermore, for the reasons explained above, the Court finds it appropriate to grant summary judgment in favor of Eltech,

Excite Diagnostics, Deweerd, Ren and the Ryzur Defendants on Axiom Inc.'s tortious interference claim.  However, as with Axiom Inc.'s other ancillary claims, HTRD has not moved for summary judgment on Axiom Inc.'s tortious interference claim. Accordingly, this claim remains for determination as to HTRD at trial.

### 2.   Excite Medical and Musallam

Although the entry of default against Excite Medical and Musallam establishes Axiom Inc.'s well-pled allegations of fact regarding its tortious interference claim against Excite Medical and Musallam, the Court will again defer determining whether Axiom Inc. is entitled to judgment against Excite Medical and Musallam on this claim upon consideration of Axiom Inc.'s Motion for Default Judgment and the bench trial in this proceeding.

### H.   Breach of Confidentiality Agreements

Axiom Inc. also moves for a summary judgment declaration that Defendants Deweerd and Musallam breached the confidentiality agreements they allegedly executed while employees of Axiom Inc.[10]  In order to establish a claim for

---

[10]     Axiom Inc. also argues in various submissions that Ren has violated the confidentiality provisions of an agreement between Axiom Inc. and its official Chinese
(continued...)

breach of contract, a plaintiff must prove: "(1) the existence of a valid contract; (2) material breach thereof; and (3) damages flowing from the breach." <u>Murciano v. Garcia</u>, 958 So. 2d 423, 423 (Fla. 3d DCA 2007).

### 1. <u>Deweerd</u>

Axiom Inc. has not filed on the record any confidentiality agreement entered into between Axiom Inc. and Deweerd. Instead, Axiom Inc. has filed only a blank example of a form confidentiality agreement it contends Deweerd signed. (Doc. # 1-9). The Court finds such evidence insufficient to establish a breach of contract claim here.

Without a copy of the actual written agreement signed by Deweerd, the Court cannot determine when the agreement was signed, and thus when it expires, nor what the terms of the agreement were, including whether any modifications to the

---

[10](...continued)
distributor, of which Ren allegedly is bound as a former officer. (Doc. # 224 at 16 n.8). However, there are no allegations in the amended complaint against Ren for breach of this or any confidentiality agreement. <u>See</u> (Doc. # 20). Accordingly, the Court will not consider on summary judgment a new claim which Axiom Inc. did not include, nor ever seek leave to include, in its amended complaint. <u>See</u> <u>Newman</u>, 396 F. App'x at 639 (holding that the district court was not required to address new claims raised in summary judgment motion, despite liberal pleading standard for civil complaints, since standard did not afford plaintiffs opportunity to raise new claims at summary judgment stage).

standard form agreement were made.  Axiom Inc., as the party that purportedly required Deweerd to sign the confidentiality agreement as part of his employment and now seeks to enforce the agreement, bears the responsibility of producing said agreement but has failed to do so here.

Furthermore, without a written contract, the Court cannot determine whether Axiom Inc. even has standing to pursue such a claim.  Indeed, Deweerd asserts that the confidentiality agreement he signed was actually with Axiom LLC, not Axiom Inc. (Doc. # 153-1 at 1-2).[11]  As Axiom Inc. has steadfastly maintained throughout this litigation that it and Axiom LLC are and have always been separate legal entities, Axiom Inc. cannot now seek to enforce, and reap the benefit of, any confidentiality agreement to which it is not a party.

Accordingly, without any evidence of a valid confidentiality agreement entered into between Axiom Inc. and Deweerd, the Court finds that Deweerd is entitled to summary judgment on Axiom Inc.'s breach of confidentiality agreement claim.

---

[11]    As noted above, no agreement signed by Deweerd and either Axiom Inc. or Axiom LLC has been filed on the record. However, a copy of the confidentiality agreement that Musallam executed was filed on the record (Doc. # 242-2), which reflects that the agreement was in fact entered into between Musallam and Axiom LLC, not Axiom Inc.

### 2.   **Musallam**

As with several of Axiom Inc.'s other ancillary claims, the Court will resolve the issue of whether Axiom Inc. is entitled to judgment against Musallam on its breach of confidentiality agreement claim upon an appropriate Motion for Default Judgment filed by Axiom Inc. and the bench trial in this case.

## IV.  **Remedies**

### A.   **Permanent Injunction**

As outlined above, the Court has determined that Defendants HTRD, Excite Medical, Musallam, Ren, and the Ryzur Defendants have infringed Axiom Inc.'s trademarks and copyrights and engaged in unfair competition. The Lanham Act, 15 U.S.C. § 1116(a), permits a court to grant injunctive relief "according to the principles of equity and upon such terms as the court may deem reasonable." The Copyright Act, 17 U.S.C. § 502(a), likewise allows a court to grant injunctive relief "on such terms as it may deem reasonable to prevent or restrain infringement of a copyright."

The Eleventh Circuit has indicated that the four factor test set forth in Ebay Inc. v. Mercexchange, LLC, 547 U.S. 388 (2006), must be applied in determining whether injunctive relief is warranted. See N. Am. Med. Corp. v. Axiom Worldwide,

Inc., 522 F.3d 1211, 1218 (11th Cir. 2008). As explained in Ebay Inc., 547 U.S. at 391, a plaintiff must establish four elements to be entitled to a permanent injunction: (1) irreparable injury; "(2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."

In trademark infringement actions, injunctive relief is often appropriate because "(1) there is no[] adequate remedy at law to redress infringement and (2) infringement by its nature causes irreparable harm." Tally-Ho, Inc., 889 F.2d at 1029 (citing Processed Plastic Co. v. Warner Commc'ns, 675 F.2d 852, 858 (7th Cir. 1982)). Further, courts have generally recognized that in such cases, the public interest is "paramount." BellSouth Adver. & Publ'g Corp. v. The Real Color Pages, Inc., 792 F.Supp. 775, 785 (M.D. Fla. 1991). Trademark infringement encroaches on "the right of the public to be free of confusion" as well as "the synonymous right of the trademark owner to control his products' reputation." Id. (citations omitted).

The Court finds that Axiom Inc. is entitled to a permanent injunction prohibiting these Defendants from all future use and infringement of Axiom Inc.'s trademarks and any further copying and infringement of Axiom Inc.'s copyrights. As explained above, Axiom Inc. has established that it is the owner of the intellectual property in dispute and that these Defendants' use of its trademarks is likely to cause confusion in the marketplace about the origin of its products, such that Axiom Inc.'s reputation may be undermined if these Defendants are not prohibited from future use of Axiom Inc.'s trademarks. Likewise, future copying and use of Axiom Inc.'s copyrighted materials, especially its website content, are likely to cause public confusion regarding the origin of the relevant devices.

Thus, the Court finds that Axiom Inc. has established irreparable injury for which monetary damages will not adequately compensate.  In contrast, these Defendants have failed to show any hardship they would suffer if they are enjoined from further use of Axiom Inc.'s trademarks and copyrights.  Accordingly, the Court finds that the balance of hardships between the parties weighs in favor of Axiom Inc. Finally, entering a permanent injunction would serve the public interest by protecting consumers from being misled or confused about the source, authenticity, and quality of the

devices the Defendants manufacture and sell under Axiom Inc.'s trademarks and copyrights.  Therefore, the Court determines that all of the factors weigh in favor of granting Axiom Inc.'s request for a permanent injunction against any future use by these Defendants of Axiom Inc.'s trademarks and copyrights.

**B.    Monetary Damages**

The Lanham Act also provides that, "subject to the principles of equity, a successful plaintiff may recover: (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) costs of the action." Optimum Techs., Inc. v. Home Depot U.S.A., Inc., 217 F. App'x 899, 902 (11th Cir. 2007)(citing 15 U.S.C. § 1117(a)).  The Copyright Act similarly allows the copyright owner to recover statutory damages or "the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages." 17 U.S.C. § 504(a)-(b).

"The Court has wide discretion in assessing these damages, which may be awarded even when they are not susceptible to precise calculations." Nutrivida, Inc. v. Inmuno Vital, Inc., 46 F. Supp. 2d 1310, 1315 (S.D. Fla.

1998)(citing <u>Ramada Inns, Inc. v. Gadsden Motel Co.</u>, 804 F.2d 1562, 1564-65 (11th Cir. 1986)).  "In an exceptional case, the district court may award attorney fees to the prevailing party."  <u>Optimum Techs., Inc.</u>, 217 F. App'x at 902.

"In assessing the amount of an infringer's profits, 'the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed.'" <u>Nutrivida, Inc.</u>, 46 F. Supp. 2d at 1315 (quoting 15 U.S.C. § 1117(a)).  "The Lanham Act thus squarely places the burden of proof on the infringer to establish any deductions from its gross sales in order to arrive at the correct profit figure.  Moreover, under the Lanham Act and the common law, it is the infringer's burden to prove any proportion of its total profits which may not have been due to the infringement." <u>Id.</u> (citations omitted).  "Thus, the plaintiff need only prove gross sales and then it is up to the infringer to prove which, if any, of those sales were not attributable to the wrongful act, and deductible costs and expenses to arrive at net profits." <u>Id.</u> at 1315-16 (citations and internal quotations omitted).  "Any doubts about the actual amount of gross sales or profits will be resolved against the infringing party." <u>Id.</u> at 1316.

The parties have not supplied sufficient evidence for the Court to determine the amount of compensatory damages to which Axiom Inc. may be entitled. Indeed, in the parties' joint pretrial statement, Axiom Inc. states that the range associated with its compensatory damages is between $10 million and $149 million. (Doc. # 250 at 9). Accordingly, the Court determines that it is necessary to conduct a bench trial to determine the amount of Axiom Inc.'s compensatory damages in accordance with the relevant considerations and factors outlined above. The bench trial will commence on Thursday, June 13, 2013, at 2:00 P.M. in Courtroom 14B, and, if necessary, will continue on June 14, 2013, at 9:00 A.M.

## V.   Conclusion

For the reasons explained above, the Court determines that Axiom Inc. is entitled to a declaratory judgment holding that it is the owner of the intellectual property at issue in this case and is entitled to a declaratory judgment cancelling HTRD's registration of the relevant trademarks in its name and ordering the USPTO to amend its records to properly show that Axiom Inc. is the owner of the trademarks at issue in this case. Axiom Inc. is also entitled to a declaratory judgment holding that Defendants HTRD, Excite Medical, Musallam, Ren, and the Ryzur Defendants have infringed Axiom Inc.'s

-73-

trademarks and copyrights and engaged in unfair competition. Axiom Inc.'s compensatory damages on these claims will be determined in a bench trial commencing on Thursday, June 13, 2013, at 2:00 P.M. in Courtroom 14B.

Defendants Eltech, Deweerd, and Excite Diagnostics are entitled to summary judgment in their favor on Axiom Inc.'s trademark and copyright infringement claims. Defendants Eltech, Excite Diagnostics, Deweerd, Ren and the Ryzur Defendants are entitled to summary judgment in their favor on Axiom Inc.'s claims of fraud on the USPTO, misappropriation of trade secrets, and interference with business relationships. Additionally, summary judgment is granted in Deweerd's favor on Axiom Inc.'s breach of confidentiality agreement claim against him.

Axiom Inc. has not established that it is entitled to summary judgment as to its claims against HTRD for fraud on the USPTO, misappropriation of trade secrets, or interference with business relationships. Thus, these claims remain for determination at trial. Axiom Inc.'s claims against Excite Medical and Musallam for fraud on the USPTO, misappropriation of trade secrets and interference with business relationships, and against Musallam for breach of confidentiality agreement will be determined upon consideration of a timely-filed Motion

-74-

for Default Judgment by Axiom Inc. and a hearing on same to be conducted in conjunction with the bench trial commencing on June 13, 2013.

Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Axiom Inc. is directed to **show cause, in writing, on or before June 5, 2013,** why this case should not be dismissed without prejudice as to Defendants Brownell and Parchment for failure to effect service of process in the time prescribed by Rule 4(m), Fed.R.Civ.P.

(2) Axiom Inc.'s Motion for Summary Judgment (Doc. # 146) is **granted in part** as follows:

(a) Axiom Inc. is declared to be the owner of the intellectual property in dispute, including Axiom Inc.'s trademarks, copyrights, tradenames, logos, trade secrets, drawings, designs, and 510(k)'s.

(b) HTRD's registration of the following trademarks in its name is hereby cancelled and the USPTO is directed to amend its records to properly show that Axiom Inc. is the owner of the following trademarks:

  • "Axiom Worldwide Logo" (Serial No. 76533071, filed June 28, 2003);

- "DRX 9000" (Serial No. 76533070, filed July 28, 2003);
- "Better Technology..." (Serial No. 76536333, filed August 11, 2003);
- "Axiom Worldwide" (Serial No. 76595705, filed June 4, 2004); and
- "DRX" (Serial No. 78583889, filed March 9, 2005).

(c)   Defendants HTRD, Excite Medical Corp., Saleem Musallam, David Ren, Beijing Rong Da Shun Da Trading Co., Ltd d/b/a Ryzur Medical, Beijing Ryzur Axiom Medical Investment Co. Ltd., and Anhui Ryzur Axiom Medical Equipment Co. Ltd. are declared to have infringed Axiom Inc.'s trademarks and copyrights and engaged in unfair competition, including falsely designating the origin of the products they have manufactured, sold, offered for sale, distributed, or advertised in commerce.

(3)   Axiom Inc.'s Motion for Summary Judgment (Doc. # 146) is **denied** as to its claims against HTRD, Eltech, Excite Diagnostics, Deweerd, Ren and the Ryzur Defendants for fraud on the USPTO, misappropriation of trade secrets, and interference with business relationships; **denied** as to its claims against Eltech, Excite Diagnostics, and Deweerd for trademark infringement, unfair competition,

-76-

and copyright infringement; and **denied** as to its claim against Deweerd for breach of confidentiality agreement.

(4)   Eltech USA, LLC's Motion for Summary Judgment (Doc. # 148), Andrew Deweerd's Motion for Summary Judgment (Doc. # 149), and Excite Diagnostics, LLC's Motion for Summary Judgment (Doc. # 150) are **denied** as to ownership of the intellectual property but **otherwise granted** as to Axiom Inc.'s claims against them for fraud on the USPTO, trademark infringement, unfair competition, copyright infringement, misappropriation of trade secrets, and interference with business relationships. Further, Deweerd's Motion for Summary Judgment (Doc. # 149) is **granted** as to Axiom Inc.'s claim against him for breach of confidentiality agreement.

(5)   David Ren and the Ryzur Defendants' Motion for Summary Judgment (Doc. #  152) is **denied** as to ownership of the intellectual property, trademark infringement, unfair competition, and copyright infringement, but **otherwise granted** as to Axiom Inc.'s claims against them for fraud on the USPTO, misappropriation of trade secrets, and interference with business relationships.

-77-

(6)   HTRD  Group  Hong  Kong  Limited's  Motion  for  Summary
      Judgment (Doc. # 147) is **denied.**

(7)   Axiom Inc.'s claims against Excite Medical and Musallam
      for  fraud  on  the  USPTO,  misappropriation  of  trade
      secrets,  and  interference  with  business  relationships,
      and  against  Musallam  for  breach  of  confidentiality
      agreement  will  be  determined  upon  consideration  of  a
      timely-filed Motion for Default Judgment by Axiom Inc.
      and a hearing on same to be conducted in conjunction with
      the bench trial commencing on June 13, 2013.

(8)   Defendants HTRD, Excite Medical, Musallam, Ren, and the
      Ryzur Defendants, their agents, representatives, assigns
      or  successors  in  interest,  are  hereby  **restrained and**
      **enjoined** from:

      (a)   using  any  of  Axiom  Inc.'s  marks,  trademarks,  trade
            names,  or  logos,  or  any  mark,  trademark,  trade
            name, or logo that is confusingly similar to Axiom
            Inc.'s marks, trademarks, trade names, or logos;

      (b)   otherwise  infringing  Axiom  Inc.'s  marks  or  using
            any  similar  designation,  alone  or  in  combination
            with any other components;

      (c)   causing  a  likelihood  of  confusion  or
            misunderstanding as to the source or sponsorship of

its businesses, products or services as being Axiom Inc.'s and/or its authorized licensees or distributors;

(d) causing a likelihood of confusion or misunderstanding as to its affiliation, connection or association with Axiom Inc. and its authorized licensees or distributors or any of Axiom Inc.'s products or services;

(e) unfairly competing with Axiom Inc. in any manner, including falsely designating the origin of the products the Defendants have sold in the stream of commerce; and

(f) copying Axiom Inc.'s copyrighted materials or otherwise infringing on Axiom Inc.'s copyrights to the designs and drawings of the products marketed under Axiom Inc.'s trademarks and component parts thereof, and in the content appearing on the internet website www.axiomworldwide.co.

(9) A bench trial will be held on Axiom Inc.'s remaining claims against HTRD, Axiom Inc.'s entitlement to a default judgment against Excite Medical and Musallam, and a determination of Axiom Inc.'s compensatory damages, if any, to be awarded against Defendants HTRD, Excite

-79-

Medical, Musallam, Ren, and the Ryzur Defendants. The bench trial will commence on **Thursday, June 13, 2013, at 2:00 P.M. in Courtroom 14B**, and, if necessary, will continue on June 14, 2013, at 9:00 A.M.

(10) Axiom Inc.'s Motion for Judgment on the Pleadings (Doc. # 92) is **denied as moot.**

(11) Axiom Inc.'s Motion for Permission to Formally Designate Expert Witness Previously Identified and Expert Opinion That Was Filed With The Court On April 26, 2012 (Doc. # 249) is **granted as unopposed.**

(12) The Clerk is directed to furnish a certified copy of this Order to the U.S. Patent and Trademark Office.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>1st</u> day of June, 2013.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE


Copies:   All Counsel and Parties of Record

          U.S. Patent and Trademark Office

-80-