UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

AXIOM WORLDWIDE, INC.,

            Plaintiff,

                           Case No.: 8:11-cv-1468-T-33TBM
v.

HTRD GROUP HONG KONG LIMITED
a/k/a HTRD GROUP HONG KONG
LIMITED, INC., ET AL.,

            Defendants.

_____/

**ORDER**

This cause comes before the Court pursuant to the parties' Joint Stipulation Between Axiom and HTRD Requesting the Court to Rule on the Claims of Fraud on the USPTO, Misappropriation and Intentional Interference Based Upon the Current Record Evidence (Doc. # 328), filed on June 5, 2013. In the Joint Stipulation, the parties state that:

1.    The Court recently entered its order on the parties' pending motions for summary judgment. However, the Court apparently reserved ruling on certain issues related to claims against HTRD solely because HTRD's motion for summary judgment did not move for summary judgment on the issues thereby leaving the issues for trial.

2.    Neither Axiom nor HTRD desire to recede from their positions on these issues. However, in the interests of judicial economy and efficiency, Axiom and HTRD stipulate to the Court considering these issues based on the current evidence applying the summary judgment standard without further briefing as if the

issues were raised in HTRD's initial motion
for summary judgment.

(Doc. # 328 at 1-2).

Accordingly, although HTRD did not address in its motion
for summary judgment (Doc. # 147) Axiom Inc.'s claims against
it for fraud on the United States Trademark and Patent Office
(USPTO), misappropriation of trade secrets, and interference
with business relationships, pursuant to the parties' Joint
Stipulation, the Court will treat these claims as though HTRD
had timely moved for summary judgment on the claims and grants
summary judgment in HTRD's favor and against Axiom Inc. on
these claims accordingly.

I.    **Background**

According to the parties' joint pretrial statement,
Plaintiff "Axiom Inc. developed, manufactured, and sold
medical products all over the world."  (Doc. # 250 at 24).
Its flagship product was the DRX9000, a device that treats
back pain.  Id.  "Later Axiom Inc. developed a similar
appliance for the treatment of neck pain and it was either
marketed or sold as the DRX9000C or DRX9500."  Id.  The
parties agree that "Axiom Inc. expended significant resources
in developing and distributing machines worldwide in the

medical community marketplace" including the costs of registering five trademarks with the USPTO.

Non-party Axiom Worldwide LLC ("Axiom LLC") was established on December 29, 2005, "in connection with a proposed sale to a group of investors." (Doc. # 250 at 25). James Gibson, who is and was at all material times the president and CEO of Axiom Inc., executed a Warranty Bill of Sale on February 19, 2007, with a retroactive effective date of January 3, 2006, transferring certain assets of Axiom Inc. to Axiom LLC.  Id. at 23, 25; (Doc. # 1-2).  Pursuant to the Warranty Bill of Sale, Axiom Inc. transferred to Axiom LLC its "right, title and interest in and to all of [Axiom Inc.'s] raw materials inventory, finished goods inventory, computer equipment, leasehold improvements, machinery, equipment, furniture, fixtures and goodwill." (Doc. # 1-2).

On July 14, 2006, Axiom Inc. and Axiom LLC were sued by a non-party, North American Medical Corporation, in the U.S. District Court for the Northern District of Georgia, North American Medical Corp. v. Axiom Worldwide, Inc., et al., No. 1:06-cv-1678-CCH (the "Atlanta Federal Case"). (Doc. # 250 at 25).  Axiom LLC filed a counterclaim for trademark infringement against North American on January 27, 2009.  Id. On June 25, 2010, the court in the Atlanta Federal Case

-3-

granted summary judgment in favor of North American on Axiom LLC's counterclaim.  Id. at 26.  The court ruled that Axiom LLC lacked standing to bring the trademark infringement counterclaim because it did not own the trademarks at issue. (Doc. # 1-3 at 8-9).  Specifically, the court ruled that "the 2007 Warranty Bill of Sale did not, by its terms, transfer Axiom Inc.'s trademarks, or any intellectual property rights, to Axiom LLC."  Id. at 8.

Meanwhile, in September of 2008, Axiom LLC borrowed money from Progress Bank, N.A. (Doc. # 250 at 26).  Pursuant to the loan documents, Progress Bank acquired a security interest in all of Axiom LLC's assets.  Id.  Axiom Inc. was not a party to the loan agreement between Progress Bank and Axiom LLC.  Id. In December of 2009, Progress Bank withdrew its agreement to renew the loan and filed suit against Axiom LLC.  Id.

On March 25, 2010, Axiom LLC filed a petition commencing an action for the Assignment for Benefit of Creditors (the "ABC Case") in the Thirteenth Judicial Circuit Court in and for Hillsborough County, Florida, In re: Axiom Worldwide, LLC, Assignor to Michael Luetgert, Assignee, No. 10-CA-006801, pursuant to which Axiom LLC assigned all of its assets to an assignee, Michael Luetgert.  Id. at 26-27; (Doc. # 5-5). Following a hearing on July 1, 2010, the court entered an

-4-

order authorizing the transfer of Axiom LLC's assets from
Luetgert to Progress Bank. (Doc. # 250 at 27; Doc. # 1-5).  On
July 2, 2010, Luetgert executed a bill of sale to Progress
Bank of all of Axiom LLC's assets in his possession. (Doc. #
250 at 27; Doc. # 1-6).

Thereafter, on July 16, 2010, Progress Bank sold the
assets it had acquired from Axiom LLC to Defendant HTRD "on an
additional 'as is' and 'where is' basis without any warranties
or representations of any kind pursuant to a document titled
'Quit Claim Bill of Sale and Assignment.'" (Doc. # 250 at 27;
Doc. # 1-7).  HTRD entered into the Quit Claim Bill of Sale
and Assignment "with actual knowledge of the June 25, 2010
Order entered in the Atlanta Federal Case." (Doc. # 250 at
28).

Subsequently, HTRD "filed paperwork with the USPTO
seeking to transfer to itself trademarks that were initially
registered to Axiom Inc. and which were never formally
transferred to Axiom LLC on the USPTO records." Id.

Axiom Inc. initiated this trademark ownership and
infringement declaratory judgment action on July 1, 2011.
(Doc. # 1).  Axiom Inc. filed a verified amended complaint on
August 26, 2011, alleging that it is the owner of the relevant
intellectual property, including trademarks, registered marks,

trade secrets, trade names, copyrights of the designs and drawings of products marketed under the trademarks, and 510(k) authorizations from the FDA. (Doc. # 20). Axiom Inc. seeks declaratory and injunctive relief as well as damages for alleged trademark and copyright infringement, unfair competition, fraud on the USPTO, misappropriation of trade secrets, interference with its business relationships, and breach of confidentiality agreements. Id.

On June 1, 2013, the Court entered an Order finding that Axiom Inc. was the owner of the intellectual property at issue and finding that HTRD had infringed Axiom Inc.'s trademarks and copyrights and engaged in unfair competition. (Doc. # 317). The Court denied summary judgment for Axiom Inc. on its claims against HTRD for fraud on the USPTO, misappropriation of trade secrets, and interference with business relationships. However, because HTRD did not move for summary judgment on these claims, the Court reserved ruling on these issues until the bench trial in this case scheduled for June 13, 2013. Pursuant to the parties' Joint Stipulation detailed above, the Court will now address these claims as though HTRD had timely moved for summary judgment on these issues.

## II. **Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996)(citing Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993)).  A fact is material if it may affect the outcome of the suit under the governing law.  Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997).  The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial.  Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions,

answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." <u>Jeffery v. Sarasota White Sox, Inc.</u>, 64 F.3d 590, 593-94 (11th Cir. 1995)(citing <u>Celotex</u>, 477 U.S. at 324).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor.  <u>Shotz v. City of Plantation, Fla.</u>, 344 F.3d 1161, 1164 (11th Cir. 2003).  If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the court should not grant summary judgment.  <u>Samples ex rel. Samples v. City of Atlanta</u>, 846 F.2d 1328, 1330 (11th Cir. 1988)(citing <u>Augusta Iron & Steel Works, Inc. v. Employers Ins. of Wausau</u>, 835 F.2d 855, 856 (11th Cir. 1988)).

**III.** **<u>Analysis</u>**

    **A.** **<u>Fraud on the USPTO</u>**

Under the Lanham Act, 15 U.S.C. § 1120, "Any person who shall procure registration in the Patent and Trademark Office of a mark by a false or fraudulent declaration or representation, oral or in writing, or by any false means,

shall be liable in a civil action by any person injured thereby for any damages sustained in consequence thereof."

"An applicant commits fraud when he 'knowingly makes false, material representations of fact in connection with an application for a registered mark.'" <u>Sovereign Military Hospitaller Order of Saint John of Jerusalem of Rhodes and of Malta v. Fla. Priory of the Knights Hospitallers of the Sovereign Order of Saint John of Jerusalem, Knights of Malta</u>, 702 F.3d 1279, 1289 (11th Cir. 2012)(quoting <u>Angel Flight of Ga., Inc. v. Angel Flight Am., Inc.</u>, 522 F.3d 1200, 1209 (11th Cir. 2008)). "Fraud further requires a purpose or intent to deceive the PTO in the application for the mark." <u>Id.</u> (citing <u>In re Bose Corp.</u>, 580 F.3d 1240, 1245 (Fed. Cir. 2009)).

Thus, to establish a prima facie case of fraud in procuring a trademark registration, a party must show that: "(1) the challenged statement was a false representation regarding a material fact; (2) the registrant knew the representation was false (scienter); (3) the registrant intended to deceive the [USPTO]; (4) the [USPTO] reasonably relied on the misrepresentation; and (5) the party suffered damages proximately resulting from such reliance." <u>Pandora Jewelers 1995, Inc. v. Pandora Jewelry, LLC</u>, No. 09-61490-Civ,

2011 WL 2174012, at *14 (S.D. Fla. June 2, 2011)(citations omitted).

Furthermore, the party attempting to prove fraud must do so "by clear and convincing evidence. This is necessarily a heavy burden." Sovereign Military Hospitaller, 702 F.3d at 1289 (citing Angel Flight, 522 F.3d at 1209; Bose, 580 F.3d at 1243). "[T]he very nature of the charge of fraud requires that it be proven 'to the hilt' with clear and convincing evidence. There is no room for speculation, inference or surmise and, obviously, any doubt must be resolved against the charging party." Bose, 580 F.3d at 1243 (citations omitted).

The Court finds that Axiom Inc. cannot meet its heavy burden of proving that HTRD knew that its claim of ownership of the trademarks was false at the time it registered the trademarks in its name with the USPTO. Again, "[t]he question is not whether the statement is factually false, but whether the applicant subjectively believed it was false at the time he or she made the representation." Ricks v. BMEzine.com, 727 F. Supp. 2d 936, 967 (D. Nev. 2010). Indeed, "if the declarant subjectively believes the applicant has a superior right to use the mark, there is no fraud, even if the declarant was mistaken." Sovereign Military Hospitaller, 702 F.3d at 1292. Thus, "[t]here is no fraud if a false

-10-

misrepresentation is occasioned by an honest misunderstanding or inadvertence without a willful intent to deceive." <u>Bose</u>, 580 F.3d at 1246.

Here, although HTRD admittedly knew about the ruling in the Atlanta Federal Case prior to its registration of the trademarks, the evidence, as well as HTRD's counterclaim and consistent position in this case, show that HTRD subjectively believed that the asset purchase from Progress Bank did include the relevant trademarks and that the holding in the Atlanta Federal Case would not have a preclusive effect on the issue.

Indeed, HTRD's application to the USPTO was based on a detailed legal opinion letter authored by its counsel, Lee Wm. Atkinson, in which Mr. Atkinson discusses the facts and law supporting HTRD's claim of ownership and his conclusion that, in his opinion, HTRD did acquire the relevant trademarks and issue preclusion would not apply.  (Doc. # 113-3 at 9-19).[1]

---

[1]   The opinion letter sets out the grounds for HTRD's claim of ownership which it has relied on throughout this case, including the use of the term "goodwill" in the 2007 Warranty Bill of Sale from Axiom Inc. to Axiom LLC, the inclusion of intellectual property on the schedule attached to Axiom LLC's Assignment for Benefit of Creditors, and the denial by the court in the ABC Case of an objection premised on the ruling in the Atlanta Federal Case. (Doc. # 113-3 at 9).

Notably, in his deposition, Mr. Atkinson testified that at the time he wrote his opinion letter, he believed that the ruling in the Atlanta Federal Case would not have a preclusive effect because a final judgment had not yet been entered in the case, which is one of the required elements for invoking issue preclusion. (Atkinson Dep. Doc. # 275-1 at 20). Thus, while this Court ultimately disagreed with Mr. Atkinson's and HTRD's position on the preclusive effect of the judgment in the Atlanta Federal Case, the Court cannot say that HTRD's position on the issue was so farfetched or legally unsupportable at the time it submitted its application to the USPTO as to constitute a knowingly false misrepresentation to the USPTO.

Therefore, based on the evidence supplied by HTRD as described above, the Court finds that HTRD subjectively believed that it had a right to use the relevant trademarks, and as such, did not commit fraud in submitting its application to the USPTO. See Sovereign Military Hospitaller, 702 F.3d at 1292 ("[I]f the declarant subjectively believes the applicant has a superior right to use the mark, there is no fraud, even if the declarant was mistaken."). The Court accordingly grants summary judgment in favor of HTRD and against Axiom Inc. on this claim.

-12-

B.   __Misappropriation of Trade Secrets__

Axiom Inc. seeks a declaratory judgment ruling that HTRD has misappropriated its trade secrets in violation of Florida's Uniform Trade Secrets Act, Florida Statute Section 688.001, et seq. Under the Uniform Trade Secrets Act, a "trade secret" is information that: (1) "[d]erives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use;" and (2) "is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." § 688.002(4), Fla. Stat.

Thus, the elements of a trade secrets misappropriation claim are: "(1) the plaintiff possessed secret information and took reasonable steps to protect its secrecy and (2) the secret was misappropriated, either by one who knew or had reason to know that the secret was improperly obtained or by one who used improper means to obtain it." Sterpetti v. E-Brands Acquisition, LLC, No. 6:04-cv-1843, 2006 WL 1046949, at *8 (M.D. Fla. Apr. 20, 2006)(citations omitted).

Presuming for purposes of the Court's analysis that Axiom Inc. can satisfy the first prong,[2] the Court finds that HTRD is entitled to summary judgment on this claim because Axiom Inc. cannot establish misappropriation under the second prong.

Section § 688.002(2), Fla. Stat., defines "Misappropriation" as follows:

> (a) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

---

[2] Although the Court need not determine Axiom Inc.'s satisfaction of this first prong in light of its failure to satisfy the second prong, the Court acknowledges that the Defendants dispute whether Axiom Inc. took reasonable steps to maintain the secrecy of its trade secrets. (Doc. # 156 at 6). Furthermore, Axiom Inc. does not go beyond the pleadings to establish exactly what its claimed trade secrets are and their entitlement to protection under Florida law. The amended complaint alleges only that the trade secrets "includ[e] but [are] not limited to the content of the Axiom Worldwide website, design drawings for the Axiom products and related components." (Doc. # 20 at ¶ 65). However, the Court doubts whether the contents of an internet website would constitute a trade secret given that "[i]nformation that is generally known or readily available to third parties generally cannot qualify for trade secret protection under Florida law." Jadael, Inc. v. Elliott, No. 6:05-cv-1623, 2007 WL 2480387, at *7 (M.D. Fla. Aug. 29, 2007)(citing Am. Red Cross v. Palm Beach Blood Bank, Inc., 143 F.3d 1407, 1410 (11th Cir. 1995)). See also § 688.002(4), Fla. Stat. (defining term "trade secret"). Nevertheless, the Court will presume for argument's sake that Axiom Inc.'s design drawings are entitled to trade secret protection and need not determine the reasonableness of Axiom Inc.'s measures to protect the trade secrets, in light of the Court's determination that Axiom Inc. has failed to establish misappropriation of its trade secrets.

-14-

     (b)   Disclosure or use of a trade secret of another without express or implied consent by a person who:

         1.   Used improper means to acquire knowledge of the trade secret; or

         2.   At the time of disclosure or use, knew or had reason to know that her or his knowledge of the trade secret was:

             a.   Derived from or through a person who had utilized improper means to acquire it;
             b.   Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or
             c.   Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or

         3.   Before a material change of her or his position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

§ 688.002(2), Fla. Stat.

"Improper means" includes "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means." § 688.002(1), Fla. Stat.

The parties dispute how Axiom Inc.'s trade secrets were acquired by HTRD. However, neither HTRD's asserted factual scenario, nor Axiom Inc.'s counter contention supports a finding of misappropriation.

HTRD maintains that, following the assignment of Axiom LLC's assets to Progress Bank in the ABC Case and the subsequent sale of the assets to HTRD, HTRD obtained physical possession of the subject intellectual property from the assignee, Michael Luetgert, as part of the physical transfer of the assets HTRD purchased. (Doc. # 156 at 6). Indeed, Defendant Saleem Musallam testified that he helped physically load boxes of the assets and things HTRD purchased from Progress Bank and that documents and a computer server were included in the inventory he retrieved. (Musallam Dep. Doc. # 131 at 53-54). Defendant David Ren also testified that the computer server "was included in the big pile of inventory that we purchased." (Ren Dep. Doc. # 191-1 at 60). HTRD argues that "Gibson knew that the design schematics, computers and software were in the physical possession of the assignee and he made no effort to prevent the transfer or re-obtain possession of the property." (Doc. # 156 at 6).

However, Axiom Inc. attempts to refute HTRD's version of the facts by pointing the Court to the affidavit filed by Cara Davis, Progress Bank's Senior Vice President, in which she states that "Progress Bank's sale to HTRD was limited to the sale of the physical, tangible inventory that was part of the collateral for the Axiom Loan" and that "Progress Bank did not

sell or otherwise transfer Axiom's business name, designs, logos, slogans, trademarks, service marks, or any other intellectual property or intangible property to HTRD." (Davis Aff. Doc. # 51-3 at ¶¶ 10, 12). Axiom Inc. characterizes this testimony as a statement "that HTRD was never provided with those items." (Doc. # 160 at 3 n.4).

However, Axiom Inc. mischaracterizes, or at the least, draws unwarranted inferences from, Davis's testimony. In fact, Davis's testimony describes only Progress Bank's position that the asset sale to HTRD did not legally transfer any of Axiom Inc.'s intellectual property to HTRD. However, Davis's affidavit does not speak to the question of what property was actually physically transferred to the Defendants following the sale and whether such inventory may have inadvertently included Axiom Inc.'s server and copies of Axiom Inc.'s product designs.

In sum, Axiom Inc. has not supplied any evidence indicating that HTRD obtained physical possession of the intellectual property from Progress Bank or Luetgert by any "improper means" including "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means." §
688.002(1), Fla. Stat. Rather, based on the record evidence,

-17-

it appears that physical possession of the intellectual property was inadvertently transferred to HTRD by Luetgert, either by mistake, misunderstanding, or negligence. Such is insufficient to constitute misappropriation by improper means as those terms are defined under § 688.002, Fla. Stat.

However, even if Axiom Inc. were able to refute HTRD's assertion that HTRD acquired physical possession of the trade secrets from Luetgert, Axiom Inc.'s alternative theory of misappropriation also fails. As stated in Axiom Inc.'s reply in support of its summary judgment motion, "Axiom Inc. continues to believe that HTRD . . . obtained those items directly from Defendants Andrew Deweerd, Harlon Parchment, Corey Brownell, who were all former Axiom Inc. employees and engineers, or directly from co-conspirator, Nicholas Exarhos, who was a 50% co-owner of both Axiom Inc. and Axiom LLC." (Doc. # 160 at 3-4 n.4).

Axiom Inc. does not argue that these individuals themselves obtained Axiom Inc.'s trade secrets by any improper means as it is undisputed that they had access to the trade secrets as part of their employment. Thus, in order to prove a trade secrets misappropriation claim under this factual scenario, Axiom Inc. must establish that, at the time of disclosure or use, HTRD knew that the trade secrets were

-18-

"derived from or through a person who owed a duty to [Axiom Inc.] to maintain its secrecy or limit its use." § 688.002(2)(b)2.c., Fla. Stat. Axiom Inc. has failed to establish such requirement.

The Court will presume for purposes of its analysis that Deweerd, Parchment, Brownell, and Exarhos, as former Axiom Inc. employees, had a duty to maintain Axiom Inc.'s trade secrets. See S.E. Mech. Servs., Inc. v. Brody, No. 8:08-cv-1151, 2008 WL 4613046, at *10 (M.D. Fla. Oct. 15, 2008)("Florida law imposes upon every employee a duty not to use the employer's trade secrets for his own benefit, if the secret was acquired by the employee in the course of his employment.").

However, HTRD has steadfastly maintained throughout this proceeding that it believed HTRD's asset purchase from Progress Bank included all of the intellectual property at issue in this case including the relevant trade secrets. The individual Defendants have also testified as to this belief. See, e.g., (Deweerd Dec. Doc. # 241 at ¶ 7)("I truly thought that HTRD had acquired all assets, everything, in the sale from the bank.");(Ren Dep. Doc. # 199-1 at 60)("From my understanding, Progress Bank said that we had purchased all

-19-

the assets and all the assets included [the computer
server].").

Thus, even if HTRD acquired the trade secrets from a
former Axiom Inc. employee instead of from the assignee,
Luetgert, the evidence shows that HTRD did not know that the
former Axiom Inc. employees had any duty to Axiom Inc. to
maintain the secrecy of the trade secrets, given HTRD's belief
that it had in fact purchased the trade secrets from Progress
Bank. Axiom Inc. has not supplied evidence to refute the
sworn testimony of Deweerd and Ren on this issue. Therefore,
the Court finds that, based on the evidence supplied in this
case, HTRD has shown that it did not misappropriate Axiom
Inc.'s trade secrets, such that summary judgment in HTRD's
favor is warranted on this claim.

### C.  **Interference with Business Relationships**

Axiom Inc. seeks a declaration that HTRD has
intentionally interfered with Axiom Inc.'s business
relationship with two non-party companies. (Doc. # 20 at 27).

"Tortious interference with a business relationship
requires a plaintiff to allege (1) the existence of a business
relationship, (2) knowledge of the relationship on the part of
the defendant, (3) an intentional and unjustified interference
with the relationship, and (4) damage to the plaintiff as a

result of the relationship." <u>Cherry v. D.B. Zwirn Special Opportunities Fund</u>, No. 8:09-cv-33, 2010 WL 415313, at *8 (M.D. Fla. Jan. 27, 2010). "The Eleventh Circuit has stated that '[a] business relationship need not be evidenced by a contract, but it generally requires an understanding between the parties that would have been completed had the defendant not interfered.'" <u>E-Z Pack Mfg., LLC v. RDK Truck Sales & Serv., Inc.</u>, No. 8:10-cv-1870, 2011 WL 4343790, at *10 (M.D. Fla. Aug. 10, 2011) (quoting <u>Int'l Sales & Serv., Inc. v. Austral Insulated Prods., Inc.</u>, 262 F.3d 1152, 1154 (11th Cir. 2001)). Furthermore, a plaintiff must allege a business relationship with "identifiable customers" versus the "community at large." <u>Id.</u> at *8.

In the amended complaint, Axiom Inc. alleges that HTRD interfered with Axiom Inc.'s business relationship with two companies -- a "Chinese partner company" owned by Ms. Li Jing "that continues to have the exclusive rights to Axiom Inc.'s products in China" (Doc. # 20 at ¶ 9) and "OOO Axioma . . .[a] Russian company with the legal rights to Axiom Inc.'s 510(k)s, Trademarks, Intellectual Property and products related to same." <u>Id.</u> at ¶ 11.

However, at the summary judgment stage, Axiom Inc. did not present any arguments or direct the Court to any evidence

-21-

supporting these allegations. Axiom Inc. has not provided any evidence establishing how, to what extent, or by what means HTRD intentionally interfered with Axiom Inc.'s relationship with these two companies, nor how Axiom Inc. was damaged by any interference. In fact, based on the evidence supplied in this case, it does not appear that Axiom Inc.'s relationship with these companies was actually terminated, but rather, that these companies may have only suffered decreased sales, allegedly as a result of HTRD's conduct. Simply, the record evidence in this case is insufficient to prove a claim against HTRD for tortious interference with its business relationships. Therefore, the Court finds it appropriate to grant summary judgment in favor of HTRD on Axiom Inc.'s tortious interference claim.

Accordingly, it is hereby

**ORDERED**, **ADJUDGED**, and **DECREED**:

Pursuant to the parties' Joint Stipulation Between Axiom and HTRD Requesting the Court to Rule on the Claims of Fraud on the USPTO, Misappropriation and Intentional Interference Based Upon the Current Record Evidence (Doc. # 328), and for the reasons explained herein, summary judgment is granted in favor of HTRD on Axiom Inc.'s claims against HTRD for fraud on

the USPTO, misappropriation of trade secrets, and interference with business relationships.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>12th</u> day of June, 2013.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies:   All Counsel of Record

-23-