UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

AXIOM WORLDWIDE, INC.,

        Plaintiff,

                        Case No. 8:11-cv-1468-T-33TBM

v.

HTRD GROUP HONG KONG LIMITED
a/k/a HTRD GROUP HONG KONG
LIMITED, INC., ET AL.,

        Defendants.

                /

## ORDER

This cause came before the Court for a non-jury trial held on June 13-14, 2013, on the issue of the monetary damages to be awarded to Plaintiff Axiom Worldwide, Inc. Previously, this Court granted summary judgment to Axiom on the issues of trademark infringement, copyright infringement, and unfair competition against Defendants HTRD Group Hong Kong Limited ("HTRD"), Beijing Rong Da Shun Da Trading Co. Ltd. d/b/a Ryzur Medical ("Ryzur Medical"), Beijing Ryzur Axiom Medical Investment Co, Ltd. ("Beijing Ryzur"), Anhui Ryzur Axiom Medical Equipment Co. Ltd. ("Anhui Ryzur"), David Ren, Excite Medical Corp., and Saleem Musallam. (Doc. # 317).

Also before the Court is the joint stipulation between Axiom and Defendant Eltech USA, LLC (Doc. # 349), filed on June 13, 2013, and the parties' oral stipulation made during

the bench trial to amend the permanent injunction previously entered by the Court (Trial Tr. Doc. # 359 at 195-97). Axiom's amended motion for default judgment on its claims against Excite Medical and Musallam for fraud on the U.S. Patent and Trademark Office (USPTO), misappropriation of trade secrets, and intentional interference with business relationships, as well as Axiom's claim against Musallam for breach of confidentiality agreement, is also before the Court. (Doc. # 331).   HTRD's oral motion to strike Axiom's exhibit 23, which the Court deferred ruling on during the bench trial, is before the Court as well. (Doc. # 351). On June 27, 2013, the parties timely filed their proposed orders (Doc. ## 362, 363), as ordered by this Court at the conclusion of trial.

Having considered the evidence, applicable law, and the parties' submissions, for the reasons set forth herein, the Court accepts and adopts the parties' joint stipulations regarding Eltech's liability and modification of the permanent injunction, grants Axiom's motion for default judgment against Excite Medical and Musallam on Axiom's claims for misappropriation of trade secrets and intentional interference with business relationships and against Musallam for breach of confidentiality agreement, and dismisses without prejudice Axiom's claim against Excite Medical and Musallam for fraud on

the USPTO. The Court denies as moot HTRD's oral motion to strike Plaintiff's exhibit 23, as the Court did not consider this exhibit in relation to its ruling herein.  The Court's determination regarding the damages and injunctive relief to be awarded in this case is set forth below.

I.   **Background**

Axiom initiated this trademark ownership and infringement action on July 1, 2011, and filed an amended complaint on August 26, 2011, alleging that it is the owner of certain intellectual property, including trademarks, registered marks, trade secrets, trade names, copyrights of the designs and drawings of products marketed under the trademarks, and 510(k) authorizations from the FDA. (Doc. ## 1, 20). Axiom asserted additional ancillary claims against the various Defendants for trademark infringement, unfair competition, copyright infringement, fraud on the USPTO, misappropriation of trade secrets, interference with business relationships, and breach of confidentiality agreements.  (Doc. # 20).

On June 1, 2013, the Court adopted the Report and Recommendation of The Honorable Thomas B. McCoun III, United States Magistrate Judge (Doc. # 305), struck Excite Medical and Musallam's pleadings, and directed the entry of default against them due to their willful abuse of the discovery

process. (Doc. # 316). Also on that day, the Court entered a summary judgment Order finding that Axiom is the owner of the intellectual property at issue and finding that HTRD, Excite Medical, Musallam, Ren, and the three Ryzur Defendants had infringed Axiom's trademarks and copyrights and engaged in unfair competition. (Doc. # 317).[1] As part of the Court's summary judgment Order, the Court imposed a permanent injunction against these Defendants but reserved for determination at trial the amount of monetary damages to be awarded for the infringement. (Id. at 69-73). The Court also reserved ruling on Axiom's trademark and copyright infringement and unfair competition claims against Eltech until trial. (Doc. # 342). Likewise, the Court reserved ruling on Axiom's claims against the defaulted Defendants, Excite Medical and Musallam, for fraud on the USPTO, misappropriation of trade secrets, and interference with

---

[1]     The Court granted summary judgment in favor of defendants Andrew Deweerd and Excite Diagnostics, LLC on all of Axiom's ancillary claims against them (Doc. # 317) and subsequently dismissed Defendants Harlon Parchment and Corey Brownell pursuant to Rule 4(m), Fed. R. Civ. P., due to Axiom's failure to serve them in this action (Doc. # 343). Accordingly, as used herein, the collective term "Defendants" does not include these four defendants. The Court also granted summary judgment in favor of all but the defaulted Defendants, Excite Medical and Musallam, on Axiom's claims for fraud on the USPTO, misappropriation of trade secrets, and interference with business relationships. (Doc. ## 317, 346).

business relationships, and against Musallam for breach of confidentiality agreement, upon an appropriate motion for default judgment by Axiom and the bench trial in this case.

## II. **Eltech's Liability and Amendment of Permanent Injunction**

Upon Axiom's motion for reconsideration, the Court ruled on June 11, 2013, that subsequently supplied evidence raised a genuine dispute of material fact as to Eltech's liability for trademark and copyright infringement and unfair competition, and vacated the portion of its summary judgment Order that granted summary judgment in Eltech's favor on these claims. (Doc. # 342). The Court instructed that these claims would be decided at the bench trial in this proceeding. (Id.).

However, prior to the trial, Axiom and Eltech filed a joint stipulation in which they stipulated that Eltech "has infringed one or more of Axiom's trademarks and copyrights" and agreed that "Eltech shall also be enjoined and made part of the Court's permanent injunction previously entered against HTRD, Excite [Medical], Musallam, Ren, Ryzur Medical, Beijing Ryzur and Anhui Ryzur." (Doc. # 349 at ¶ 1). Axiom and Eltech also stipulated that no monetary damages would be awarded to Axiom against Eltech, nor would either party be entitled to recover attorneys' fees from the other. (Id. at ¶ 3-4).

Accordingly, based on Axiom and Eltech's agreement, the

Court finds that Eltech has infringed one or more of Axiom's trademarks and copyrights and has engaged in unfair competition. The Court determines that Eltech will be enjoined and made part of the permanent injunction previously entered against the other infringing Defendants (and with the additional amendments discussed below), that no monetary damages will be awarded to Axiom against Eltech, and that neither Axiom nor Eltech shall be entitled to seek or recover attorneys' fees from the other. The parties' joint stipulation (Doc. # 349) is therefore accepted and approved.

During trial, the parties also stipulated to modifying the previously-entered permanent injunction as it applies to all the infringing Defendants to address additional issues, including prohibiting the future use of Axiom's relevant FDA 510(k)s and requiring the return or transfer of Axiom's proprietary information still in the Defendants' possession. (Trial Tr. Doc. # 359 at 195-97). Accordingly, based on the parties' agreement, the Court finds it appropriate to approve the joint stipulation and to modify the permanent injunction as to all of the infringing Defendants to address the necessary additional matters, as set forth below.

## III. **Motion for Default Judgment**

Upon finding that Excite Medical and Musallam

egregiously, prejudicially, and willfully abused the discovery process throughout this case, on June 1, 2013, the Court adopted Judge McCoun's Report and Recommendation to impose sanctions pursuant to Rule 37(b)(2)(A)(iii), Fed. R. Civ. P., and consequently struck Excite Medical and Musallam's pleadings and directed the Clerk to enter default against them. (Doc. # 316).  The Clerk subsequently entered default on June 3, 2013. (Doc. # 320).

As noted above, the Court granted summary judgment in Axiom's favor against Excite Medical and Musallam on its claims for trademark and copyright infringement and unfair competition. (Doc. # 317).  Thus, only Axiom's claims for fraud on the USPTO, misappropriation of trade secrets, interference with business relationships, and breach of confidentiality agreement remain at issue as the subject of Axiom's pending motion for default judgment against these Defendants.

Pursuant to Federal Rule of Civil Procedure 55(b)(2), following the entry of a Clerk's default and upon motion by the plaintiff, the Court may enter a default judgment against a defaulting party. Fed. R. Civ. P. 55(b)(2); <u>see also</u> <u>DirecTV, Inc. v. Griffin</u>, 290 F. Supp. 2d 1340, 1343 (M.D. Fla. 2003).  The mere entry of a default by the Clerk,

however, does not, in itself, warrant the Court entering a default judgment, as a Clerk's default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover. See Tyco Fire & Sec. LLC v. Alcocer, 218 F. App'x 860, 863 (11th Cir. 2007) (citing Nishimatsu Constr. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975)). Rather, a defaulted defendant is only deemed to admit the plaintiff's well-pled allegations of fact. Id. Furthermore, a default judgment bars the defendant from contesting those facts on appeal. Id. Therefore, before entering a default judgment for damages, a court must ensure that the well-pled allegations in the complaint, which are taken as true due to the default, actually state a substantive cause of action and that there is a substantive, sufficient basis in the pleadings for the particular relief sought. Id.

### A.   Fraud on the USPTO

At the close of trial, Axiom withdrew its ancillary claim for fraud on the USPTO against Excite Medical and Musallam with their agreement. (Trial Tr. Doc. # 359 at 195). Accordingly, Axiom's claim for fraud on the USPTO against Excite Medical and Musallam is dismissed without prejudice pursuant to Rule 41(a)(2), Federal Rules of Civil Procedure.

### B.   Misappropriation of Trade Secrets

-8-

The elements of a trade secrets misappropriation claim are: "(1) the plaintiff possessed secret information and took reasonable steps to protect its secrecy and (2) the secret was misappropriated, either by one who knew or had reason to know that the secret was improperly obtained or by one who used improper means to obtain it." Sterpetti v. E-Brands Acquisition, LLC, No. 6:04-cv-1843, 2006 WL 1046949, at *8 (M.D. Fla. Apr. 20, 2006).

The Court finds that the verified amended complaint sufficiently alleges a cause of action against Excite Medical and Musallam for misappropriation of trade secrets. Specifically, the amended complaint expressly alleges that "Axiom Inc. possesses secret information and has taken reasonable steps to protect its secrecy" and "the secret information it possessed was misappropriated by the Defendants, who knew or had reason to know that the secret information was improperly obtained or was obtained by one who used improper means to obtain it." (Doc. # 20 at ¶ 68). Additional allegations, taken as true, establish that Musallam signed a confidentiality agreement while employed by Axiom (Id. at ¶ 10), which shows that Axiom took reasonable steps to protect the secrecy of its trade secrets and that these Defendants had reason to know the trade secrets were

-9-

improperly obtained.

Therefore, because Excite Medical and Musallam are deemed to have admitted the aforementioned allegations as true, the Court finds that Axiom is entitled to a default judgment against Excite Medical and Musallam on its claim for misappropriation of trade secrets and grants Axiom's motion for default judgment on this claim accordingly. Axiom's damages for such misappropriation will be addressed below.

### C. **Tortious Interference with Business Relationship**

"Tortious interference with a business relationship requires a plaintiff to allege (1) the existence of a business relationship, (2) knowledge of the relationship on the part of the defendant, (3) an intentional and unjustified interference with the relationship, and (4) damage to the plaintiff as a result of the relationship." Cherry v. D.B. Zwirn Special Opportunities Fund, No. 8:09-cv-33, 2010 WL 415313, at *8 (M.D. Fla. Jan. 27, 2010). "The Eleventh Circuit has stated that '[a] business relationship need not be evidenced by a contract, but it generally requires an understanding between the parties that would have been completed had the defendant not interfered.'" E-Z Pack Mfg., LLC v. RDK Truck Sales & Serv., Inc., No. 8:10-cv-1870, 2011 WL 4343790, at *10 (M.D. Fla. Aug. 10, 2011) (quoting Int'l Sales & Serv., Inc. v.

Austral Insulated Prods., Inc., 262 F.3d 1152, 1154 (11th Cir. 2001)).  Furthermore, a plaintiff must allege a business relationship with "identifiable customers" versus the "community at large." Id. at *8.

The Court finds that this claim is also well-pled. Specifically, the amended complaint alleges that Excite Medical has "improperly attempted to cancel OOO Axioma's contract [with Axiom]" and further that these "Defendants knew of the business relationships between Axiom Inc., on the one hand, and OOO Axioma and Ms. Li's company on the other hand, and the Defendants have intentionally and unjustifiably interfered with Axiom's rights under the Confidentiality Agreements and other contractual relationships, resulting in damage to Axiom . . ." (Doc. # 20 at ¶¶ 63, 69).

The Court finds that these allegations sufficiently state each of the necessary elements of an interference claim outlined above.  Thus, since Excite Medical and Musallam are deemed to have admitted these well-pled factual allegations, the Court determines that Excite Medical and Musallam have intentionally interfered with Axiom's business relationships and are liable for any resulting damages.  Axiom's motion for default judgment on its claims for intentional interference with business relationships against Excite Medical and

Musallam is granted accordingly.

D.   **Breach of Confidentiality Agreement**

In order to establish a claim for breach of contract, a plaintiff must prove: "(1) the existence of a valid contract; (2) material breach thereof; and (3) damages flowing from the breach." Murciano v. Garcia, 958 So. 2d 423, 423 (Fla. 3d DCA 2007).

Axiom alleges several times in the amended complaint that Musallam signed a standard confidentiality agreement while he was employed at Axiom and that he was never released from it. (Doc. # 20 at ¶¶ 1, 10, 59). Axiom further alleges that through Musallam's actions in obtaining and utilizing Axiom's intellectual property, Musallam materially breached the confidentiality agreement, causing damage to Axiom. (Id. at ¶¶ 59, 69). Thus, the Court finds that Axiom has adequately pled the elements of a cause of action for breach of confidentiality agreement against Musallam. Given that the entry of default against Musallam has the effect of admitting these well-pled allegations as true, the Court finds that Axiom is entitled to a default judgment against Musallam on its claim for breach of the confidentiality agreement he signed. The amount of damages to which Axiom is entitled for this breach is addressed below.

-12-

IV. **Damages**

    A.   **Trademark and Copyright Infringement and Unfair Competition**

The Court must first determine how many trademarks, internet domain names, and copyrights the Defendants infringed.  The parties agree that five Axiom trademarks are at issue in this case:

- "Axiom Worldwide Logo" (Serial No. 76533071, filed June 28, 2003);
- "DRX 9000" (Serial No. 76533070, filed July 28, 2003);
- "Better Technology..." (Serial No. 76536333, filed August 11, 2003);
- "Axiom Worldwide" (Serial No. 76595705, filed June 4, 2004); and
- "DRX" (Serial No. 78583889, filed March 9, 2005).

(Doc. # 250 at 24).

In their post-trial submission, the Defendants contend that only HTRD infringed all five trademarks by registering the trademarks in HTRD's name, but "only four of the trademarks were actively used by the [other] Defendants in the course and conduct of their business." (Doc. # 363 at 12). However, the parties included in their joint pretrial statement the agreed fact that "The Defendants have used the trademarks . . . at issue in this case" as one of the "facts which are admitted and will require no proof at trial." (Doc. # 250 at 28).  The Defendants did not at that time assert that

only HTRD had used all five trademarks while the others had used only four, nor did the Defendants include the number of trademarks infringed by each Defendant as an issue remaining to be determined for trial.  Furthermore, the Defendants did not present evidence at trial establishing their contention that only HTRD used all five trademarks, while the other infringing Defendants used only four.

Local Rule 3.06(e), M.D. Fla., provides that "All pleadings filed by any party prior to filing of the pretrial statement shall be deemed to be merged therein . . . . The pretrial statement and the pretrial order, if any, will control the course of the trial . . . ."  To the extent that the joint pretrial statement conflicts with the pleadings, "the mere filing of a Joint Pretrial Statement work[s] an amendment of the pleadings." Ochran v. United States, 117 F.3d 495, 507 (11th Cir. 1997). Thus, a party "will not be permitted to advance an argument . . . that contradicts its stipulation and the joint pretrial statement." Tampa Bay Water v. HDR Eng'g, Inc., No. 8:08-cv-2446-T-27TBM, 2011 WL 3664559, at *5 (M.D. Fla. Aug. 19, 2011); see also Christian Legal Soc'y Chapter of the Univ. of Cal., Hastings Coll. of the Law v. Martinez, 130 S.Ct. 2971, 2983 (2010) ("This Court has accordingly refused to consider a party's argument that

-14-

contradicted a joint stipulation entered at the outset of the litigation. . . . [F]actual stipulations are formal concessions . . . that have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact.  Thus, a judicial admission . . . is conclusive in the case.")(internal quotations and citations omitted).

The Court finds that the Defendants are bound by their unqualified admission in the joint pretrial statement that they "used the trademarks . . . at issue in this case," which includes all five Axiom trademarks listed above. (Doc. # 250 at 28).  Consequently, the Court determines that each of the infringing Defendants is liable for the infringement of all five of Axiom's trademarks.

The parties additionally agree that Excite Medical and Musallam used two infringing internet domain names, www.axiomworldwide.co and www.drx900truth.com, in violation of 15 U.S.C. § 1125(d).  (Doc. ## 362 at 25-26; 363 at 19).

Regarding the copyrights at issue, Axiom contends that "these same Defendants infringed 40 separate copyrights related to Axiom's property including the four separate machines . . . as well as the 36 separate computer programs containing Axiom's proprietary computer software and firmware that these Defendants also separately infringed by using those

-15-

programs to manufacture, sell and distribute additional counterfeit replacement parts." (Doc. # 362 at 23-24). The Defendants, on the other hand, maintain that only two copyrighted works were infringed, the lumbar spinal traction table and the cervical spinal traction table, and argue that "[d]esigns and schematics for the components of a machine can represent no more than one work." (Doc. # 363 at 3, 13)(citing, e.g., Lee Middleton Original Dolls, Inc. v. Seymour Mann, Inc., 299 F. Supp. 2d 892, 895 (E.D. Wis. 2004); Country Road Music, Inc. v. MP3.com, Inc., 279 F. Supp. 2d 325 (S.D.N.Y. 2003); Walt Disney Co. v. Powell, 897 F. 2d 565, 569 (D.C. Cir. 1990)).

The Court agrees that Axiom has not proven that 40 separate copyrighted works were infringed by the Defendants. Rather, the Court agrees with the authority supplied by the Defendants that only the separate completed machines, and not each separate design or schematic (i.e., the "36 separate computer programs") used to manufacture the machines, constitutes a separate work subject to damages for copyright infringement. See Lee Middleton Original Dolls, Inc., 299 F. Supp. 2d at 898 ("Even if [component parts] have a separate artistic life, it is only when they are used in the completed work, i.e. the doll, that they have an economic life. Whether

-16-

an alleged infringer uses the head, hands and feet singularly or in combination, it is only when these parts of the collection are assembled as a whole can they be considered to have a viable economic life.").

In this regard, the Defendants argue that there were only two machines, the lumbar spinal traction table and the cervical spinal traction table, while Axiom contends that combination machines must be considered as well.  The Court agrees with Axiom that combination machines should be included in the count with the two individual machines. Contrary to Axiom's contention in its post-trial submission that there are four total machines (Doc. # 362 at 23), Axiom's president, James Gibson, testified at trial that there are only three machines. (Trial Tr. Doc. # 358 at 59)("There's really three machines, but it's plausible that you could have four sales out of three machines.").  Regardless of the possible permutations of sales of the three machines, based on Gibson's testimony, the Court finds that the number of works whose copyright the Defendants infringed totals three.

Axiom has elected to receive statutory damages against HTRD, Musallam, Ren, Ryzur Medical, Anhui Ryzer, and Beijing Ryzur for their trademark and copyright infringement.  Axiom seeks actual damages against Excite Medical for these

-17-

infringements.  The Court will discuss the appropriate measure of damages for each category below.

### 1.  **Statutory Damages**

The Lanham Act allows a plaintiff to elect to receive statutory damages for a defendant's infringement of a plaintiff's trademarks and for a defendant's infringing use of internet domain names.  See 15 U.S.C. § 1117(c)-(d). Generally, upon a plaintiff's election to receive statutory damages instead of actual damages, the Court can award statutory damages of not less than $1,000 or more than $200,000 per trademark infringed per defendant, regardless of willfulness, "as the Court determines to be just."  Rolex Watch USA, Inc. v. Lynch, No. 2:12-cv-542, 2013 WL 2897939, at *5 (M.D. Fla. June 12, 2013)(citing 15 U.S.C. § 1117(c)(1)). However, statutory damages may be increased to not more than $2,000,000 per trademark if a defendant acts willfully. Id. (citing 15 U.S.C. § 1117(c)(2)).  Additionally, 15 U.S.C. § 1117(d) allows a Court to award statutory damages of not less than $1,000 or more than $100,000 per internet domain name found to be infringing in violation of 15 U.S.C. § 1125(d).

The Copyright Act similarly allows a copyright owner to recover statutory damages for an infringement. In awarding statutory damages under the Copyright Act, for each work

infringed by any one infringer that is liable individually, or for which any two or more infringers are liable jointly and severally, the Court generally may award not less than $750 or more than $30,000 "as the Court considers just." 17 U.S.C. § 504(c)(1).  However, the statutory damages to be awarded under the Copyright Act may be reduced to as low as $200 per work infringed per defendant where the infringer sustains the burden of proving that he was not aware and had no reason to believe that his acts constituted copyright infringement.  17 U.S.C. § 504(c)(2).  Additionally, the Court may increase the statutory damages to as much as $150,000 per work infringed where the copyright owner sustains the burden of proving that the infringement was committed willfully.  Id.

Predictably, the Defendants assert that the amount of damages should be set near the statutory minimum, at $2,000 per trademark per Defendant, while Axiom contends that an award of the statutory maximum, $200,000 per trademark per Defendant, is called for here.  Likewise, the Defendants argue that damages in the amount of $2,000 per copyright should be imposed, while Axiom asserts that $30,000 per copyright is warranted in this case.

Specifically, Axiom asserts that the maximum penalty should be awarded due to the Defendants' conduct in repeatedly

failing to produce requested discovery, which Axiom contends left the Court without sufficient evidence "to consider whether these Defendants' actions were willful or innocent" and "from which to assess the value of the infringing material produced." (Doc. # 362 at 20-21). Thus, Axiom argues, maximum damages are necessary to deter these Defendants and others besides these Defendants from future infringement. (Id. at 21).

On the other hand, these Defendants point out that the Court has previously determined that none of the Defendants committed fraud on the USPTO by finding that "HTRD subjectively believed that it had a right to use the relevant trademarks, and as such, did not commit fraud in submitting its application to the USPTO." (Doc. # 346 at 12). The Defendants also argue that "[t]he evidence is clear that Axiom was not actively conduct[ing] business at the time of the sale of Axiom Worldwide, LLC's assets to HTRD." (Doc. # 363 at 16). Indeed, Gibson testified that Axiom did not have any revenue for 2011 or 2012. (Trial Tr. Doc. # 358 at 123-24).

Regarding the amount of damages for each trademark infringed, the Lanham Act "does not provide guidelines for courts to use in determining an appropriate award." Lynch, 2013 WL 2897939, at *5 (citations omitted). Accordingly,

-20-

"[m]any courts look to the Copyright Act's analogous provision, 17 U.S.C. § 504(c) in this situation." <u>Id.</u> Under the Copyright Act, courts consider factors such as: "(1) the expenses saved and the profits reaped; (2) the revenues lost by the plaintiff; (3) the value of the copyright; (4) the deterrent effect on others besides the defendant; (5) whether the defendant's conduct was innocent or willful; (6) whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; and (7) the potential for discouraging the defendant." <u>Id.</u> (internal quotations and citations omitted). Accordingly, the Court's analysis below applies to both Axiom's trademark and copyright infringement claims.

"The Court has wide discretion to set an amount of statutory damages." <u>Tiffany (NJ), LLC v. Dongping</u>, No. 10-61214, 2010 WL 4450451, at *6 (S.D. Fla. Oct. 29, 2010)(citations omitted). Further, "[i]n its broad discretion for determining statutory damages, the district court should consider both the willfulness of the defendant's conduct and the deterrent value of the sanction imposed." <u>Cable/Home Commc'n Corp. v. Network Prods., Inc.</u>, 902 F.2d 829, 852 (11th Cir. 1990).

Regarding the first factor, "the expenses saved and the

profits reaped," the Defendants' refusal to produce requested discovery regarding their sales of infringing machines and profits generated therefrom has been oft-litigated and well-documented in this case and need not be further belabored here. (See Doc. ## 67, 143, 268, 287, 288, 316, 317). Consequently, the record does not contain sufficient evidence to determine the extent of the profits reaped and expenses saved as a result of these Defendants' infringing activities, thus necessitating Axiom's election of statutory damages against them.[2] See Tiffany (NJ), LLC, 2010 WL 4450451, at *6 ("Congress enacted a statutory damages remedy in trademark counterfeiting cases, because evidence of a defendant's profits in such cases is almost impossible to ascertain.")(citing S. REP. NO. 104-177, pt. V(7)(1995)). Likewise, there is insufficient evidence in the record for the Court to evaluate the third factor, "the value of the

---

[2]     The Court notes that Defendant Ren testified during trial that the Ryzur Defendants did not make a profit during the relevant time period (Trial Tr. Doc. # 359 at 153). However, Ren's testimony also contains contradictory statements -- namely, that machines installed in hospitals generated approximately $1,500 per month of profit for the Ryzur Defendants and that the profit margin on machines the Ryzur Defendants sold was between 10 and 15 percent. (Id. at 174-75, 182, 185). Furthermore, the record does not contain documentary evidence or other testimony that corroborates Ren's assertion that the Ryzur Defendants did not reap a profit.

trademarks and copyrights." For these same reasons, the sixth factor, "whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced," undermines the Defendants' assertion that damages at the statutory minimum are all that are warranted here. See Microsoft Corp. v. Moss, No. 1:06-cv-1670, 2007 WL 2782503, at *7 (N.D. Ga. Sept. 20, 2007)(awarding $10,000 per trademark and $5,000 per copyright upon finding it "difficult to gauge the scale of [d]efendants' infringing conduct because they have not created or maintained sufficient business records" such that "[t]he court cannot determine how many times they distributed unauthorized Microsoft software.").

Although the Court believes that an award at the minimum level would be insufficient here, several of the other factors to be considered militate against an award anywhere near the maximum end of the spectrum. Regarding the second factor, "the revenues lost by the plaintiff," the Court cannot conclude that the Defendants' use of Axiom's trademarks caused Axiom to suffer any lost revenue. Indeed, Gibson admitted at trial that Axiom has not manufactured, exported, or sold any machines for the past few years (Trial Tr. Doc. # 358 at 126), and consequently, did not have any revenue in 2011 or 2012

-23-

(<u>Id.</u> at 123-24).

The important fifth factor, "whether the defendant's conduct was innocent or willful," necessitates an award toward the lower end of the statutory range.  Significant statutory damages awards generally have been reserved for cases of blatantly intentional and willful infringement, which this case does not present.  <u>See, e.g.</u>, <u>Lynch</u>, 2013 WL 2897939, at *6 (awarding $100,000 per trademark willfully infringed); <u>Rolex Watch USA, Inc. v. Lizaso-Rodriquez</u>, No. 1:11-cv-23986, 2012 WL 1189768, at *4 (S.D. Fla. Apr. 9, 2012)(awarding $50,000 per trademark where conduct was intentional and willful); <u>Microsoft Corp. v. Silver Star Micro, Inc.</u>, No. 1:06-cv-1350, 2008 WL 115006, at *9 (N.D. Ga. Jan. 9, 2008)(awarding $25,000 per trademark and $30,000 per copyright where conduct was flagrant and purposeful).  As the Court previously has determined in its ruling on Axiom's claim for fraud on the USPTO, the evidence shows that the Defendants' use of the trademarks and copyrights stemmed from their subjective belief that HTRD acquired ownership of the intellectual property, and not from a willful intention to infringe trademarks and copyrights known to rightfully belong to Axiom.

Based on this assessment of the above-listed factors, the

-24-

Court finds the case of Microsoft Corp. v. Moss sufficiently analogous as to be instructive on the measure of statutory damages appropriate here.  2007 WL 2782503, at *1 (N.D. Ga. Sept. 20, 2007).  As in the instant case, the defendants in Moss produced insufficient business records for the plaintiff and the court to determine the extent of the infringing conduct and the profits the defendants reaped from sales of infringing products.  Id. at *7.  Like the Defendants in this case, the Moss defendants were not deemed to have willfully infringed the plaintiff's trademarks.  Id.  Recognizing that "[t]he Copyright Act and the Lanham Act authorize a statutory range of damages so that courts may tailor awards to the scope of the conduct and the culpability of the defendant[,]" the Moss court awarded $10,000 per trademark and $5,000 per copyright as statutory damages for the defendants' infringement.  Id.  Based on these analogous facts, this Court determines that the same measure of statutory damages is warranted in this case.

Therefore, the Court awards $10,000 for each of the five trademarks per defendant and $5,000 for each of the three copyrighted works per defendant as statutory damages here. Accordingly, Axiom is awarded $50,000 in statutory damages for trademark infringement and $15,000 in statutory damages for

copyright infringement against each of the following Defendants, severally: HTRD, Musallam, Ren, Ryzur Medical, Anhui Ryzer, and Beijing Ryzur.

An award of this amount adequately compensates Axiom in light of the relevant factors analyzed above, and also accomplishes the purposes of the remaining two factors -- the fourth factor, "the deterrent effect on others besides the defendants," and the seventh factor, "the potential for discouraging the defendant."

Regarding the fourth factor, the Court notes that this is not a typical counterfeiting case in which a plaintiff's product is easily duplicated and sold to the public at large, such that the need for deterring potential future infringers is nearly as paramount as punishing the current infringer. See, e.g., Lynch, 2013 WL 2897939, at *6; Chanel, Inc. v. Route' Ltd., LLC, No. 8:06-cv-1636, 2006 WL 3842208 (M.D. Fla. Dec. 8, 2006). The products in this case are relatively large and complex pieces of medical machinery and, thus, are not easily duplicated. The products are targeted for sale to a specific and limited subset of the medical community, such that the potential audience and incentive for infringing products is narrow. The Court believes the potential for future infringement by others besides the Defendants to be

relatively low, such than an award greater than that prescribed above is not necessitated here.

Finally, regarding the seventh factor, the Court is mindful that "[t]he statutory damages provision serves to sanction or punish defendants in order to deter future wrongful conduct." WFTV, Inc. v. Maverik Prod. Ltd. Liab. Co., No. 6:11-cv-1923, 2013 WL 3119461, at *13 (M.D. Fla. June 18, 2013)(citing St. Luke's Cataract & Laser Inst., P.A. v. Sanderson, 573 F.3d 1186, 1204-05 (11th Cir. 2009)). The Court is satisfied that statutory damages in the amount of $65,000 against each of these Defendants, coupled with the injunctive relief ordered herein, will serve as a sufficient deterrent against any future wrongful conduct by these Defendants.

Based on the relevant factors discussed above and the circumstances of this case, the Court finds that statutory damages in the amount of $65,000 for trademark and copyright infringement against HTRD, Musallam, Ren, Ryzur Medical, Anhui Ryzer, and Beijing Ryzur, severally, is an appropriate, just, and reasonable award. Additionally, Musallam has been found liable for the infringing use of two internet domain names, www.axiomworldwide.co and www.drx900truth.com, under 15 U.S.C. § 1125(d). As explained above, 15 U.S.C. § 1117(d) allows the

Court to award statutory damages of not less than $1,000 or more than $100,000 per infringing domain name.  For the same reasons articulated above, the Court finds that an award of $10,000 per domain name, for a total of $20,000, is warranted in this case.  See Tiffany (NJ), LLC, 2010 WL 4450451, at *6 (awarding $10,000 per infringing domain name); K.S.R. X-Ray Supplies, Inc. v. S.E. X-Ray, Inc., No. 09-81454, 2010 WL 4317026, at *7 (S.D. Fla. Oct. 25, 2010)(finding $10,000 per domain name to be appropriate statutory damages amount); Taverna Opa Trademark Corp. v. Ismail, No. 08-20776, 2010 WL 1838384, at *3 (S.D. Fla. May 6, 2010)(awarding $10,000 in statutory damages per domain name); Victoria's Cyber Secret v. V Secret Catalogue, Inc., 161 F. Supp. 2d 1339, 1356 (S.D. Fla. 2001)(awarding $10,000 for each of the four internet domain names registered).  Accordingly, the statutory damages awarded against Musallam total $85,000.

### 2.  **Actual Damages**

The Lanham Act also provides that, "subject to the principles of equity, a successful plaintiff may recover: (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) costs of the action." Optimum Techs., Inc. v. Home Depot U.S.A., Inc., 217 F. App'x 899, 902 (11th Cir. 2007)(citing 15 U.S.C. § 1117(a)).  "The Court has wide

discretion in assessing these damages, which may be awarded even when they are not susceptible to precise calculations." Nutrivida, Inc. v. Inmuno Vital, Inc., 46 F. Supp. 2d 1310, 1315 (S.D. Fla. 1998)(citing Ramada Inns, Inc. v. Gadsden Motel Co., 804 F.2d 1562, 1564-65 (11th Cir. 1986)).

"In assessing the amount of an infringer's profits, 'the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed.'" Nutrivida, Inc., 46 F. Supp. 2d at 1315 (quoting 15 U.S.C. § 1117(a)). "The Lanham Act thus squarely places the burden of proof on the infringer to establish any deductions from its gross sales in order to arrive at the correct profit figure. Moreover, under the Lanham Act and the common law, it is the infringer's burden to prove any proportion of its total profits which may not have been due to the infringement." Id. (citations omitted). "Thus, the plaintiff need only prove gross sales and then it is up to the infringer to prove which, if any, of those sales were not attributable to the wrongful act, and deductible costs and expenses to arrive at net profits." Id. at 1315-16 (citations and internal quotations omitted). "Any doubts about the actual amount of gross sales or profits will be resolved against the infringing party." Id. at 1316.

Axiom proceeded to trial seeking actual damages from Excite Medical for trademark infringement, unfair competition, and copyright infringement. At trial, Axiom submitted records from Excite Medical's Quickbooks reflecting what Axiom claims are Excite Medical's revenues for the relevant period. (Pl.'s Ex. # 21). Excite Medical introduced its own documentation from its Quickbooks records for the same time period, which often reflect different numbers than those on the records supplied by Axiom. (Defs.' Ex. ## 13-17). For example, the document titled "Profit & Loss, January through December 2010" submitted by Axiom reflects sales revenue for that period in the amount of $614,233.47, while the document with the same title supplied by Excite Medical reflects sales revenue in the amount of $654,527.80. (Pl.'s Ex. # 21 at 2; Defs.' Ex. # 13 at 2). This is one of numerous instances in which the numbers on the Quickbooks records submitted by each party do not match.

During trial, Musallam testified that Excite Medical purchased new machines from the Ryzur Defendants for $30,000 per machine and re-sold them to its distributors for between $55,000 and $115,000 per machine depending on the distributor, for a profit of $25,000 to $85,000 per machine sold. (Trial Tr. Doc. # 359 at 77-81, 136). Musallam admitted to selling

24 machines during the relevant time period. (Id. at 80-81). Therefore, the Court finds that Axiom has sufficiently established that Excite Medical made a profit on the sale of new machines of between $600,000 (24 machines x $25,000 profit per machine = $600,000) and $2,040,000 (24 machines x $85,000 profit per machine = $2,040,000).

The only evidence supplied by Excite Medical to show sales not attributable to its infringing acts or to show any deductible costs and expenses is its Quickbooks records. (Defs.' Ex. ## 13-17). Given the unexplained inconsistencies in the versions of the Quickbooks records submitted by the parties, the Court finds that Excite Medical has not met its burden of proving that any portion of its sales were not attributable to its wrongful acts or that its sales included deductible costs and expenses.

The Court finds that the possible range of actual damages recoverable from Excite Medical is $600,000 to $2,040,000. As Axiom has proven only a possible range of Excite Medical's profits from its sale of infringing devices, the Court will, in its discretion, award damages at the midpoint of the estimated range, in the amount of $1,320,000 against Excite Medical.

Additionally, Axiom seeks damages for the costs of

curative advertising. "A plaintiff may recover damages for corrective advertising expenses." <u>Pandora Jewelers 1995, Inc. v. Pandora Jewelry, LLC</u>, No. 09-61490, 2011 WL 2295269, at *4 (S.D. Fla. June 8, 2011). Axiom introduced into evidence at trial a compilation of the estimated costs of running full-page advertisements for twelve months in nine medical journals, totaling $20,884. (Pl.'s Ex. # 39). The Court finds that $20,884 in damages for curative advertising is reasonable and warranted in this case.

### B.  Default Judgment Damages

Axiom claims it has sustained additional damages as a result of Musallam's breach of his confidentiality agreement with Axiom and as a result of Musallam's and Excite Medical's misappropriation of its trade secrets and intentional inference with its business relationships. Axiom submits that its damages for the entire case total $10,000,000, "thereby indirectly asserting that it has incurred approximately $3,553,596 in additional damages related to these ancillary claims." (Doc. # 362 at 36). However, Axiom agrees that the record does not support a damages award in that amount. (<u>Id.</u> at 33-38). Instead, Axiom submits that "the most equitable way to address the fact of additional damages resulting from the conduct underlying these claims is to cancel the judgment

-32-

rendered against Axiom" in favor of non-party Eastgroup Properties, LP in a separate and unrelated case. (Id. at 38). This judgment, in the amount of $205,537.72, plus costs and post-judgment interest from April 20, 2010, was assigned to Musallam on June 4, 2013. (Doc. # 344).

As discussed above, the Court has found that Axiom is entitled to a default judgment against Excite Medical and Musallam on its claims for misappropriation of trade secrets and interference with business relationships and against Musallam for breach of confidentiality agreement. However, it appears that the damages Axiom has suffered as a result of these actions are part and parcel of the damages Axiom has suffered as a result of the trademark and copyright infringement committed by the Defendants. Thus, the Court finds that Axiom has not proven its entitlement to any additional damages from Excite Medical and Musallam on these claims, and declines to cancel the judgment rendered against Axiom in the separate, unrelated proceeding.

First, regarding Axiom's tortious interference claim, the Court has found that Axiom is entitled to a default judgment establishing that Excite Medical and Musallam interfered with Axiom's contract with OOO Axioma, defined in the amended complaint as "the Russian company with legal rights to Axiom

Inc.'s 510(k)s, Trademarks, Intellectual Property and products related to same" (Doc. # 20 at ¶ 11), and its contract with "a Chinese partner company that continues to have the exclusive rights to Axiom Inc.'s products in China" (Id. at 9). However, Axiom did not introduce at trial any evidence regarding damages suffered as a result of interference with these two contracts. Axiom contends that the evidence proves "the approximate profit of between $275,000 and $935,000 related to the 11 machines sold to Axiom's former distributors in Korea[] and Equador (sic), which ceased working with Axiom and began purchasing from Excite Medical." (Doc. # 362 at 37-38). Axiom's contracts with its distributors in Korea and Ecuador are not included in its tortious interference claim in the amended complaint. Thus, any damages relating to those contracts have no bearing on damages from the two contracts that are the subject of Axiom's interference claim. Consequently, the Court finds that Axiom has failed to prove entitlement to damages on its interference claim.

Next, regarding Axiom's trade secrets misappropriation claim, "[d]isgorgement of a defendant's profits is an appropriate remedy . . . ." Sensormatic Elecs. Corp. v. TAG Co. US, LLC, 632 F. Supp. 2d 1147, 1187 (S.D. Fla. 2008). However, as discussed above, the Court has already awarded

-34-

Excite Medical's profits as actual damages on Axiom's trademark and copyright infringement claims. Accordingly, the Court finds that Axiom is not entitled to any additional relief on its trade secrets misappropriation claim.

Finally, the Court has found that Axiom is entitled to a default judgment against Musallam for breach of the confidentiality agreement he signed while employed by Axiom. Although Axiom has not supplied a copy of the actual agreement executed by Musallam, Axiom has provided a copy of its standard confidentiality agreement which Musallam has admitted signing. (Pl.'s Ex. # 42). The agreement contains a "Liquidated Damages" provision which states as follows:

> Disclosee agrees that if Disclosee shall violate any of the covenants under this Agreement, Disclosee shall pay to Axiom as liquidated damages and in full settlement for any claims for damages, the sum of Five Million Dollars ($5,000,000.00) per breach for each and every breach of the Agreement. The parties recognize that the damages to Axiom in the event of a breach of this Agreement by the Disclosee would be extremely difficult and impracticable to ascertain, and that therefore, the foregoing amount is a reasonable estimate of the damages and does not constitute a penalty.

(Id. at ¶ 7).

"It is well settled that in Florida the parties to a contract may stipulate in advance to an amount to be paid or retained as liquidated damages in the event of a breach."

-35-

Lefemine v. Baron, 573 So. 2d 326, 328 (Fla. 1991).  However,
"[p]enalty provisions disguised as liquidated damages
provisions have long been found to be unenforceable in
Florida."  Coleman v. B.R. Chamberlain & Sons, Inc., 766 So.
2d 427, 429 (Fla. 5th DCA 2000).  The Florida Supreme Court
has established a "test as to when a liquidated damages
provision will be upheld and not stricken as a penalty
clause." Lefemine, 573 So. 2d at 328. "First, the damages
consequent upon a breach must not be readily ascertainable.
Second, the sum stipulated to be forfeited must not be so
grossly disproportionate to any damages that might reasonably
be expected to follow from a breach as to show that the
parties could have intended only to induce full performance,
rather than to liquidate their damages." Id.

      The Court finds that the second prong is not met here,
because the amount of liquidated damages called for by the
confidentiality agreement, $5,000,000, is grossly
disproportionate to any actual damages Axiom could reasonably
have incurred as a result of the breach by Musallam,
especially given the evidence showing that Axiom has not
generated any revenue or made any sales for the past few
years.  Therefore, the Court finds that the confidentiality
agreement's liquidated damages provision is a penalty and

-36-

thus, is unenforceable. See Coleman, 766 So. 2d at 430 (holding liquidated damages provision in noncompetition agreement unenforceable as a penalty where provision would compensate employer significantly more than the actual amount of its damages). Furthermore, Axiom has not proven any actual damages specifically attributable to Musallam's breach of the confidentiality agreement that are separate and apart from those damages already awarded. Accordingly, the Court finds that Axiom is not entitled to any additional damages on its claim against Musallam for breach of the confidentiality agreement.

Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED:**

(1) The stipulation between Axiom and Eltech (Doc. # 349), and the oral stipulation to amend the permanent injunction (Trial Tr. Doc. # 359 at 195-197) are hereby **ACCEPTED.** Eltech is declared to have infringed Axiom's trademarks and copyrights and engaged in unfair competition including falsely designating the origin of the products they have manufactured, sold, offered for sale, distributed, or advertised in commerce.

(2) Axiom's claim for fraud on the USPTO against Excite Medical and Musallam is **DISMISSED WITHOUT PREJUDICE**

pursuant to Rule 41(a)(2), Federal Rules of Civil Procedure.

(3) Axiom's Motion for Default Judgment (Doc. # 331) is **GRANTED** as to Axiom's claims for misappropriation of trade secrets and intentional interference with business relationships against Excite Medical and Musallam and as to Axiom's claim for breach of confidentiality agreement against Musallam.

(4) HTRD's oral motion to strike Plaintiff's exhibit 23 (Doc. # 351) is **DENIED AS MOOT.**

(5) Defendants Ryzur Medical, Beijing Ryzur, Anhui Ryzur, HTRD, David Ren, Excite Medical, Saleem Musallam and Eltech are ordered to return and/or transfer to Axiom all of Axiom's proprietary information currently in their possession, including but not limited to, design drawings and schematics, FDA device history files and records, computer software or firmware, hard drives, computer servers, CDs, flash drives, external storage drives, or any other device containing electronically stored information that was the subject of this case, counterfeit replacement parts, counterfeit finished machines, including but not limited to, new counterfeit machines or "parts kits" for new counterfeit machines,

used machines that were "refurbished" using Axiom's proprietary information and all marketing kits or other photographs, videos, or marketing materials or derivations thereof.

(6) Defendants Ryzur Medical, Beijing Ryzur, Anhui Ryzur, HTRD, David Ren, Excite Medical, Saleem Musallam and Eltech are ordered to notify anyone to whom they have previously made representations concerning Axiom's or HTRD's ownership of any of the intellectual property or proprietary information that this Court has determined belongs to Axiom or to whom they have made representations concerning the right to sell the DRX9000™, DRX9000C™, DRX9000 Combo™ or DRX9500™ of this injunction by written service upon such people by e-mail or mail, and shall, within thirty (30) days of receipt of this Order, certify to this Court that this has been done. Such certification shall be under oath and include a list of all who have been served along with the method of service and the address where served.

(7) Defendants Ryzur Medical, Beijing Ryzur, Anhui Ryzur, HTRD, David Ren, Excite Medical, Saleem Musallam and Eltech are ordered to file with this Court an affidavit stating that they have returned and/or transferred to

-39-

Axiom all of Axiom's proprietary information currently in their possession, including but not limited to, design drawings and schematics, FDA device history files and records, computer software or firmware, hard drives, computer servers, CDs, flash drives, external storage drives, or any other device containing electronically stored information that was the subject of this case, counterfeit replacement parts, counterfeit finished machines, including but not limited to, new counterfeit machines or "parts kits" for new counterfeit machines, used machines that were "refurbished" using Axiom's proprietary information and all marketing kits or other photographs, videos, or marketing materials or derivations thereof, and, the affidavit of each Defendant must also state that no copies of any of the information has been retained by them.  This affidavit shall also be filed with the Court within thirty (30) days following the date of this order.

(8)   The internet domain names www.axiomworldwide.co (not .com), www.drx9000truth.com and www.drx9000.ru shall be transferred to the ownership of Axiom, or in the alternative, shall be taken down and shall cease being

used by anyone for any purpose on the internet or
worldwide web.

(9) Defendants HTRD and Excite Medical are ordered to notify
the United States FDA of this order and are further
ordered to "delist" and disassociate themselves and their
establishments from any and all of Axiom's US FDA 510(k)s
that were the subject of this action.

(10) Defendants Ryzur Medical, Beijing Ryzur, Anhui Ryzur,
HTRD, David Ren, Excite Medical, Saleem Musallam and
Eltech, their agents, representatives, assigns or
successors in interest, and all others acting through,
under, or in concert with them upon whom service of this
Order is made or who have actual knowledge of it, are
hereby permanently restrained and enjoined from:

(a) Using any of Axiom's US FDA 510(k) premarket
clearances for any of Axiom's spinal decompression
machines or other medical devices for any purpose;

(b) Using any of Axiom's marks, trademarks, trade
names, or logos, or any mark, trademark, trade
name, or logo that is confusingly similar to
Axiom's marks, trademarks, trade names, or logos;

(c) Otherwise infringing Axiom's trademarks or using
any similar designation, alone or in combination

-41-

with any other components;

(d)   Causing   a   likelihood   of   confusion   or
misunderstanding as to the source or sponsorship of
its businesses, products, or services as being
Axiom's   and/or   its   authorized   licenses   or
distributors;

(e)   Causing   a   likelihood   of   confusion   or
misunderstanding as to its affiliation, connection,
or   association   with   Axiom   and   its   authorized
licensees   or   distributors   or   any   of   Axiom's
products or services;

(f)   Using   the   terms   "DRX9000,"   "Axiom   Worldwide,"
"DRX,"   or   the   Axiom   Worldwide   logo   for   any
commercial   purpose   including   correspondence,
marketing materials, educational materials, or in-
person   sales   pitches   related   to   the   marketing,
sale, distribution, service, or "refurbishing" of
spinal decompression tables;

(g)   Making   representations   that   they   own   or   are
authorized   to   use   any   of   the   trademarks   or
intellectual   property   rights   and   proprietary
information this Court has found belong to Axiom;

(h) Using the intellectual property or proprietary information the Court has found belongs to Axiom in the building, servicing, "refurbishing," marketing, or selling of spinal decompression tables or other durable medical equipment of any kind;

(i) Using or copying any of Axiom's copyrighted materials or otherwise infringing on Axiom's copyrights to the designs, drawings, software, firmware, component parts, or other portions of products that Axiom has marketed and placed into the stream of commerce under Axiom's trademarks, including all derivations and combinations thereof including but not limited to the DRX9000™, DRX9000C™, DRX9000 Combo™ and the DRX9500™ or any other Axiom DRX™ or other product including all component parts and proprietary software or firmware related thereto;

(j) Unfairly competing with Axiom in any manner, including falsely designating the origin of the products the Defendants have placed, or place in the future, into the stream of commerce, including but not limited to, falsely claiming to be the manufacturer or contract manufacturer of Axiom's

products, falsely claiming to be a factory approved service center for Axiom's products, falsely claiming that they are authorized by Axiom to perform service on Axiom's products or that they are able to perform service or repair to Axiom's products using Axiom's proprietary software, drawings, or design schematics, falsely claiming to be able to provide genuine Axiom replacement parts, falsely claiming to be authorized or capable of "refurbishing" used machines to current Axiom specifications, or unfairly competing with Axiom in any manner or using any of the property that was the subject of this case in any manner; and

(k) Using any of the intellectual property or other proprietary information that this Court has determined belongs to Axiom for any purpose whatsoever.

(11) In addition to the equitable relief set forth above, Axiom is also entitled to recover damages from Ryzur Medical, Beijing Ryzur, Anhui Ryzur, HTRD, David Ren, Excite Medical, and Saleem Musallam as set forth herein and below:

(a) Axiom shall recover from Beijing Rong Da Shun Da Trading Co., Ltd a/k/a Ryzur Medical a total of $65,000 ($50,000 (5 trademarks x $10,000 per mark infringed) plus $15,000 (3 copyrights at $5,000 per copyright infringed)) not including costs and attorneys' fees;

(b) Axiom shall recover from Beijing Ryzur Axiom Medical Investment Co., Ltd a total of $65,000 ($50,000 (5 trademarks x $10,000 per mark infringed) plus $15,000 (3 copyrights at $5,000 per copyright infringed)) not including costs and attorneys' fees;

(c) Axiom shall recover from Anhui Ryzur Axiom Medical Equipment Co. Ltd. a total of $65,000 ($50,000 (5 trademarks x $10,000 per mark infringed) plus $15,000 (3 copyrights at $5,000 per copyright infringed)) not including costs and attorneys' fees;

(d) Axiom shall recover from HTRD Group Hong Kong Ltd. a/k/a HTRD Group Hong Kong Limited, Inc. a total of $65,000 ($50,000 (5 trademarks x $10,000 per mark infringed) plus $15,000 (3 copyrights at $5,000 per copyright infringed)) not including costs and

-45-

attorneys' fees;

(e)    Axiom shall recover from David Ren a total of $65,000 ($50,000 (5 trademarks x $10,000 per mark infringed) plus $15,000 (3 copyrights at $5,000 per copyright infringed)) not including costs and attorneys' fees;

(f)    Axiom shall recover from Saleem Musallam a total of $85,000 ($50,000 (5 trademarks x $10,000 per mark infringed) plus $15,000 (3 copyrights at $5,000 per copyright infringed) plus $20,000 (2 domain names at $10,000 per infringing domain name)) not including costs and attorneys' fees; and

(g)    Axiom shall recover against Excite Medical a total of $1,340,884 ($1,320,000 in actual damages and $20,884 in damages for curative advertising) not including costs and attorneys' fees.

(12) The Clerk is directed to enter judgment in favor of Axiom for the injunctive relief and damages as set forth above.

(13) The Clerk is directed to furnish a certified copy of this Order to the U.S. Patent and Trademark Office.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>31st</u> day of July, 2013.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies:    All Counsel and Parties of Record

           U.S. Patent and Trademark Office