[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-13900

_____

D.C. Docket No. 8:11-cv-01468-VMC-TBM


AXIOM WORLDWIDE, INC.,
a Florida corporation,

                                                Plaintiff - Counter
                                                Defendant - Appellee,

versus

EXCITE MEDICAL CORP.,
SALEEM N. MUSALLAM,

                                                Defendants - Counter
                                                Claimants - Appellants.

_____

Appeals from the United States District Court
for the Middle District of Florida

_____

(November 17, 2014)

Before WILSON and ROSENBAUM, Circuit Judges, and SCHLESINGER,[*] District Judge.

ROSENBAUM, Circuit Judge:

Billy Preston and Bruce Fisher could have been talking about Appellants Excite Medical Corporation ("EMC") and Saleem N. Musallam's trademark rights for Axiom Worldwide, Inc.'s DRX9000, DRX9000C, and DRX9500 medical products when they wrote the lyric, "Nothin' from nothin' leaves nothin'."[1]  EMC and Musallam claim their trademark rights in the products at issue based on their relationship with HTRD Group Hong Kong Limited, which, in turn, claims its trademark rights from Michael Leutgert and Associates, which, in turn, succeeded to all of the interests of Axiom Worldwide, LLC ("Axiom, LLC").

The problem is, Axiom, LLC, never owned trademark rights in the medical products.  Instead, Appellee, the separate company Axiom Worldwide, Inc. ("Axiom, Inc."), owns and has always owned the trademarks.  So Axiom, LLC, started with nothing in the trademark department and passed that same nothing down, all the way to Appellants.  As a result, when Axiom, Inc., filed suit against Appellants and HTRD for, among other claims, trademark infringement, the district court decided against Appellants and ordered Appellants to pay Axiom,

_____

[*] Honorable Harvey E. Schlesinger, United States District Judge for the Middle District of Florida, sitting by designation.
[1] Billy Preston & Bruce Fisher, "Nothing from Nothing," recorded by Preston on *The Kids and Me* (A&M Record 1974).

2

Inc., $1.32 million in lost-profit damages stemming from Appellants' infringement of Axiom, Inc.'s trademarks.

Also, during the course of the proceedings, the district court sanctioned Appellants for discovery misconduct by striking their pleadings and entering default judgments on several claims.  On appeal, EMC and Musallam contest the determination that they do not enjoy trademark rights, the awarding of and amount of damages, and the discovery sanctions.  Because we agree with the district court (and Billy Preston and Bruce Fisher, for that matter) that nothin' from nothin' leaves nothin',[2] and because we find no error in any of the district court's other challenged rulings, we affirm.

## I.

### A. History of the Prior Litigation

In order to address the parties' issue-preclusion dispute, it is first necessary to review the circumstances that gave rise to and were considered during the prior litigation involving the trademark-ownership issue.  Axiom, Inc., is a Florida corporation that develops, manufactures, and sells medical products around the world.  Axiom, Inc.'s "flagship" product is the DRX9000, a device that treats back pain.  Axiom, Inc., also developed and marketed a similar device for treating neck pain called the DRX9000C or DRX9500.  Between 2003 and 2005, Axiom, Inc.,

---

[2] *See also Walter Int'l Prods., Inc. v. Salinas*, 650 F.3d 1402, 1420 & n.14 (11th Cir. 2011).

registered five trademarks related to these devices with the U.S. Patent and Trademark Office ("USPTO").

In December 2005, Axiom, LLC, was established in connection with a proposed sale of assets to a group of investors.  Axiom, Inc., executed a Warranty Bill of Sale on February 19, 2007, transferring to Axiom, LLC, its "right, title and interest in and to all of [Axiom, Inc.'s] raw materials inventory, finished goods inventory, computer equipment, leasehold improvements, machinery, equipment, furniture, fixtures and goodwill."  The Bill of Sale was made retroactive to January 3, 2006.

Following the creation of Axiom, LLC, both that company and Axiom, Inc., "became embroiled in a myriad of litigation fronts from competitors and regulatory bodies alike."   In one suit, styled *North American Medical Corp. v. Axiom Worldwide, Inc.*, No. 1:06-cv-01678-CCH (N.D. Ga. July 14, 2006) (the "Atlanta Case"), North American Medical Corporation ("North American"), a competing manufacturer of spinal-pain medical devices, sued Axiom, Inc., for, among other things, trademark infringement.  North American's suit was filed on July 14, 2006—prior to the execution of the bill of sale, but after its effective date. Eventually, North American amended its complaint to add Axiom, LLC, as a party, and on January 27, 2009, Axiom, LLC, answered, asserting a variety of counterclaims—including a claim for infringement of its trademarks—against

4

North American.  While Axiom, Inc., was a co-defendant in North American's original claims, it was not a party to Axiom, LLC's counterclaim against North American.

North American moved for partial summary judgment, arguing on the trademark issue that Axiom, LLC, lacked standing because Axiom, Inc., never transferred the trademarks to the LLC.  Axiom, LLC, responded by arguing, among other things, that the bill of sale was intended to convey all of Axiom, Inc.'s assets to the LLC, including the trademarks.  On June 25, 2010, the district court in Atlanta ruled in favor of North American, noting both that the USPTO records current at the time indicated Axiom, Inc., was the owner of the trademarks, and that "the 2007 Warranty Bill of Sale did not, by its terms, transfer Axiom Inc.'s trademarks, or any intellectual property rights, to Axiom LLC."  *N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, No. 1:06-cv-01678-CCH, slip op. at 8-9 (N.D. Ga. June 25, 2010) (ECF No. 846).  Eventually, the parties voluntarily dismissed the Atlanta Case, but in doing so, the parties explicitly stipulated (and the court adopted) that the summary judgment order against Axiom, LLC, would remain binding.  *Id.*, slip op. at 2 (N.D. Ga. Apr. 13, 2012) (ECF No. 974).  In sum, at the conclusion of the Atlanta Case, Axiom, Inc., was the recognized owner of the trademarks at issue here.

*B. The Succession of Interests*

In September 2008, Axiom, LLC, borrowed money from Progress Bank, N.A., and, in exchange, granted Progress Bank a security interest in all of Axiom, LLC's assets. Progress Bank eventually sued Axiom, LLC, in Florida state court, seeking to foreclose on the assets after Axiom, LLC, defaulted on the loan. Progress Bank obtained a judgment in its favor, but that judgment was reversed on jurisdictional grounds. Axiom, LLC, then filed a petition for the "Assignment for Benefit of Creditors to Michael Luetgert and Associates," seeking assignment of all of Axiom, LLC's assets to Luetgert. Leutgert was then authorized to sell Axiom, LLC's assets to Progress Bank.

On July 2, 2010, Luetgert executed a bill of sale to transfer all assets in his possession—that is, all of the assets formerly belonging to Axiom, LLC—to Progress Bank. Axiom, Inc., was not involved in connection with any of these proceedings. Two weeks later, Progress Bank sold all of the assets it acquired from Luetgert to HTRD Group Hong Kong Limited ("HTRD"), a foreign corporation authorized to do business in Florida, via an "as is" and "where is" "Quit Claim Bill of Sale and Assignment." HTRD, a co-defendant with EMC and Musallam below, admits that it was aware of the Atlanta Case and the summary-judgment order regarding trademark ownership at the time it executed the quitclaim bill of sale. HTRD nevertheless filed paperwork with the USPTO to transfer the trademarks to its name.

Although the full scope of the commercial relationship between HTRD and the two Appellants, EMC and Musallam, is not entirely clear, it is undisputed that HTRD and EMC jointly filed paperwork with the Food and Drug Administration allowing EMC to become a "contract manufacturer" for the DRX devices.  EMC is an authorized distributor of the DRX devices for HTRD.  Musallam also testified that he gets his rights to sell the DRX machines from HTRD.  In addition, Musallam is the United States-based agent for HTRD, the owner of EMC, and a former employee of Axiom, Inc.

## C. The Current Lawsuit

Axiom, Inc., filed the lawsuit giving rise to this appeal in July 2011, suing multiple defendants, including the two Appellants—EMC and Musallam—and HTRD.  Axiom, Inc., seeks a declaration that it is the owner of the trademarks and also alleges that the defendants infringed its trademarks and copyrights, engaged in unfair competition, perpetrated fraud on the USPTO, interfered with business relationships, and misappropriated trade secrets.  Axiom, Inc., also accuses Musallam and others of breaching confidentiality agreements.  HTRD filed a counterclaim asserting that the disputed trademarks belonged to it via the chain of succeeding interests described above.

During the course of the proceedings below, the district court found that EMC and Musallam had engaged in egregious discovery misconduct[3] that had seriously prejudiced Axiom, Inc.'s ability to prosecute its lawsuit.   As a consequence, on June 1, 2013, the district court imposed sanctions against EMC and Musallam under Rule 37 of the Federal Rules of Civil Procedure by striking their pleadings.   In the same order, the district court instructed the clerk to enter defaults against EMC and Musallam on June 3, 2013, and ordered Axiom, Inc., to thereafter file a proper motion for entry of default judgment.

The same day that the district court entered its sanctions order, it also entered an order granting summary judgment in favor of Axiom, Inc., on the issue of trademark ownership.   The district court found that "[t]he identical issue that is central to this case—whether Axiom Inc. transferred the intellectual property to Axiom LLC via the 2007 Warranty Bill of Sale—was actually litigated in the [Atlanta Case] when Axiom LLC attempted to assert a trademark infringement counterclaim against the plaintiff in that case."   *Axiom Worldwide, Inc. v. HTRD Grp. H.K. Ltd.*, No. 8:11-cv-1468-T-33TBM, 2013 WL 2406260, at *6 (M.D. Fla. June 1, 2013).   The district court determined that all of the elements of issue

---

[3] This misconduct included repeatedly disobeying the court's discovery orders, turning over massive amounts of totally nonresponsive documents, destroying a computer server, and potentially altering financial records.  Clearly, the defendants' misconduct warranted some degree of sanctions.  Nevertheless, a full recounting of the defendants' misdeeds is unnecessary because, as explained below, we find that, ultimately, defendants were effectively never sanctioned in the manner they challenge on appeal.

preclusion were met by the prior litigation and that, consequently, Axiom, Inc., was entitled to summary judgment on the ownership issue.

Of note, while Musallam and EMC's cross-motion for summary judgment was stricken from the record by virtue of the discovery sanctions, the district court did consider their defenses to Axiom, Inc.'s motion for summary judgment, noting that "the Court will still analyze Axiom Inc.'s Motion for Summary [*sic*] as it applies to these Defendants." *Axiom Worldwide*, 2013 WL 2406260, at *1. Thus, the district court considered and rejected on the merits the defenses of Musallam and EMC (and the other defendants) to Axiom, Inc.'s issue-preclusion arguments in evaluating Axiom, Inc.'s summary-judgment motion.

Having granted summary judgment to Axiom, Inc., on the ownership issue, the district court then went on to analyze the effect of this holding on Axiom, Inc.'s various claims against all the defendants. With respect to Musallam and EMC, the district court noted that a default judgment would be evaluated at a later time with respect to claims for fraud on the USPTO, misappropriation of trade secrets, and interference with a business relationship. But the district court analyzed the trademark-infringement, copyright-infringement, and unfair-competition claims on the merits with respect to Musallam and EMC, and found them liable on these claims. *See Axiom Worldwide*, 2013 WL 2406260, at *15 n.7 ("As noted above, the Court has stricken [EMC] and Musallam's pleadings and directed the entry of

default against them . . . . However, even without considering the entry of default, the Court finds that Axiom Inc. has established trademark infringement and copyright infringement by [EMC] and Musallam, and, thus, takes this opportunity to address the merits of Axiom Inc.'s Motion for Summary Judgment as to [EMC] and Musallam on these issues."); *id.* at *15-17, *20. The district court never entered a default judgment against EMC and Musallam on the trademark-infringement, copyright-infringement, and unfair-competition claims.

The district court then held a two-day bench trial on the issue of damages. In its order following the trial, the district court confirmed that it had granted summary judgment against EMC and Musallam on the trademark, copyright, and unfair-competition claims, leaving only the USPTO fraud, misappropriation, interference, and confidentiality-agreement claims for resolution on default judgment. With respect to Musallam (and all of the other defendants except EMC), the district court awarded statutory damages for the trademark, copyright, and unfair-competition claims. In deciding the amount of statutory damages, the district court noted that the defendants "subjectively believed" that they had a right to use the trademarks and did not willfully intend to infringe Axiom, Inc.'s marks. The district court awarded $85,000 in statutory damages against Musallam individually for these claims.[4]

---

[4] Musallam does not appeal the award of these damages.

With respect to EMC, the district court awarded actual damages under the Lanham Act.  The district court pointed to Musallam's testimony that he sold twenty-four machines for a profit of $25,000 to $85,000 per machine and calculated the range of possible profits to be $600,000 to $2,040,000.  Then the district court concluded that EMC had not met its burden of proving that any reduction in the profits was warranted, but also determined that Axiom, Inc., had not proven profits with any more specificity than the noted range.  Accordingly, the district court exercised its discretion and set EMC's damages liability at $1,320,000, the midpoint of the profits range.

No separate damages were awarded against EMC and Musallam on the defaulted claims.  Axiom, Inc., dismissed its claim for fraud on the USPTO, and, with respect to the remaining defaulted claims, the district court found that the damages suffered by Axiom, Inc., on those claims were "part and parcel" of the damages suffered due to the trademark claims, thereby declining to award any damages on the defaulted claims.

## II.

This Court reviews a district court's grant of summary judgment *de novo*, considering all the evidence and viewing facts in the light most favorable to the non-moving party.  *Morales v. Zenith Ins. Co.*, 714 F.3d 1220, 1226 (11th Cir. 2013).  "Summary judgment is appropriate only when 'there is no genuine dispute

11

as to any material fact and the movant is entitled to judgment as a matter of law.'"

*Id.* (quoting Fed. R. Civ. P. 56(a)). The preclusive effect of prior litigation is a

question of law subject to *de novo* review.  *See Aldana v. Del Monte Fresh*

*Produce, N.A., Inc.*, 578 F.3d 1283, 1288 (11th Cir. 2009) (citing *Far Out Prods.,*

*Inc. v. Oskar*, 247 F.3d 986, 993 (9th Cir. 2001)).

The preclusive effect of a prior litigation encompasses both claim preclusion

and issue preclusion, terms that are sometimes lumped together under the rubric of

"res judicata."  *Taylor v. Sturgell*, 553 U.S. 880, 892, 128 S. Ct. 2161, 2171

(2008).  Issue preclusion "bars 'successive litigation of an issue of fact or law

actually litigated and resolved in a valid court determination essential to the prior

judgment,' even if the issue recurs in the context of a different claim."  *Id.* (quoting

*New Hampshire v. Maine*, 532 U.S. 742, 748-49, 121 S. Ct. 1808, 1814 (2001)).  In

this Circuit, issue preclusion applies

> when (1) the issue at stake is identical to the one involved
> in the prior litigation; (2) the issue was actually litigated
> in the prior suit; (3) the determination of the issue in the
> prior litigation was a critical and necessary part of the
> judgment in that action; and (4) the party against whom
> the earlier decision is asserted had a full and fair
> opportunity to litigate the issue in the earlier proceeding.

*Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC*, 702 F.3d 1312,

1318 (11th Cir. 2012).  On appeal, EMC and Musallam attack only the fourth

element: whether the party against whom the earlier decision is asserted had a full and fair opportunity to litigate the issue in the earlier proceeding

Ordinarily, issue preclusion is inapplicable against an entity that was not a party to the first suit because that party has not had a full and fair opportunity to litigate the issues settled in that suit. *Taylor*, 553 U.S. at 892-93, 128 S. Ct. at 2171. Applying issue preclusion to nonparties would offend the "deep-rooted historic tradition that everyone should have his own day in court." *Id.* (internal quotation marks and citation omitted).

At least six exceptions to this rule against nonparty preclusion exist, though, the most relevant here being that "nonparty preclusion may be justified based on a variety of pre-existing 'substantive legal relationships' between the person to be bound and a party to the judgment." *Id.* at 894, 128 S. Ct. at 2172. These "relationships include, but are not limited to, *preceding and succeeding owners of property*, bailee and bailor, and *assignee and assignor*," and are sometimes described as "privity." *Id.* at 894 & n.8, 128 S. Ct. at 2172 & n.8 (emphasis added).

EMC and Musallam argue here that HTRD, EMC, and Musallam were not parties to the Atlanta Case and therefore cannot be bound by that court's

determination of the trademark issue.[5]  EMC and Musallam also assert that none of the exceptions identified in *Taylor*, including the exception based on substantive legal relationships, applies here.  But Appellants offer no legal authority supporting their assertion that successors to an interest in property are not bound by the predecessor's prior litigation of the same property issue, regardless of how many links exist in the chain of succession.

The Supreme Court has noted that substantive legal relationships, such as a preceding and succeeding interest in property, are an exception to the rule against nonparty preclusion.  *See Taylor*, 553 U.S. at 894, 128 S. Ct. at 2172.  Here, HTRD is the successor in interest to the assets conveyed (or not conveyed) to Axiom, LLC, by the 2007 Warranty Bill of Sale.  The prior litigation of the issue of whether the trademarks were included in that sale is just as preclusive against HTRD as it would be against Axiom, LLC.  Moreover, since EMC and Musallam's use of the trademarks was necessarily a result of an assignment or license by HTRD, they similarly fall into the substantive-legal-relationship exception.  *See Miller's Ale House*, 702 F.3d at 1317 n.6 ("For purposes of issue preclusion, an

---

[5] Axiom, Inc., urges this Court not to consider the nonparty-preclusion argument because they assert that EMC and Musallam did not raise the argument in the district court.  Generally, this Court does not consider arguments raised for the first time on appeal.  *See Ramirez v. Sec'y, U.S. Dep't of Transp.*, 686 F.3d 1239, 1249 (11th Cir. 2012) (citing *FDIC v. 232, Inc.*, 920 F.2d 815, 817 (11th Cir. 1991) (per curiam)).  However, the decision to consider an argument not raised below is within the discretion of the appellate court, particularly when the argument involves a question of law that requires no further factual development.  *See id.* at 1250 (citations omitted).  Thus, while Axiom, Inc., is arguably correct in its assertion that this argument was not raised below, we will nevertheless exercise our discretion and dispose of the issue, anyway.

assignee of a trademark 'steps into the shoes' of the assignor." (citation omitted)).

Accordingly, as successors-in-interest to Axiom, LLC, EMC and Musallam were

properly precluded from re-litigating the trademark-ownership issue in this case.

Appellants may also be renewing the argument made below that issue

preclusion does not apply because Axiom, LLC, and Axiom, Inc., did not litigate

the trademark-ownership issue *against* each other.  That argument fails.  While

courts do find that issue preclusion is inappropriate when parties were aligned on

the same side in the previous litigation, *see, e.g.*, *Penda Corp. v United States*, 44

F.3d 967, 972-73 (Fed. Cir. 1994), that reasoning is not applicable here.  First, and

most obviously, while Axiom, Inc., and Axiom, LLC, were co-defendants with

respect to North American's claims in the Atlanta case, the relevant claim here

(concerning Axiom, Inc.'s trademarks) is Axiom, LLC's counterclaim against

North American—a claim to which Axiom, Inc., was never a party, either aligned

or adversarial.

Second, the concern about aligned parties goes to the need to preserve a full

and fair opportunity to litigate the issue, which may not exist when parties are

allied against a common adversary.  *See Penda Corp.*, 44 F.3d at 972; *Franklin

Stainless Corp. v. Marlo Transp. Corp.*, 748 F.2d 865, 867 (4th Cir. 1984); *see

also Allen v. McCurry*, 449 U.S. 90, 95, 101 S. Ct. 411, 415 (1980) ("But one

general limitation the Court has repeatedly recognized is that the concept of

collateral estoppel cannot apply when the party against whom the earlier decision is asserted did not have a 'full and fair opportunity' to litigate that issue in the earlier case."). But here, EMC and Musallam advance no serious argument that Axiom, LLC, did not fully and fairly litigate the issue of its trademark ownership in the Atlanta Case. In fact, Axiom, LLC's entire counterclaim in the Atlanta Case depended on its (and not Axiom, Inc.'s) owning of the trademarks.

And finally, to the extent that EMC and Musallam are advancing a mutuality argument—that is, that issue preclusion can apply only if Axiom, Inc., litigated the issue against Axiom, LLC, in the Atlanta suit, and they are the parties re-litigating the issue here—that argument is without merit. The Supreme Court has expressly done away with the mutuality requirement for issue preclusion. *See Allen*, 449 U.S. at 94-95, 101 S. Ct. at 415 (citing *Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 91 S. Ct. 1434 (1971) and *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 99 S. Ct. 645 (1979)) ("Thus, the Court has eliminated the requirement of mutuality in applying collateral estoppel to bar relitigation of issues decided earlier in federal-court suits, . . . and has allowed a litigant who was not a party to a federal case to use collateral estoppel 'offensively' in a new federal suit against the party who lost on the decided issue in the first case . . . ."). Accordingly, Axiom, Inc., a nonparty to the counterclaim in the Atlanta Case, can

16

assert issue preclusion against the successors and assigns of Axiom, LLC, the party that lost on the issue in the Atlanta Case.

For all of these reasons, we find that the district court properly applied the doctrine of issue preclusion to bar EMC and Musallam from re-litigating the issue of trademark ownership.  Axiom, LLC, had a full and fair opportunity to litigate the issue of trademark ownership in the Atlanta Case.  EMC and Musallam, while not themselves parties to the Atlanta Case, are sufficiently in "privity" with Axiom, LLC, through a chain of succeeding interests to make them fall within the well-established substantive-legal-relationship exception to the general rule against nonparty preclusion.  EMC and Musallam are bound by the decision that the trademarks belong to Axiom, Inc.

## III.

This Court reviews a district court's order imposing discovery sanctions under Rule 37, Fed. R. Civ. P., for abuse of discretion.  *Serra Chevrolet, Inc. v. Gen. Motors Corp.*, 446 F.3d 1137, 1146-47 (11th Cir. 2006).  The sanctions must be fully supported by the record; an abuse of discretion occurs when the district court "misconstrues its proper role, ignores or misunderstands the relevant evidence, and bases its decision upon considerations having little factual support." *Id.* at 1147 (quoting *Arlook v. S. Lichtenberg & Co.*, 952 F.2d 367, 374 (11th Cir. 1992)) (internal quotation marks omitted).  However, this Court reviews *de novo*

an argument that sanctions violated a party's due-process rights.  *Id.* (citing

*BankAtlantic v. Blythe Eastman Paine Webber, Inc.*, 12 F.3d 1045, 1050 (11th Cir.

1994).

Rule 37 permits a district court to impose sanctions on a party that "fails to

obey an order to provide or permit discovery."  Fed. R. Civ. P. 37(b)(2)(A).  Such

sanctions include "striking pleadings in whole or in part" or "rendering a default

judgment against the disobedient party."  *Id.* 37(b)(2)(A)(iii), (vi).  Entering a

default judgment as a discovery sanction "is appropriate only as a last resort" and

requires a finding of willfulness or bad faith on the part of the offending party.

*Malautea v. Suzuki Motor Co., Ltd.*, 987 F.2d 1536, 1542 (11th Cir. 1993).

Furthermore, imposing a discovery sanction that is not "specifically related to the

particular claim which was at issue in the order to provide discovery" violates a

party's due-process rights.  *Serra Chevrolet*, 446 F.3d at 1151 (quoting *Ins. Corp.

of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707, 102 S. Ct.

2099, 2107 (1982)) (internal quotation marks omitted).  EMC and Musallam claim

that the district court's sanctions violated their due-process rights because the

pertinent discovery orders related to only sales and financial documents relevant to

the issue of damages and did not relate to their stricken defenses against issue

preclusion.

Although the district court completely struck all of their pleadings from the docket, EMC and Musallam challenge the sanctions as violative of due process on only a single, narrow ground:  the district court's striking of Appellants' issue-preclusion defenses.  EMC and Musallam's argument necessarily fails, though, because the district court never entered a default judgment against them on their issue-preclusion defenses, and, by considering the merits of the issue-preclusion defenses, effectively never even struck these defenses from the record.  The district court granted default judgments against Appellants on only Axiom, Inc.'s claims for misappropriation of trade secrets, intentional interference with business relationships, and breach of the confidentiality agreement.  *See Axiom Worldwide, Inc. v. HTRD Grp. H.K. Ltd.*, No. 8:11-cv-1468-T-33TBM, 2013 WL 3975675, at *15 (M.D. Fla. July 31, 2013).  And as noted above, while the district court struck EMC and Musallam's pleadings, including their motion for summary judgment, the court expressly analyzed on the merits Axiom, Inc.'s motion for summary judgment invoking issue preclusion with respect to EMC and Musallam (and the other defendants).  *Axiom Worldwide*, 2013 WL 2406260, at *1, *6-9.  Because the district court did not grant a default judgment against EMC and Musallam on the issue-preclusion issue, and, by considering the merits, effectively did not strike Appellants' issue-preclusion defenses as a sanction, the due-process claim here lacks any basis.

19

## IV.

The Lanham Act permits a party whose trademark was infringed to recover actual damages, as measured by "(1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." 15 U.S.C. § 1117(a). Such an award is "subject to the principles of equity." *Id.* Accordingly, we have held that courts have "a wide scope of discretion to determine the proper relief due an injured party." *Burger King Corp. v. Mason*, 855 F.2d 779, 781 (11th Cir. 1988) (per curiam). Our review of an award of actual damages under the Lanham Act "is under the abuse of discretion standard, wherein the decision will not be disturbed, unless, upon a weighing of relevant factors, there is a definite and firm conviction that the court below committed a clear error of judgment." *Id.*

## A.

EMC and Musallam argue first that the district court erred by awarding profits as damages because the district court found that the defendants did not willfully infringe Axiom, Inc.'s trademarks. *See Axiom Worldwide*, 2013 WL 3975675, at *8; *Axiom Worldwide*, 2013 WL 2406260, at *11-12. According to EMC and Musallam, a lack of willfulness precludes an award of profits as damages. In support of this proposition, they cite two cases and a treatise on trademark law. But none of the cited authorities support Appellants' proposition.

20

Appellants first cite *Champion Spark Plug Co. v. Sanders*, 331 U.S. 125, 67 S. Ct. 1136 (1947), and argue that injunctive relief is sufficient, and that an accounting of profits is unnecessary, when there has been no showing of fraud or palming off. While *Champion* stands for the proposition that an award of profits is not required to remedy the infringement when the equities of the case dictate that injunctive relief is adequate, *id.* at 130-31, 67 S. Ct. 1139-40, nothing in *Champion* requires a showing of willfulness or fraud as a prerequisite to awarding profits as damages.

Appellants also cite *Burger King*'s language stating that "it is the character of the conduct surrounding the infringement that is relevant," 855 F.2d at 782, to support their assertion that willful infringing conduct is a prerequisite to awarding profits. This portion of the *Burger King* opinion emphasized the "broad discretion" committed to the district court in fashioning relief, however, and actually stated that awards under the Lanham Act "are subject to the principles of equity, and . . . *no hard and fast rules dictate the form or quantum of relief*." *Id.* at 782-83 (emphasis added) (internal quotation marks and citation omitted). In any event, the *Burger King* opinion definitively states the law of this Circuit, which holds that an award of profits is not "dependent upon a higher showing of culpability on the part of defendant, who is purposely using the trademark." *Id.* at 781 (citing with approval cases that had "rejected good faith as a defense to an

21

accounting of profits"). Thus, not only does *Burger King* not support Appellants'
position, that opinion directly contradicts it.

Finally, Appellants cite a chapter of a leading treatise on trademarks for the
proposition that "courts almost always require that defendant's infringement imply
some connotation of 'intent'" to infringe as a prerequisite to obtaining an
accounting of profits. *See* 5 J. Thomas McCarthy, McCarthy on Trademarks &
Unfair Competition § 30:62 (4th ed. 2014) (Westlaw). But EMC and Musallam
have apparently overlooked the remainder of that section where McCarthy
identifies this Circuit as among those circuits that hold "that while relevant,
willfulness [is] not essential or indispensable to a recovery of profits." *Id.* (citing
our decision in *Burger King*).

In sum, the law in this Circuit does not require a showing of willfulness
before awarding profits as actual damages under the Lanham Act. Thus, in
awarding profits despite also finding a lack of willfulness, the district court did not
abuse its discretion because it did not commit a clear error of law or judgment in
this respect.

## B.

EMC and Musallam next attack the amount of damages awarded by the
district court as unsupported by the evidence. EMC and Musallam argue,
essentially, that the district court erred by not crediting the version of the

Quickbooks financial records they submitted as evidence. In Appellants' view, their Quickbooks version, compiled by their expert Bartley Herrington, "established beyond any doubt that [EMC's] sales of new medical devices resulted in a loss of $157,104.35 during the period in question." Appellants contend the district court clearly erred by disregarding this "abundant expert evidence."

The Lanham Act requires a plaintiff to prove the infringing defendant's sales only; the burden then shifts to a defendant to prove "all elements of cost or deduction claimed." 15 U.S.C. § 1117(a). Given the district court's wide latitude and discretion in awarding relief under the Lanham Act, the district court may award damages "even when they are not susceptible to precise calculations." *Ramada Inns, Inc. v. Gadsden Motel Co.*, 804 F.2d 1562, 1565 (11th Cir. 1986).

In determining that Axiom, Inc., met its burden to prove gross sales revenue, the district court credited and relied upon Musallam's own testimony. Musallam testified that he purchased the devices for approximately $30,000 and then sold twenty-four new devices at between $55,000 and $115,000 a piece, resulting in a profit of $25,000 to $85,000 per device. Based on this testimony, the district court found that Axiom, Inc., had carried its burden and established a profit range of between $600,000 and $2,040,000. As the district court calculated Axiom, Inc.'s damages based on Musallam's own testimony, we cannot say the district court

abused its discretion in finding the range of profits to be from $600,000 to $2,040,000.

The burden then shifted to EMC and Musallam to prove any reduction to this amount. In their attempt to do so, they submitted the Quickbooks records prepared by their expert. These records purported to show no profit for the relevant period. Axiom, Inc., disputed the authenticity of EMC and Musallam's records, though, and submitted a different version of the Quickbooks. Sitting as trier of fact during the bench trial, the district court weighed the evidence and concluded that because of the "unexplained inconsistencies" in the financial records, EMC had failed to meet "its burden of proving that any portion of its sales were not attributable to its wrongful acts or that its sales included deductible costs and expenses." *Axiom Worldwide*, 2013 WL 3975675, at *12. The district court then exercised its discretion and set damages at the midpoint of the profit range, $1,320,000.

It is, of course, "the exclusive province of the judge in non-jury trials to assess the credibility of witnesses and to assign weight to their testimony." *Childrey v. Bennett*, 997 F.2d 830, 834 (11th Cir. 1993). Here, the district court did just that. It weighed the conflicting evidence and concluded that EMC had failed to prove that any reduction in profits was warranted. We are not left with the "definite and firm conviction" that the district court erred in reaching this

conclusion. *See Crystal Entm't & Filmworks, Inc. v. Jurado*, 643 F.3d 1313, 1319-20 (11th Cir. 2011) (citation omitted) (internal quotation marks omitted).  Nor are we convinced that the district court abused its discretion in setting a damages award within the range of proven profits, particularly given the latitude afforded to courts in fashioning remedies under the Lanham Act.  Accordingly, we find no reversible error in the district court's award of damages in this case.

## V.

For the reasons set forth above, we **AFFIRM** the judgments against EMC and Musallam.

# UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

John Ley
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

November 17, 2014

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number: 13-13900-FF
Case Style: Axiom Worldwide, Inc. v. Excite Medical Corp.
District Court Docket No: 8:11-cv-01468-VMC-TBM

**This Court requires all counsel to file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause.** Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the CRIMINAL JUSTICE ACT must file a CJA voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for a writ of certiorari (whichever is later).

Pursuant to Fed.R.App.P. 39, costs taxed against the appellants.

The Bill of Costs form is available on the internet at www.ca11.uscourts.gov

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call Janet K. Mohler, FF at (404) 335-6178.

Sincerely,

JOHN LEY, Clerk of Court

Reply to: Djuanna Clark
Phone #: 404-335-6161

OPIN-1A Issuance of Opinion With Costs