**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**AXIOM WORLDWIDE, INC.,**

        **Plaintiff,**

**v.**                                 **Case No. 8:11-cv-1468-T-33TBM**

**HTRD GROUP HONG KONG LIMITED, et al.,**

        **Defendants.**

_____/

**<u>REPORT AND RECOMMENDATION</u>**

      THIS MATTER is before the Court on referral for a Report and Recommendation on **Defendants Excite Medical Corp. and Saleem Musallam's Motion for Modification of Injunction** (Doc. 681),[1] Plaintiff's response (Doc. 698), Defendants' reply (Doc. 703), and Plaintiff's sur-reply (Doc. 704). An evidentiary hearing was held on July 22, 2015.[2]

---

     [1]Excite Medical Corp. and Saleem Musallam are referred to herein as "the Defendants" or "the movants."

     [2]On August 26, 2014, Excite Medical Corp. filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Middle District of Florida, Tampa Division, Case No: 8:14-bk-09906. On November 6, 2014, the Bankruptcy Court entered an order relieving Axiom from the automatic stay provisions of the Bankruptcy Code and permitting Axiom "to pursue the show cause motions before the United States District Court and to obtain an interpretation of the District Court's Injunction." (Doc. 611 at 6). The Court reads the Bankruptcy Court Order to allow resolution of the instant motion for modification as well, as a logical extension of the allowance for "interpretation" of the injunction.

Plaintiff Axiom Worldwide, Inc. ("Axiom" or "Plaintiff") initiated this action for trademark ownership and infringement of intellectual property on July 1, 2011.  (Doc. 1).  On August 26, 2011, Axiom filed its Verified Amended Complaint against multiple defendants, seeking declaratory and injunctive relief as well as damages.  It claimed to be the owner of certain intellectual property, including trademarks, trade secrets, trade names, copyrights of the designs and drawings of products marketed under the trademarks, and 510(k) pre-market authorizations from the U.S. Food and Drug Administration ("FDA").  (Doc. 20).  Axiom asserted claims for trademark infringement, unfair competition, copyright infringement, fraud on the USPTO, misappropriation of trade secrets, interference with business relationships, and breach of confidentiality agreements.  *Id.*

The lengthy course of proceedings in this case has been previously recounted and such is not herein repeated.  (*See* Docs. 633, 696).  Suffice it to say that in June 2013, the district judge granted summary judgment to Axiom as against numerous defendants, including the movants, on the issues of ownership and trademark and copyright infringement and unfair competition.  (Doc. 317).  On July 31, 2013, after a non-jury trial, the district judge made findings of facts and conclusions of law largely in favor of Axiom and awarded damages and injunctive relief.  (Doc. 365).  Judgment in favor of Axiom, awarding damages and incorporating the permanent injunction, was entered thereafter.  (Doc. 366).  Although Excite Medical Corp. and Mr. Musallam appealed the Judgment (*see* Docs. 383, 384), they did not specifically appeal the scope of the injunction.  On November 17, 2014, the Eleventh Circuit affirmed the Judgment against both.  (Doc. 612).

2

Following the unsuccessful appeal and some fifteen months after entry of Judgment, Defendants filed a motion for clarification of the injunction, which was denied on procedural grounds.  (Docs. 620, 696).  And, approximately five months thereafter, Defendants filed the instant motion for modification of the injunction.

## I.

By their motion (Doc. 681), Defendants seek modification of the permanent injunction pursuant to Federal Rule of Civil Procedure 60(b)(5).  Pertinent to this motion, the injunction broadly enjoins Defendants from using Axiom's trademarks, including "DRX 9000" and "Axiom Worldwide" for any commercial purpose.[3]  Alleging that Axiom no longer owns these marks; that the federal registration of the marks for "Axiom Worldwide" (USPTO Serial No. 76595705) and "DRX 9000" (USPTO Serial No. 76533070) have been deemed abandoned and cancelled by the USPTO; that Axiom has had no substantive operations in the United States since 2010; and that at least since 2011, no new devices in the "DRX" line could be offered for sale in the U.S. because the FDA 510(k) pre-market clearances for those devices were de-listed; Defendants urge that the legal bases underlying the injunction, as it

---

[3]The order on summary judgment identified five trademarks owned by Axiom which Defendants were enjoined from using: the "Axiom Worldwide Logo," "DRX 9000," "Better Technology….," "Axiom Worldwide," and "DRX."  (Doc. 317 at 75-76, 78-79).  Among other limitations, the permanent injunction bars Defendants' use of the terms: "DRX 9000," "Axiom Worldwide," "DRX," and the "Axiom Worldwide Logo" for any commercial purposes.  (Doc. 366 at 4).

3

pertains to these marks, no longer exist.[4]  Accordingly, they argue the injunction should be modified to set aside these restraints against the use of the marks.[5]  (Doc. 681).

        In a somewhat rambling response to the motion, Plaintiff argues that Defendants have flagrantly violated the permanent injunction and should not be rewarded for their bad behavior with a modification of the injunction; that Axiom has not abandoned usage of the trademarks it created; that Defendants have schemed to defraud the court and the USPTO by falsely claiming ownership and usage of the mark "DRX 9000" in a trademark application filed with the USPTO; and have taken inconsistent positions in court filings; and continue to engage in commercial activity using newly manufactured and counterfeit parts in DRX machines sold to doctors.  (Doc. 698).[6]

        In reply, Defendants again assert that the DRX 9000 and Axiom Worldwide marks have been abandoned and the registrations cancelled and thus such trademarks have reverted to the public domain for anyone to use.  Defendants argue that Plaintiff cannot demonstrate

---

        [4]In support, Defendants filed an excerpt of the affidavit of James Gibson, Jr.; a press release regarding Axiom's de-listing of the DRX 9000 from the FDA 510(k)'s; a printout from the FDA regarding the pre-market notification of the DRX 9000; and printouts from the United States Patent and Trademark Office's Trademark Electronic Search System showing that Axiom Worldwide and DRX 9000 marks have been cancelled.  (Docs. 681-1 - 681-5).

        [5]In legal support, Defendants cite *ePlus, Inc. v. Lawson Software, Inc.*, 760 F.3d 1350 (Fed. Cir. 2014).

        [6]In support, Plaintiff attaches as an exhibit an application for trademark registration of "DRX 9000" submitted to the USPTO by Defendants' counsel, Kevin Dees, on behalf of Musallam's new company, Excite Medical of Tampa Bay, LLC, in May 2015 (Doc. 698-1); and an affidavit of James J. Gibson, Jr., as President and CEO of Axiom, in which he asserts that Defendants continue to violate the injunction in various ways and Axiom needs help from the court in deterring Defendants from their continued violations, and that Axiom continues to use the marks and has a business plan to resurrect its business (Doc. 698-2).

4

use of the marks in commerce as required by the Lanham Act and Axiom's nonuse of the

marks is not excusable, as contemplated by the USPTO examining procedures or under

applicable case law.  Recent efforts by Axiom are insufficient to demonstrate its use of the

marks in commerce and the changes in circumstances and nonuse warrant a modification of

the injunction.  (Doc. 703).[7]

     In its sur-reply, Axiom urges the marks have been and continue to be used in

commerce.  It notes that the trademarks were previously transferred to T.V.G., which

continues to use the marks in commerce.  Axiom claims it has a grant back license from

T.V.G. to defend the trademarks and that Integrity Life Sciences ("ILS") also has a licence to

use the marks.[8]  Thus, Axiom is obliged to defend the trademarks and, although it is not

manufacturing the DRX machines at present, the marks are being used by T.V.G. and ILS on

the internet at www.axiomworldwide.com (now owned by T.V.G.), in fax blasts to doctors,

and at trade shows both domestically and internationally.[9]  Axiom asserts that, regardless of

any alleged abandonment, Defendants have violated the injunction and show unclean hands

---

[7]Defendants submit several exhibits, including a copy of an affidavit from Mr. Gibson, documents from the USPTO; regulations addressing § 8 affidavits; and judgment lien certificates recorded against Axiom.  (Docs. 703-1 - 703-8).

[8]In support, Plaintiff attaches a press release from June 2014 announcing ILS's global licensing agreement for Axiom Worldwide Inc.'s technology and products.  Mr. Gibson is touted as the President and CEO of ILS.  (Doc. 704-1).

[9]In support, Plaintiff submits copies of materials that it claims ILS has used at trade shows in 2014 and 2015 and email exchanges used to request a vendor to assist in fax blasts between February and June 2014, one of which promotes the sale by ILS of service parts for the "DRX 9000 family of devices," while another solicits the sale to ILS of used DRX 9000 devices for its international customers.  The announcements display a logo for ILS and Axiom Worldwide.  (Doc. 704-2).

by coming to the court seeking modification which, in conjunction with the trademark application with the USPTO, would permit them to use the marks.  (Doc. 704).

On July 22, 2015, the undersigned held an evidentiary hearing on the motion.  The Court received exhibits and heard testimony from James Gibson, president of Axiom, and admitted several exhibits.  (*See* Docs. 714-1, 715, 716).  Such are discussed herein as necessary.

## II.

Inherent in the power of the court is the power "to modify an injunction in adaptation to changed conditions...."  *United States v. Swift & Co.,* 286 U.S. 106, 114 (1932).  This judicial formulation was codified by Congress in the Federal Rules of Civil Procedure.  Rule 60(b)(5) provides that "on a motion and just terms, the court may relieve a party ... from a[n] order [when] applying it prospectively is no longer equitable."  Fed. R. Civ. P. 60(b)(5).

However, as the Supreme Court has explained:

> Rule 60(b)(5) may not be used to challenge the legal conclusions on which a prior judgment or order rests, but the Rule provides a means by which a party can ask a court to modify or vacate a judgment or order if "a significant change either in factual conditions or in law" renders continued enforcement detrimental to the public interest.  The party seeking relief bears the burden of establishing that changed circumstances warrant relief but once a party carries this burden, a court abuses its discretion when it refuses to modify an injunction or consent decree in light of such changes.

*Horne v. Flores*, 557 U.S. 433, 447 (2009) (internal citations and quotations omitted).

In exercising their powers to modify, the courts are guided by the principles of equity and the ability to adapt a decree to meet the circumstances of a new day.  As Justice Cardozo explained in the seminal *Swift* case, "a court does not abdicate its power to revoke or modify its mandate, if satisfied that what it has been doing has been turned through changing

6

circumstances into an instrument of wrong."  286 U.S. at 114-15.

> In *Swift*, the Court articulated a rigorous standard:

> > The injunction, whether right or wrong, is not subject to impeachment in its application to the conditions that existed at its making. We are not at liberty to reverse under the guise of readjusting. Life is never static, and the passing of a decade has brought changes to the grocery business as it has to every other. The inquiry for us is whether the changes are so important that dangers, once substantial, have become attenuated to a shadow. No doubt the defendants will be better off if the injunction is relaxed, but they are not suffering hardship so extreme and unexpected as to justify us in saying that they are the victims of oppression. Nothing less than a clear showing of grievous wrong evoked by new and unforeseen conditions should lead us to change what was decreed after years of litigation with the consent of all concerned.

*Id*. at 119.

Since *Swift,* however, the Supreme Court is viewed as having relaxed this stringent standard somewhat, focusing less on the harm being suffered by the enjoined party as on the continuing need for the injunction.  Wright & Miller, 11A Fed. Prac. & Proc. Civ. § 2961 (3d ed.).  In *U.S. v. United Shoe Machinery Corp.*, 391 U.S. 244, 248 (1968), an antitrust case brought against the manufacturer of shoe-making machinery, the government sought modification of a decree enjoining the defendant from monopolizing trade or commerce.  In short, the government urged modification of the injunction on grounds that it had failed in its intended purpose.  In the district court, the modification was denied on the authority of *Swift*.  The Supreme Court reversed and remanded because the "stringent requirements of *Swift*" were not applicable to the circumstances presented.  In seeking to give context to the "grievous wrong" standard announced in *Swift*, the Court stated, "*Swift* teaches that a decree may be changed upon an appropriate showing, and it holds that it may not be changed in the interests of the defendants if the purposes of the litigation as incorporated in the decree ...

have not been fully achieved." *Id*. at 248.  But nothing in *Swift* precluded the government from seeking to modify the injunction where time and experience demonstrated that the decree had not achieved the desired result of workable competition.  Indeed, the Court noted that the circumstances presented, if true, were the obverse of the situation in *Swift* in which the *defendants* sought relief not to achieve the purposes of the decree, but to escape their impact.  In such circumstances, the court was not restricted to granting relief only upon a showing of grievous wrong.  In remanding the case to the district court, the Supreme Court noted that the decision on the petition to modify must depend on the specific facts and circumstances presented and if such demonstrated that the relief in the case had not met the purpose of the Sherman Act "the district court should modify the decree so as to achieve the required result with all appropriate expedition."  *Id*. at 252.

The Eleventh Circuit has expressly adopted this more relaxed standard for modification when a plaintiff seeks to impose more stringent requirements on a defendant. *See Exxon Corp. v. Texas Motor Exchange of Houston, Inc.*, 628 F.2d 500 (5th Cir. 1980)[10] (stating that "[t]he holding in *United Shoe Machinery* indicates that an injunction may be modified to impose more stringent requirements on the defendant when 'the original purposes of the injunction are not being fulfilled in any material respects.'") (citing Wright & Miller, 11C Fed. Prac. & Proc. Civ. § 2961 (1973)); *Sizzler Family Steak Houses v. Western Sizzlin Steak House, Inc.,* 793 F.2d 1529, 1539 (11th Cir. 1986) (approving of and applying *Exxon*'s

---

[10]In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to close of business on September 30, 1981.

interpretation of *United Shoe* to uphold district court's imposition of additional restrictions on a defendant subject to permanent injunction); *Epic Metals v. Souliere*, 181 F.3d 1280, 1283 (11th Cir. 1999) (explaining that the Eleventh Circuit follows the rule of *United Shoe* when a plaintiff seeks modification of a decree or injunction to protect the plaintiff's interests).

In *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367 (1992), the Supreme Court announced a different, two-part standard for the modification of consent decrees arising out of institutional-reform litigation.  By that standard, "a party seeking modification of a consent decree bears the burden of establishing that a significant change in circumstances warrants revision of the decree.  If the moving party meets this standard, the court should consider whether the proposed modification is suitably tailored to the changed circumstance."  *Rufo* at 383.

Subsequent to *Rufo*, this somewhat clearer standard has been employed by courts in cases addressing matters outside the institutional reform setting.  In the Eleventh Circuit, the court recognized in *Blackmun v. Wille*, 980 F.2d 691, 692 (11th Cir. 1993), that *Rufo* changes the applicable standard in the circuit for modifying consent decrees in institutional litigation. While it does not appear that the Eleventh Circuit has explicitly adopted the *Rufo* standard outside the institutional reform litigation arena, the court, in an unpublished decision, affirmed a district court's decision to deny modification based on application of the *Rufo* standard.  *See In re Consol. Non-Filing Ins. Fee Litig.*, 431 F. App'x 835, 840-41 (11th Cir. 2011).

While the *Rufo* standard dictates that the court should exercise flexibility in considering requests for modification, "Rule 60(b)(5) was not intended to allow modification

simply because 'it is no longer convenient to live with the terms of a consent decree.  Thus, the party seeking modification bears the burden of establishing that 'a significant change in circumstances warrants revision of the decree.'"  *In re Consol. Non-Filing Ins. Fee Litig.*, at 840 (citing *Rufo* at 383).[11]

### III.

### A.

As an initial matter, I find the approach affirmed by the Eleventh Circuit in *In re Consol. Non-Filing Ins. Fee Litig.* a useful guide for reaching decision in this case.[12]  Whether *Swift* or *Rufo* bespeaks the applicable standard on this motion, Defendants lose under both.  In short, Defendants do not make a "clear showing of grievous wrong evoked by new and unforeseen conditions" to satisfy *Swift*, nor do they demonstrate a change in circumstances to merit relief under *Rufo*.

---

[11]In *Rufo*, the Court set out six types of either changed factual or changed legal circumstances that could warrant modification of a consent decree: (1) changed factual conditions that make compliance with the decree substantially more onerous; (2) the decree is unworkable because of unforeseen obstacles; (3) enforcement of the decree without modification would be detrimental to the public interest; (4) one or more of the obligations the decree places upon the parties has become impermissible under federal law; (5) a change in the law has made legal what the decree was designed to prevent; or (6) a clarification of the law, if it can be shown the parties based their agreement on a misunderstanding of the governing law.  *Id.* at 384, 388, 390.  By this Court's consideration, in a light favorable to Defendants, the instant motion raises considerations under (1) only.

[12]In employing the *Rufo* test, the district court stated: "The Court will side-step the complicated question of which standard is the correct standard to apply in this case.  Instead, the Court will apply the *Rufo* standard (without holding that it is the correct standard) because it is the most flexible and lenient of the possible standards, and [defendant's] motion does not satisfy it."  *In re Consol. Non-Filing Ins. Fee Litig.*, No. 294-CV-69UWC, 2010 WL 1250873, at *2 (M.D. Ala. Mar. 24, 2010).  The Eleventh Circuit affirmed the decision under this standard.  431 F. App'x 835, 846.

Defendants argue the significant change in circumstances that warrants modification of the injunction is Axiom's nonuse of the marks in trade or commerce since 2010 and its consequent abandonment of the marks.  They urge that these abandoned marks have thus fallen into the public domain and may be used lawfully by them or by anyone else.[13]  In factual support, they rely on the testimony from Axiom's principal, James Gibson, who concedes that Axiom has had no substantive business operations in the United States, apart from litigation, since 2010.  They urge that the nonuse of the mark for over three years gives rise to a presumption that the marks have been abandoned, and they further demonstrate that the USPTO has cancelled the federal registrations for the "DRX 9000" and "Axiom Worldwide" marks.  As a consequence, Defendants urge that the legal bases underlying the injunction, as it pertains to these marks, no longer exists and the injunction barring their use should be set aside.

Moreover, despite Mr. Gibson's testimony regarding Axiom's efforts post-judgment and post-appeal to regain a footing in the DRX service and sales market, Defendants argue such efforts are too little too late and that the abandonment of these marks cannot be excused on any basis claimed by Axiom.  Moreover, the assertions by Mr. Gibson of a current business plan to support doctors using the machines and having investors prepared to step in are too vague to establish that Axiom intends to resume use of the marks in commerce.  Accordingly, Defendants also argue that under federal and Florida law, any common law trademarks rights have been lost through abandonment and neither may Axiom assert unfair

---

[13]*See Cumulus Media, Inc. v. Clear Channel Communications, Inc.*, 304 F.3d 1167 (11th Cir. 2002); *Natural Answers, Inc. v. SmithKline Beecham Corp.*, 529 F.3d 1325 (11th Cir. 2008).

competition or false advertising claims.[14]

Defendants are generally correct that rights in a mark can be lost through abandonment and nonuse. *Tally-Ho, Inc. v. Coast Community College District*, 889 F.2d 1018, 1022-23 n.6 (11th Cir. 1989). "[A] trademark is deemed abandoned, and, thus no longer valid, '[w]hen its use has been discontinued with intent not to resume such use.'" *See Natural Answers, Inc.*, 529 F.3d at 1329 (quoting 15 U.S.C. § 1127). Because "trademark ownership is always appurtenant to commercial activity … actual and continuous use is required to acquire and retain a protectible interest in a mark." *Tally-Ho, Inc.* at 1022-23. "[A] defendant who successfully shows that a trademark plaintiff has abandoned a mark is free to use the mark without liability to the plaintiff." *Cumulus Media* at 1173.

Under the Lanham Act, prima facie evidence of abandonment is the nonuse of a mark for three consecutive years, "which creates a 'rebuttable presumption of intent not to resume use'" *Natural Answers, Inc.*, 529 F.3d at 1330 (citing 15 U.S.C. § 1127). The Lanham Act defines "use" as "the bona fide use of such mark made in the ordinary course of

---

[14]They cite *Natural Answers, Inc., supra*; *see also Miller Brewing Co. v. Oland's Breweries, Ltd.*, 548 F.2d 349, 351 (C.C.P.A. 1976).

trade, and not made merely to reserve a right in a mark." 15 U.S.C. § 1127.[15]  Thus, to prevail

on a claim of abandonment, a defendant must establish two elements: "[1] that the plaintiff

has ceased using the mark in dispute and [2] that he has done so with an intent not to resume

its use.'" *Natural Answers, Inc.,* 529 F.3d at 1329 (quoting *Cumulus Media, Inc.,* 304 F.3d at

1174).  The Lanham Act directs that "[i]ntent not to resume [use] may be inferred from

circumstances." *Id.*  But, intent to resume use "cannot be far-flung or indefinite; rather there

must be an intent to resume use within the reasonably foreseeable future." *Natural Answers,*

*Inc.,* 529 F.3d at 1329.

"The proper inquiry is whether [plaintiff] intended to resume meaningful commercial

use of the mark, not whether it intended to abandon the mark.  Trademark rights flow from

use, not from intent to protect rights.  Were the rule otherwise, a party could hold trademarks

that it never intended to use but did not want to allow others to use.  The Lanham Act does

not permit such warehousing of trademarks." *AmBrit, Inc. v. Kraft, Inc.,* 812 F.2d 1531, 1550

(11th Cir. 1986).  Ultimately, however, the burden of persuasion lies with the movant because

abandonment works as an involuntary forfeiture of the mark holder's right.  *See Cumulus*

---

[15]A mark is deemed to be in use in commerce:
  (1) on goods when–
  (A) it is placed in any manner on the goods or their containers or the
  displays associated therewith or on the tags or labels affixed thereto, or if
  the nature of the goods makes such placement impracticable, then on
  documents associated with the goods or their sale, and
  (B) the goods are sold or transported in commerce, and
  (2) on services when it is used or displayed in the sale or advertising of
  services and the services are rendered in commerce, or the services are
  rendered in more than one State or in the United States and a foreign
  country and the person rendering the services is engaged in commerce in
  connection with the services.
*Id.*

*Media, Inc.,* 304 F.3d at 1175.

As explained hereafter, the evidence supports that Axiom ceased using its trademarks in commerce at least by April 2010 and did not use the marks in commerce for at least three years. However, even if Defendants may claim the rebuttable presumption of abandonment, they cannot – and should not – prevail on this motion because the circumstances of Axiom's nonuse reveal it never intended not to resume the use of these marks. In short, nonuse of the marks for much of this period of time was caused by Defendants and cohorts and is excusable in the circumstances and, Axiom took efforts to resume meaningful use of the marks in a timely manner. Moreover, Defendants fail to show grievous wrong to them or that there has been a significant change of circumstance to warrant modification.

## B.

Some historical context is useful to the Court's consideration. As the Court has previously recounted, between 2003 and 2005 Axiom registered five trademarks with the USPTO in connection with its manufacturing and sales of medical devices for the treatment of back and neck pain. Between 2001 and 2006, Axiom also obtained 510(k) pre-market clearances from FDA. In late 2005, Axiom established Axiom Worldwide LLC ("Axiom LLC" or "the LLC") to facilitate a proposed sale to investors and, in 2007, it transferred certain of its assets to the LLC. Axiom LLC thereafter ran into financial and competitive difficulties and ultimately instituted an assignment for the benefit of creditors ("ABC proceeding") that led to Defendant HTRD Group Hong Kong ("HTRD") purchasing the assets owned by Axiom LLC (then held by a bank) in July 2010. HTRD then filed paperwork

14

with the USPTO to assign to itself the trademarks originally registered to Axiom and, along with Excite Medical and Mr. Musallam as agent, filed paperwork with the FDA to become the contract manufacturers of the DRX devices.  Excite Medical and its principal Mr. Musallam[16] began manufacturing, selling, and distributing DRX devices for HTRD using Axiom's trademarks, designs, and other intellectual property.  (Doc. 317 at 4-8, 38-41).

These events led to Plaintiff filing suit in July 2011, seeking a declaration that Axiom, not HTRD, owned the intellectual property, including, *inter alia*, the trademarks, the copyright of the designs and drawings of the devices, and the 510(k) clearances.  On summary judgment, the district court declared that Axiom was the owner of the trademarks: the "Axiom Worldwide Logo," "DRX 9000," "Better Technology…," "Axiom Worldwide," and "DRX," as well as the other intellectual property in dispute, including the copyrights, trade names, trade secrets, drawings, designs, and 510(k)s.  HTRD's registrations of the trademarks were ordered cancelled, and the USPTO was directed to amend its records to show the ownership of these marks in Axiom.  (Doc. 317 at 22-24, 75-76).

After a bench trial in June 2013 on damages and entry of the permanent injunction,[17] Defendants filed their notices of appeal in August 2013.  (Docs. 365, 366, 383, 384).  The judgment of the court was affirmed by the Eleventh Circuit in November 2014.  (Doc. 612).

Separate and apart from this litigation, the USPTO cancelled the registration for the service mark "Axiom Worldwide" in February 2013.  In January 2015, the USPTO cancelled

---

[16]Mr. Musallam is a former employee of Axiom.

[17]While it was a part of the record before the presiding judge that Axiom had not manufactured, exported, or sold any devices for "the past few years," the court found it unnecessary in the circumstances to reach the issue of abandonment.  (Doc. 365 at 23).

the registration for the word mark "DRX 9000" as well.  In each instance, the stated reason

for the cancellation was failure to file the required Section 8 Declarations.[18]  (Def. Ex. 5).

Mr. Gibson testified that Axiom ceased manufacturing the DRX devices in 2005 or

2006.  Thereafter, until March or April 2010, any manufacturing was done by Axiom LLC.[19]

In April 2011, purportedly to protect the marketplace from counterfeit goods, Axiom de-listed

its DRX 9000 series of products with the FDA and Axiom thereafter could no longer

manufacture its DRX devices in the U.S.  (*See* Def. Exs. 1 and 2).  Through the conclusion of

---

[18]Pursuant to "Section 8," the owner must file an affidavit and fee on a date that falls on or between the fifth and sixth anniversaries of the registration and another within the one-year period immediately preceding the expiration of ten years of the registration.  15 U.S.C. § 1058(a).  The affidavits must state that the mark is in use in commerce or not in use in commerce and "include a showing that any nonuse is due to special circumstances which excuse such nonuse and is not due to any intention to abandon the mark."  *Id.* at § 1058(b).

Factually, it is undisputed that after obtaining Axiom LLC's assets, HTRD had the trademarks assigned to itself on the federal register.  The first notice of cancellation – of the "Axiom Worldwide" service mark – occurred on February 23, 2013, while HTRD claimed to own the marks and prior to the district court's ruling that Axiom owned the marks.  The later notice of cancellation of the "DRX 9000" word mark occurred on January 9, 2015, after the court's entry of judgment.  At that point, upon notice from Axiom's former counsel of the court's ruling, the marks, apart from "DRX," had been reassigned to Axiom.  (Def. Ex. 4).  The owner of the mark is responsible for filing the Section 8 Declarations.  *See* 15 U.S.C. § 1058; 37 C.F.R. §§ 2.160, 2.161.  According to the records available with the USPTO, it appears that HTRD filed the first required Section 8 Declarations for both marks between the fifth and sixth anniversaries of the registration.  The USPTO rejected the declaration for "Axiom Worldwide" because HTRD did not have proper chain of title.  *See* http://tsdr.uspto.gov/#caseNumber=76595705&caseType=SERIAL_NO&searchType=statusSearch (last visited October 30, 2015).  For the "DRX 9000" mark, the USPTO accepted the declaration from HTRD, but cancelled the registration for failure to file the declaration at the ten-year mark.  *See* http://tsdr.uspto.gov/#caseNumber=76533070&caseType=SERIAL_NO&searchType=statusSearch (last visited October 30, 2015).

In any event, it appears correct that Section 8 declarations were not properly filed by the owner and Gibson's efforts to blame the USPTO or someone else for this falls on deaf ears.

[19]According to Gibson, Axiom LLC was administratively dissolved sometime in 2010 after it relinquished its property in the ABC proceeding.

16

the litigation in the instant matter, Axiom conducted no substantive commercial business apart from litigation. Even after prevailing in this litigation, Axiom itself did not engage in any substantive commercial activity involving use of the trademarks. Rather, the evidence shows that Axiom has conveyed the trademarks to other entities.

In this regard, the evidence proffered with the motion and at the hearing reveals that Axiom has a number of substantial judgments against it. (Doc. 703-7). On March 31, 2014, Axiom resolved a 2010 judgment[20] against it and Mr. Gibson by assigning its interest in the trademarks and other intellectual property to Achim Hansjurgens and a German entity called E-Mos. In exchange, Axiom and Gibson received a limited grant back license to use Axiom materials. By that agreement, they were specifically required to continue with the enforcement of the permanent injunction. On April 1, 2014, E-Mos assigned all its rights under the final judgment to T.V.G. Trading and Development, S.A. ("T.V.G."). (Doc. 590).

By Mr. Gibson's testimony, T.V.G. is a Panamanian company with offices in Russia which uses the Axiom trademarks internationally and here in the U.S., by and through Axiom and Integrity Life Sciences ("ILS"). According to Mr. Gibson, T.V.G. is currently authorized by the FDA to manufacture DRX 9000 devices, having re-listed the 510(k) clearance with the FDA this year.

Gibson also claims there is a separate agreement with his related entity, ILS. By that agreement, ILS may pursue business in the DRX line of machines in the U.S. and elsewhere. (*See* Doc. 722). Thus, he testifies that T.V.G. and ILS are using the marks in commerce. The

[20]*See Hako-Med USA, Inc. v. Axiom Worldwide, Inc., et al.*, Case No. 8:06-cv-1790-T-33EAJ, U.S. District Court, Middle District of Florida.

17

marks and DRX devices are displayed on the Axiom Worldwide website (now owned by

T.V.G.), which site has a link to ILS's website, which also employs the marks. (Pl. Exs. 2-3).

 While ILS has not manufactured a new DRX device, Gibson maintains that it could and

would if it received a customer order to do so. To that end, Gibson claims ILS has been

advertising for sale new DRX machines since attending a trade show in January 2015 in

Dubai. It has attended trade shows in Nevada and the "West Coast" and it intends to attend

others in the Fall of 2015. The DRX 9000 mark and the Axiom Worldwide trademark and

logo have been used at these trade shows.[21] Axiom also proffers copies of email exchanges

related to "fax blasts" it employed between February and June 2014. One promotes the sale

by ILS of service parts for the "DRX 9000 family of devices," while another solicits the sale

to ILS of used DRX 9000 devices for its international customers. The announcements display

a logo for ILS and Axiom Worldwide. (Doc. 704-2). By Gibson's account, ILS is exploring

selling the DRX devices in other countries and has spoken with doctors about upgrading their

older models. He also claims that ILS has serviced DRX 9000 devices since it was licensed

to do so. Gibson also claims that T.V.G. has the right to maintain quality assurances on

Axiom products and has visited and audited ILS in order to do so, despite no DRX devices

having been produced or sold as of the hearing date. Gibson also testifies that he has

attempted to regenerate Axiom's business activity but has been unable to obtain investors

who were fearful of the injunction and Defendants' continued violations.

         To demonstrate Defendants' continued unclean hands and defiance of the injunction,

_____

    [21]*See* banner used at trade show shown in Pl. Ex. 4. The banner does not offer new
DRX devices for sale but promotes ILS as a servicer of DRX devices.

Plaintiff proffers that defense counsel, on behalf of Excite Medical of Tampa Bay LLC, in May 2015, filed a USPTO Trademark/Service Mark Application.  (Pl. Exs. 1, 6).  Therein, the applicant seeks to register the standard character mark "DRX 9000" for "back supports for medical purposes; braces for limbs and joints, for medical use."  *Id.*  Axiom maintains certain of the statements in declaration to the application are false.[22]  Thus, the declaration that "the applicant is the owner of the trademark or service mark" or alternatively, that "the applicant is entitled to use the mark in commerce ....." and that "the signatory believes .... no other person has the right to use the mark in commerce ...." is clearly false, as Excite Medical of Tampa Bay and its counsel, Kevin Dees, are well aware that the mark is owned by another and that they are specifically enjoined from claiming that they have any rights to use or claim ownership of the mark.  In any event, Axiom urges this application clearly shows a blatant violation of the injunction.[23]

Counsel for Defendants, Mr. Dees, defends that the application is merely an "intent to use" application for marks it believes Defendants can use and does not contain false representations nor evidence any violation of the injunction.  Moreover, he claims that Excite Medical of Tampa Bay LLC intends to use the mark for "back braces," not the spinal decompression device at issue in this litigation.

---

[22]Among Axiom's arguments, if such were permitted to be registered it would cause confusion in the market, as Axiom's DRX 9000 is a spinal decompression device, not a back brace.

[23]Axiom has recently filed a separate motion for contempt, which touches upon this issue, and remains pending before the court.  (*See* Doc. 736).

**C.**

Here, despite some missteps and apparent difficulty getting business restarted, the whole of this litigation demonstrates Axiom's efforts to reclaim the marks for use of the marks in commerce.  Despite its nonuse of the marks, the fact that Axiom initiated this suit after learning that HTRD claimed ownership of the intellectual property and had reassigned the Axiom trademarks to itself and begun manufacturing and selling DRX 9000 devices, militates against any finding of inexcusable nonuse.

Even had Axiom wanted to use the marks after 2010, the marks had been usurped by HTRD and Defendants, who claimed to own the marks and/or were using the same in commerce.  While Axiom ceased further operations pending a determination that it owned the marks, its conduct in seeking to regain control of its marks and intellectual property simply does not lend support to Defendants' claims of abandonment nor their request for modification.

In these circumstances, the same individuals and entities who helped commandeer the marks in the first place seek to claim that the abandonment – caused at least in part by their own actions – warrants a revision of the injunction against them.  Such is contrary to the purpose of this litigation, the injunction, and defies logic.

The injunction was put in place after long and hard-fought litigation so as to prevent Defendants and others from continuing to claim ownership of the marks and to prohibit them from future infringing conduct.  As noted above, Axiom admitted at trial that it had not manufactured, exported, or sold any devices for "the past few years," but the court found it unnecessary, in the circumstances, to address abandonment at that time.  (Doc. 365 at 23).

Even though the Axiom Worldwide mark was cancelled by the USPTO prior to entry of the

injunction, the whole of the circumstances did not give rise to abandonment then, nor do they

now.  What Defendants here demonstrate is not the type change in circumstances from which

they should gain.  In short, Defendants have continued to push their claim of right to use the

marks and have aided in bringing about the alleged "change in circumstances."[24]  They cannot

properly benefit from the same.

      Nor has the injunction, as of yet, achieved its intended purposes.  Defendants and the

related entity, Excite Medical of Tampa Bay LLC, have continued to engage in business

---

[24]The USPTO Trademark/Service Mark Application is the most recent example of Defendants' efforts to gain control of the marks, and the court is troubled that Excite Medical of Tampa Bay and its counsel Mr. Dees would cause such to be filed with full knowledge of the injunction.  Despite their present arguments that the marks have been abandoned and reverted to the public domain, Defendants and those acting "in concert" with Defendants are subject to a permanent injunction, which explicitly prevents them from "[m]aking representations that they own or are authorized to use any of the trademarks or intellectual property rights and proprietary information this Court has found belong to Axiom."  (Doc. 365 at 42).

      In spite of this clear prohibition, Mr. Dees' attests that:

> The applicant is entitled to use the mark in commerce ..... The signatory believes that to the best of the signatory's knowledge and belief, no other person has the right to use the mark in commerce, either in identical form or in such near resemblance as to be likely, when used on or in connection with the goods/services of such other person, to cause confusion or mistake, or to deceive.  The signatory being warned that willful false statements and the like are punishable by fine or imprisonment, or both, under 18 U.S.C. Section 1001 ... declares that all statements made of his/her own knowledge are true and all statements made on information and belief are believed to be true.

(Pl. Exs. 1, 6).

      Although Defendants and counsel may believe the marks have been abandoned such that they have a right to use them, the injunction remains in place and such representations raise significant concerns.  As it relates to their efforts to modify the injunction, the movants' continued business activity testing the parameters of the injunction surely runs contrary to a finding that the injunction has served its intended purpose or that Defendants make a "clear showing of grievous wrong" to satisfy *Swift*.

involving the DRX 9000 and Axiom marks, post-injunction.  (*See* Doc. 636).  By Axiom's account, their current business activities violate the injunction.  While that dispute has not yet been resolved by the Court, it is clear that Defendants cannot claim that the purposes of the injunction have been achieved.  *See United Shoe*, 391 U.S. at 248.

While I think it apparent that Axiom's financial circumstances make it doubtful that Axiom itself can reenter the DRX sales and/or service business, it has post-judgment and appeal regained a footing in this market and negotiated agreements that allow Axiom and its related entity, ILS, and Mr. Gibson to engage in service and sales activities for the DRX line of products using the marks and intellectual property.  Moreover it appears the case that T.V.G., in partnership with ILS, are actively marketing the DRX products and using the marks for their sales and service efforts.  On this record, it appears the correct conclusion that these intentional and concrete efforts to reestablish business in the DRX line of machines are not far flung or indefinite.

In sum, the whole of the circumstances militate against any finding under Fed. R. Civ. P. 60(b)(5) that applying the permanent injunction prospectively is no longer equitable, and Defendants' request to modify should be rejected.  Overall, the record before this Court reflects that Axiom did not intend to abandon the marks despite their nonuse for several years.  And, despite Defendants' aggressive efforts to assert, and re-assert, control over the marks,

the purported change in circumstances they rely upon cannot support the requested relief.[25]

## IV.

Accordingly, upon due and thorough consideration and for the reasons set forth above, it is **RECOMMENDED** that **Defendants Excite Medical Corp. and Saleem Musallam's Motion for Modification of Injunction** (Doc. 681) be **DENIED**.

Respectfully submitted this
30th day of October 2015.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal and a *de novo* determination by a district judge. A party waives the right to challenge on appeal a finding of fact or conclusion of law adopted by the district judge if the party fails to object to that finding or conclusion within fourteen days after issuance of the Report and Recommendation containing the finding or conclusion. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; M.D. Fla. R. 6.02; *see also* Fed. R. Civ. P. 6.

---

[25]This Report and Recommendation should not be read to imply or otherwise find that the "Axiom Worldwide" (USPTO Serial No. 76595705) and "DRX 9000" (USPTO Serial No. 76533070) marks remain properly registered with the USPTO. As set forth above, the marks have indeed been cancelled for failure to file the required Section 8 declarations. It is and remains the purported owner's responsibility to file any necessary application or paperwork with the USPTO to register these cancelled marks and/or to maintain their registrations for all marks on the federal register.

Copies furnished to:
The Honorable Virginia M. Hernandez Covington, United States District Judge
Counsel of Record
Any *pro se* parties